**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**DAVID BRUNO, Plaintiff**

    **v.**                                          **CIVIL ACTION No.**

                                          **3: 02 CV 2192 (WWE)**

**GREENWICH BOARD OF EDUCATION,**           **May 31, 2004**
                            **Defendant**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.**        **INTRODUCTION**

This matter is before the Court as plaintiff's *Amended Complaint* dated December 5, 2003 appealing from a final administrative decision dated October 29, 2002 issued by an impartial hearing officer appointed by the State Department of Education in Case No. 02-138 and seeking appropriate relief as provided for pursuant to the *Individuals with Disabilities Education Act (IDEA),* 20 U.S.C. §1400 *et seq.;* Section 504 of the *Rehabilitation Act,* 29 U.S.C. §794; state special education laws, *Conn. Gen. Stat.* §10-76 *et seq.;* and the Connecticut *Uniform Administrative Procedures Act, Conn. Gen. Stat.* §4-166, *et seq.* The plaintiff is aggrieved by the final decision that denied him a free appropriate public education (FAPE), compensatory education, reimbursement for educational expenditures, and reimbursement of an independent psychological evaluation.

In a final decision dated October 29, 2002, the impartial hearing officer concluded that the plaintiff had received FAPE and that he had been properly graduated by the defendant during June, 2000 and therefore he was not entitled to receive any of the relief requested. The plaintiff had originally commenced this action on December 12, 2002. The defendant had filed a Motion to Dismiss the Complaint that was denied by the Court in a memorandum decision dated August 21, 2003. Following a status conference, the plaintiff

filed an Amended Complaint dated December 5, 2003. For the reasons that follow, the plaintiff respectfully requests the Court to grant his Motion for Summary Judgment and grant him the relief that was denied by the impartial hearing officer, as more fully set out in the Amended Complaint.

The plaintiff moves for summary judgment on Count One and Count Four of the Amended Complaint. For the reasons that follow, the plaintiff respectfully requests the Court to grant him judgment on those counts as a matter of law.

II.    **STATEMENT OF FACTS**

The plaintiff was a twenty-one (21) year old student at the time of the administrative proceeding. The defendant had determined that he was determined to be eligible for special education and related services pursuant to the IDEA in 1993 based upon a diagnosis of Asperger's Syndrome and ADHD.[1] During elementary school and middle school, the defendant had placed the plaintiff in various private special education facilities located in New York or Connecticut. Commencing with the 1996-97 school year, the plaintiff attended A self contained  special education program at Greenwich High School and was classified as seriously emotionally disturbed. The plaintiff's parents had participated in various PPT meetings during the 1996-97, 1997-98 and 1998-99 and 1999-00 school years in order to present their concerns and input and to attempt to develop an individual education program (IEP) for the plaintiff. The plaintiff turned age eighteen (18) during September, 1999.

---

[1] *Asperger's Syndrome* or Disorder has been described by the American Psychiatric Association's Diagnostic and Statistical Manual (DSM IV) as a qualitative impairment of social interaction, restricted repetitive and stereotyped patterns of behaviors and activities, that results in clinically significant delay in language, motor skills, and its condition is considered lifelong. DSM –IV §299.80 (attached hereto).

*ADHD* is characterized by the American Psychiatric Association as having features that include a persistent pattern of inattention, hyperactivity, impulsivity, that may manifest in academic, social, and occupational situations. (attached hereto.).

His mother had expressed her concerns that plaintiff was not receiving FAPE from the defendant during the 1998-99 and 1999-00 school years most notably at PPT meetings April 16, 1999, December 14, 1999 and May 26, 2000 and she had indicated that he required additional special education services. [2]The defendant graduated the plaintiff from Greenwich High School during June, 2000 despite receiving information that he was not making satisfactory progress on his IEP goals and objectives and had many unmet needs.

Following his graduation from Greenwich High School, the plaintiff worked part-time at a local pet store and lived at home with his parent. He did not apply to or attend college, even though post-secondary education was listed as a goal and objective on his Individual Transition Plan (ITP). After the plaintiff had been discharged from his part-time job during October, 2000, he had contacted the defendant for additional assistance that had been apparently offered at the May 26, 2000 PPT meeting. The defendant referred the plaintiff to BRS, a state vocational rehabilitation agency. That agency did not provide the plaintiff with any direct services. The plaintiff attempted to secure other employment and was not successful until he had secured a part-time job during the holiday season at a local bookstore. After the plaintiff lost that job, the plaintiff and his mother then contacted the defendant again and requested additional special education and other services. The defendant convened a PPT meeting on September 5, 2001.

The plaintiffs' mother believed that the defendant would provide the plaintiff with additional educational supports and services following the June, 2000 graduation and that the parties would meet again at a PPT meeting during May or June 2001 in order to assess the plaintiff's needs. [3]The defendant did not schedule that PPT meeting and the plaintiff's

---

[2] Norma Selutekin, school social worker had testified that the plaintiff's mother had conferred with her during the 1999-00 school about her concerns that the plaintiff was not ready to graduate. *Transcript of October 18, 2002 Hearing, p. 186.* (attached hereto).

[3] The plaintiff's mother had testified that she was led to believe this by March 1, 2001 date for the next triennial evaluation of the plaintiff's needs that had been inserted on the May 26, 2000 IEP, Exhibit B-16, and/or the March 1, 2002 date for the next triennial evaluation inserted on the April 16, 1999 IEP, Exhibit B-8, as well as other information.

mother then contacted the school district and a PPT meeting was eventually scheduled on September 5, 2001. At that PPT meeting, the plaintiff's mother had informed the defendant that the plaintiff had been denied FAPE and that he required additional services, including academic, social, vocational, and independent living skills. In addition, the plaintiff's mother had requested compensatory educational services, an independent evaluation, and funding for that independent evaluation and for additional specialized coursework or training that would allow the plaintiff to be properly prepared for college or a vocational school and achieve independent living and employment. The defendant denied each of the plaintiff's requests and the plaintiff and his mother requested a Due Process hearing from the State Department of Education pursuant to the IDEA, Section 504, and state law.

During the course of the administrative hearing, the plaintiff presented testimony from himself, his mother, Dr. Smaller, and an Academic Dean at Mitchell College regarding his needs and how the defendant had denied him FAPE during the 1998-99 and 1999-00 school years, and for the period following June, 2000, as well as describing his current unmet needs. During the course of the hearing, the plaintiff had established that the defendant had not provided him with any of the notices that were required by the IDEA's procedural safeguards, Further, the plaintiff had established that the State Department of Education had not approved any of the Defendant's IEP forms and required notices, thereby establishing that they were not in compliance with the requirements of the 1997 amendments to the IDEA, (P.L. 105-17 effective June 4, 1997), and the final U.S. Department of Education regulations that become effective on May 11, 1999. 64 *Fed. Reg.* No. 48 p. 12406-06 (March 12, 1999). Further, the plaintiff had established that the defendant's 1998-99 and 1999-00 IEP's had not provided him with FAPE and that he was not prepared for employment and independent living because he was not employable and had unmet vocational, academic, social, and other needs.

The plaintiff presented evidence that the defendant did not follow the 1999-00 IEP and that he did not achieve the IEP goals and objectives, as well as did not receive all the services and education specified in that document. In addition, the plaintiff presented the testimony of Dr. Smaller who had completed an independent psychological evaluation of the plaintiff's current needs and how the 1999-00 IEP did not provide FAPE. The Academic Dean from Mitchell College testified about the specialized program of instruction that was available from the college's C.A.R.E.S.' program for students with disabilities and how that program would prepare the plaintiff for a college program.

The impartial hearing officer determined that the plaintiff had been "properly graduated" by the defendant and rejected the plaintiff's procedural and substantive arguments that he did not receive FAPE during the 1999-00 school year and that he was entitled to an award of at least two years of compensatory education to remedy the gross violations of his IDEA rights.

The plaintiff seeks the reversal of the impartial hearing officer's final decision and the award of appropriate relief to remedy the violations of his substantive and procedural rights.

## III. ARGUMENT

### A. Applicable Summary Judgment Standards

The provisions of the *Federal Rules of Civil Procedures Rule 56 (a), (c),* provide *inter alia,* that a party is entitled to summary judgment if it is determined by the Court that there are no material facts in dispute and the party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S. Ct. 2505 (1986). Summary judgment may be granted by the Court, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. Glenn Falls,* 999 F. 2d 655, 661 (2d Cir. 1993)(citations omitted). A dispute over a material fact occurs

" if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Aldrich v. Randolph Central School Dist.,* 963 F. 2d 520, 523, (2d Cir.) *cert den.*506 U.S. 965 (1992). The Court is required to resolve "all ambiguities and draw all inference in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich, supra,* at 523. Summary judgment is appropriate if a non-moving party "has failed to make a sufficient showing on an essential element of (its) case with respect to which (it) has the burden of proof." *Celotex Corp. v. Caltrett,* 477 U.S. 317,323, 106 S. Ct 2548 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Malfucci* 923 F. 2d 979, 982 (2d Cir.), *cert den.*502 U.S. 849 (1991). However, "(t)he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of any *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. at 247-48 (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, supra,* at 248. In opposing a motion for summary judgment, the non-moving party may not assert mere denials but must "set forth specific facts showing that there is a genuine issue for trial" See, *D'Amico v. City of New York,* 132 F. 3d 145, 149 (2d Cir. 1998).

### B. Applicable Judicial Review Standards for IDEA Administrative Decisions.

The purpose behind the Congressional enactment of the IDEA was to promote the education of students with disabilities who required special education and related services through the provision of a free appropriate public education. *Board of Education v. Rowley,*

458 U.S. 176, 178-82, 102 S. Ct 3034 (1982). [4]The IDEA was enacted to ensure that students with disabilities have their rights protected and receive appropriate public education that will meet their unique needs and prepare them for employment and independent living. 34 C.F.R. §300.1(a), (b). In order for a special education program and placement to be appropriate, the student's individual education program (IEP) must be reasonably calculated to provide the student with meaningful educational benefits. *Rowley, supra,* at 207. In order for an IEP to provide meaningful educational benefits, the IEP must provide the student with something more than mere trivial advancement. *Mrs. B. v. Milford Bd. of Ed.,* 103 F. 3d 1114, 1121 (2d Cir. 1997), (citing *Hall v. Vance County Bd. of Ed.,* 774 F.2d 629,636 (4th Cir. 1985)("Clearly, Congress did not intend that a school system could discharge its duty under the (IDEA} by providing a program that produces some minimal academic advancement, no matter how trivial.").[5]  Automatic advancement and promotion from grade to grade in a regular education setting was not considered proof in or itself that a student was receiving an appropriate education pursuant to the IDEA. *Rowley, supra,* at 203 fn. 25. In addition, the *Rowley* Court also required a judicial determination as to whether there was compliance by the defendant with the IDEA's procedural requirements,[6]in order to determine if the development of the student's IEP was appropriate.  *Rowley, supra,* at 206, *Id.,* at 210, fn. 32. If a parent or student is dissatisfied with the IEP, then that party can file an administrative complaint with the Connecticut Department of Education-Due Process Unit

---

[4] The IDEA was formerly called the *Education for All Handicapped Children Act* or the EHA until its title was revised to the *Individuals with Disabilities Education Act* or the IDEA.

[5] In order to confer meaningful education benefits upon a student with a disability, an appropriate IEP is one that is likely to produce progress, not regression. *Walczak v. Florida Free Union School District,* 142 F.3d at 130.

[6] The IDEA's *Procedural Requirements* are codified at 20 U.S.C. §1415(b), (c), (d), and 34 C.F.R. §§300.500 to 300.517, and require a local board of education such as the defendant to comply with all of the statutory and regulatory requirements including the provision of written prior notice, 34 C.F.R. §300.503; notice of procedural safeguards, 34 C.F.R. §300.504; and notice that a student's rights will transfer to the student upon reaching age eighteen. 34 C.F.R. §300.517.

who then appoints an impartial hearing officer to hear and decide the complaint. 20 U.S.C. §1415 (f).

If the parent or student is dissatisfied with or aggrieved by the final administrative determination issued by the impartial hearing officer, then a civil action to federal court may be filed whereby the federal court is authorized by statute to receive the records of the administrative proceeding, base its decision on the preponderance of the evidence standard, and provide any such relief that the Court determines to be appropriate. 20 U.S.C. §1415 (i) (2)(A), (B); *Walczak v. Florida Union Free School District,* 142 F. 3d 119, 122-23 (2d Cir. 1998). The burden is on the school district to demonstrate that its IEP, program and placement were reasonably calculated to confer the IDEA's educational benefits upon the student. *Walczak, supra,* at 134.[7]

Judicial review by the federal court of an administrative decision issued by an impartial hearing officer by is generally based upon the preponderance of the evidence standard after a review of the record of the administrative proceedings, unless there is a request to further supplement the record. 20 U.S.C. §1415 (i)(2)(B). [8] In addition, the Court is required to give 'due weight' to the state administrative proceedings, *Rowley, supra,* 458 U.S. at 206; however, the Court is not required to give 'due weight' to conclusions of law involving the "proper interpretation" of the IDEA and its requirements. *Mrs. B. v. Milford, supra,* 103 F. 3d at 1121, *See, P.J. v. Conn. Board of Ed.,* 788 F. Supp. 673, 679 (D. Conn. 1992). (an impartial hearing officer's decision merits deference only when it is supported by facts in the record and is correct as a matter of law.). The federal court is free to accept or reject the impartial hearing officer's administrative findings, however, "if the district court chooses to depart from the agency's ruling, it should provide some explanation for its

---

[7] The State Department of Education's regulations have codified this requirement of the *Walczak* decision at RSA §10-76h-14(a).

[8] The plaintiff in the present matter has not submitted such a request or motion.

departure," *Carlisle Area School Dist. v. Scott,* 62 F. 3d 520, 535 (3d Cir. 1995); so as to avoid substituting its "…own notions of sound educational policy for those of the school authorities which they review." *Rowley, supra,* 458 U.S. at 206.[9] In order to give proper deference to the impartial hearing officer's decision, the Court must find that the impartial hearing officer's decision was supported by its findings of facts in the record and that it is correct as a matter of law. *P.J. v. Connecticut Bd. of Ed.,* 788 F. Supp. 673, 679 (D. Conn. 1992); *J.B. v. Killingly Bd. of Ed.,* Docket No. 3:97 CV 1900 (GLG), 25 IDELR 324 (D. Conn. 1997). An impartial hearing officer's findings must be supported by substantial evidence on the record of the administrative proceeding, *See, Balsamo v. Chater,* 142 F. 3d 75, 79 (2d Cir. 1998),[10] and the substantial evidence rule applies equally to inferences and conclusions that are drawn from the findings of facts. *Gonzales v. Apfel,* 23 F.Supp. 179, 189 (D. Conn. 1998).[11] Credibility determinations are generally within the province of the impartial hearing officer, *Lieb v. Board of Examiners in Nursing,* 177, Conn. 78,86 (1979), See, *Plummer v. Apfel,* 186 F. 3d 422,429 (3d Cir. 1999); however, an impartial hearing officer is not free to perfunctorily ignore or reject substantial evidence on the record and then make factual findings that could not have been "… legally, logically, and reasonably found…," *Ruwet-Sibley*

---

[9] Less weight is due to an impartial hearing officer's decision for matters not involving educational expertise, "because the federal court is just as well suited to evaluate the situation," as the administrative hearing officer. *Kings County School Dist. v. Zelazny,* 325 F. 3d 724, 728 (6th Cir. 2003).

[10] Generally, administrative decisions under Connecticut's *Uniform Administrative Procedures Act* are required to be supported by substantial evidence on the record which is defined as evidence in the "…administrative record that affords a substantial basis of fact from which the fact at issue can be reasonably inferred… ." *Board of Education v. Commission on Human Rights and Opportunities,* 266 Conn. 492, 503-04 (2003).

[11] Due Process hearings in Connecticut that are requested pursuant to the provisions of 20 U.S.C. §1415 (f)(1) and 34 C.F.R.§ 300.507(a), are considered to be contested administrative proceedings under state law and are governed by Section 10-76h of the *Connecticut General Statutes,* the provisions of the *Uniform Administrative Procedures Act, Conn. Gen. Stat.* §4- 166 *et seq.,* and the Connecticut Department of Education's administrative regulations. RSA §10-76h-1 *et seq. Unified School District v. State Dept. of Ed.,* 45 Conn. App. 57, 65, 699 A. 2d 1077 (1997); *Mrs. C. v. Wheaton,* 916 F. 2d 69,71 (2d Cir. 1990).

*Equipment Corp. v. Stebbins,* 15 Conn. App. 21, 25 (1988); and then conclude that the

opposite was true. *Nelson v. Nelson,* 13 Conn. App. 355, 359 (1988). Therefore, judicial

deference to the impartial hearing officer's final decision is warranted only if "...the state

hearing officer's review has been thorough and careful." *Walczak, supra,* 142 F. 3d at 129;

*P.J. v. Connecticut Bd. of Ed.,* 788 F. Supp at 679.

### C. The Court Can Find That There is No Issue of Material Fact With Respect to the Defendant's Failure to Provide the Plaintiff With Required Notice of His Procedural Rights and Safeguards During the 1998-99 and 1999-00 School Years.

The plaintiff has alleged in the *Amended Complaint* that the defendant had failed

to provide him with any of the required notices of his procedural safeguards as required by

the 1997 Amendments to the IDEA, 20 U.S.C. §1415(d), and its final implementing

regulations, 34 C.F.R. §300.504, throughout the 1998-99 and 1999-00 school years. *Amended*

*Complaint ¶¶37,38,40,and 56.*[12] The impartial hearing officer accepted the plaintiff's Exhibit

*P-42* consisting of 113 pages of correspondence between the defendant and the State

Department of Education relative to the review of its IEP and other forms that were not

approved by the State Department of Education as being in compliance with the 1997

Amendments to the IDEA (P.L. No. 105-17, 111 Stat. 37, June 4, 1997)[13] and the implementing

regulations. *Transcript of October 24, 2002 Hearing, pp. 3 to 7.* (annexed hereto). Instead,

the impartial hearing officer avoided any discussion of this substantial evidence on the

record altogether, despite having two of the four issues presented to the impartial

hearing officer for resolution involved the deprivation of procedural rights.[14] Therefore, the

---

[12] The final U.S. Department of Education IDEA regulations became effective on May 11, 1999. 64 *Fed. Reg. No. 48 pp. 12406-07 (March 12, 1999).*

[13] See, *J.B. v. Killingly Bd. of Ed.,* Docket No. 3:97 CV 1900 (GLG), *slip op. fn 4,* 27 IDELR 324 (D. Conn. 1997), for a full discussion of the IDEA's legislative enactment and the legislation's effective date of June 4, 1997.

[14] The *first issue* involved whether the defendant had followed proper procedures in determining plaintiff's eligibility for graduation. The *fourth issue* dealt with whether the

impartial hearing officer's failure to discuss any of the evidence or testimony relating

to the defendant's failure to provide the plaintiff with any of the required notices per 34

C.F.R. §300.504 was not a mere oversight. Instead, this avoided a decision on the critical

Issue in dispute of whether there was a resulting denial of FAPE due to the lack of any

proper notice, especially since there was substantial evidence and largely uncontradicted

evidence presented in plaintiff's Exhibit P-42 that had conclusively established that the

defendant's IEP and other forms had not been approved by the State Department of

Education during either the 1998-99 or 1999-00 school years for compliance

with the 1997 Amendments to the IDEA or the 1999 final regulations promulgated by the U.S.

Department of Education in order to implement that statute. RSA §10-76d-11(d). ("Each

board of education *shall* use a standardized individualized education form. *Said form shall*

*be subject to the approval by the state board of education."*)(emphasis added). Instead,

of discussing this evidence in the final decision, the impartial hearing officer avoided any

discussion of the effect upon the plaintiff's procedural rights, except for a passing reference

in the decision that upon age eighteen, the plaintiff's educational rights were transferred

from his parent to him, *Final Decision, Case No. 02-138, Finding of Fact No. 10;* and another

general reference that prior notice of graduation had to be provided. *Final Decision, Case*

*No. 02-138, Conclusion of Law No. 3.*

     The IDEA and its implementing regulations require that parents of a student with a

disability receive notice from the defendant of approximately fourteen (14) procedural

safeguards upon the initial referral for an evaluation, upon each notification of a PPT (or IEP)

meeting, upon the reevaluation of the student, and upon receipt of a request for a due

process hearing. 20 U.S.C. §1415(d)(1)(A), (B), (C); 34 C.F.R. §300.504(a)(1), (2), (3), (4). "The

procedural safeguards notice *shall contain a full explanation of the procedural safeguards,*

---

defendant had engaged in gross procedural violations that entitled the plaintiff to an
award of compensatory education. *Final Decision, Case No. 02-138,* page one. (annexed
to Amended Complaint.).

written in the native language of the parents, unless it is clearly not feasible to do so, and written in an understandable manner under this section and under regulation promulgated by the Secretary (of education)…." 20 U.S.C. §1415(d)(2). ( emphasis added). If the statutory command speaks in clear and unambiguous terms, then is not subject to construction by the Court and it is the "…function of the Courts to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240 (1989). [15] The Court should find that the U.S. Department of Education's final regulations closely track the statutory language of the idea and that they were "reasonable." *Bell v. Reno, 218 F. 3d 86, 90 (2d Cir. 2000).*

   The content of the notice that is required by the IDEA and its implementing regulations are clear and unambiguous and required the defendant to provide the plaintiff or his parent with written notice of *all* the procedural safeguards available as provided for in the statute, 20 U.S.C. §1415(b)(1) to (8), and the final IDEA regulations. 34 C.F.R. §§300.500 to 300.529; 34 C.F.R. §300.504(b), as well as prior written notice of proposed decisions or the refusal to make changes in the educational program, services, or placement. 34 C.F.R. §300.503(b). Both the statute and/or regulation required the defendant to provide notice that included notice of rights to independent evaluations, prior written notice of any proposals to initiate or change an educational program or placement, parent consent, access to educational records, complaint procedures, discipline procedures, mediation and due process hearing rights, right to file a civil action, recovery of attorney's fees, and elsewhere within the regulations that notice is provided informing the plaintiff and his parent of the transfer of his education rights at least one year before reaching the age of eighteen.34 C.F.R. §300.347(c), 34 C.F.R. §300.517 (a)(3).

   A comparison of the defendant's Exhibits B-8, B-16, B-22, B-23, and B-27, and

---

[15] Conversely, if the statute is found to be ambiguous, the Court may engage in "a permissible construction of the statute," and ascertain if the Department of Education's final regulations were designed to fill a permissible gap in the federal statute. *Chevron, USA v. Natural Resources Defense Council,* 467 U.S. 837, 843 (1984). The Court can find that the final regulations at issue were entirely consistent with the provisions of 20 U.S.C.§1415(d).

plaintiff's Exhibit P-42 (1,2,3,4,5,7,39,88, and 89) as well as other pages within that exhibit reveal that none of the IEP or other forms used by the defendant throughout the 1998-99 and 1999-00 school years had been approved by the Department of Education for compliance with the provisions of either 20 U.S.C. §1415(d)(1), (2), or 34 C.F.R. §500.504(a), (b), or contained the requisite prior written notice. 34 C.F.R. §300.503(b). In fact, the State Department of Education had informed the defendant on several occasions that none of its IEP and other forms in use during the 1998-99 and/or 1999-00 school years had ever been approved for use or were not otherwise in compliance with the 1997 Amendments to the IDEA or the 1999 implementing regulations issued by the U.S. Department of Education. Exhibit P-42. [16] In fact, nowhere within the federal statute or the final regulations was there any language that allowed the defendant to provide notices that contained less information on the procedural rights or written prior notice than the minimum notice actually prescribed by the 1997 Amendments to the IDEA or its 1999 implementing regulations. Therefore, the Court can find that the plaintiff did not receive notice of any of his procedural or other rights, including written prior notice that complied with the IDEA and its implementing regulations, at anytime during the 1998-99 and 1999-00 school years.

   To the extent that the defendant may argue that the plaintiff is exalting form over substance, the Second Circuit recognized that the IDEA's administrative procedures were designed to ensure that student with disabilities who require special education receive FAPE. *J.C. v. Regional School Dist. No. 10,* 278 F. 3d 119, 121 (2d Cir. 2002). Further, the U.S, Supreme in *Board of Education v. Rowley,* 458 U.S. at 206-07, succinctly stated that a reviewing Court's function in civil actions filed pursuant to 20 U.S.C. §1415(i) (2(A), (formerly 20 U.S.C. §1415 (e)(2)) "…is twofold.  *First,* has the State complied with the procedures set forth in the Act? And *second,* is the individualized education program

---

[16] The State Department of Education has such authority to review and approve defendant's IEP and other forms pursuant to state regulations codified at RSA §10-76d-11(d).

developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" The defendant had the burden of proof on both of these issues. *R.R. v. Wallingford Bd. of Ed.,* Docket No. 3:99 CV 1064 (GLG), 35 IDELR 32 (D. Conn. 2001) (citing *Walczak v. Florida Free Union School Dist.* 142 F. 3d at 122 and *M.S. v. Bd. of Ed.,* 231 F, 3d 96, 102 (2d Cir. 2000)). However, rather than discuss this evidentiary lacuna in the administrative record through the defendant's failure to establish compliance with the IDEA's procedural notice requirements or discuss the fact that the defendant had failed to introduce any copies of its procedural safeguards as exhibits for review,[17] and/or discuss the effect that the lack of required notice had upon the plaintiff's special education rights, the impartial hearing officer elected to ignore that altogether and then conclude that because the plaintiff and his mother had participated in a PPT meeting on December 14, 1999, some six months prior to the June, 2000 graduation, that meeting apparently had served as an adequate substitute for the lack of any prior written notice required per the provisions of 20 U.S.C. §1415 (b),(c), 34 C.F.R. §300.503(a), (b), (c); and the procedural notices that were required by the provisions of 20 U.S.C. §1415(d)(1), (2); 34 C.F.R. §300.504(a), (b). [18]The impartial hearing officer then concluded that the plaintiff's claim that "...graduation was inappropriate on lack of prior written notice is hereby rejected." *Final Decision, Case No. 02-138, Conclusion of Law No. 3* (October 29, 2002).

The impartial hearing officer has not cited to controlling legal authority whatsoever to support Conclusion of Law No. 3. [19] While the federal court is generally required to give

---

[17] A review of defendant's Exhibits B-1, B-7, B-8, B-11, B-12, B-15, B-16, B-23, and B-27, reveals that none of the notice of the procedural notices required by the IDEA were placed on these forms.

[18] Further, the impartial hearing officer had ignored completely the fact that the PPT meeting that was supposed to have been convened one month later to review the plaintiff's progress was never scheduled by the defendant.  Exhibit B-12 (3).

[19]The Quaker *Valley School Dist.,* 30 IDELR 634 (SEA, Pa.1999), administrative decision cited by the impartial hearing officer is not controlling and can be easily distinguished from the instant action because even though the student in that case had been graduated without

due weight and deference to the impartial hearing officer's conclusions, that standard does not invite any relaxation of the Court's traditional judicial review function, and such deference is only warranted when there had been a "proper interpretation" of the IDEA's requirements by the impartial hearing officer. *Mrs. B. v. Milford Bd. of Ed.,* 103 F. 3d at 1121. Here the Court is not being asked to defer to the impartial hearing officer's conclusion regarding the application or interpretation of any educational policy, *Walczak,* 142 F.3d at 129, but whether the impartial hearing officer's legal interpretation of the IDEA was proper and correct, *See, Mrs. C. v. Voluntown Bd. of Ed.,* 226 F.3d 60,66 (2d Cir. 2000); and was therefore properly supported by facts in the record and is correct as a matter of law. *P.J. v. Connecticut Bd. of Ed.,* 788 F. Supp. 673,679 (D. Conn. 1992). In the present matter, the Court can conclude as a matter of law that there is no evidence to controvert the plaintiff's contention that the defendant had completely failed to comply with the IDEA's notice requirements and that failure had operated to deprive the plaintiff of his procedural rights throughout the period encompassed by this appeal. *Rowley, supra,* at 206-07.

The IDEA does not contain any language authorizing a local school district, such as the defendant, to avoid compliance with the *written* procedural notice requirements, nor does that federal statute contain any implied exception that would allow physical attendance at a PPT meeting to serve as a substitute for the mandatory notices required by the IDEA and its implementing regulations. Nevertheless, this was the net effect of the impartial hearing officer's administrative determination. *Final Decision, Conclusion of Law*

---

the scheduling of a required PPT meeting, there was evidence that he had made sufficient progress on IEP goals and objectives, had received sufficient, high school credits, and had been applying to college in anticipation of graduation, rather than attending college.

In contrast, the plaintiff herein was awarded high school credit, even though there was evidence that he was not receiving all the services specified in his IEP, was not making satisfactory progress on his IEP goals and objectives, was receiving credit for courses not listed in the Greenwich High School Handbook, and had not applied to college, per the individual transition plan, and was working instead at a part-time job at a local pet store at the time of his graduation.

*No. 3.* As the Connecticut Appellate Court had stated in *Unified School District v. Connecticut Dept. of Ed.,* 64 Conn. App. 273, 285, 35 IDELR 30 (2001): "*Compliance with the (IDEA) is the responsibility of the school district, not the student.*" (emphasis added.). There is no evidence that the defendant had complied with the IDEA's procedural requirements. Therefore, the Court should find that impartial hearing officer's final decision was not supported by substantial evidence on the record and the legal conclusions therein regarding the adequacy of the notices of procedural rights were not proper and correct.

### D. The Court Can Find That Defendant's Violations of Plaintiff's Procedural Rights And the Lack of Any Written Prior Notice of Graduation Have Denied Him FAPE.

Ordinarily the violation of the IDEA's procedural requirements will not automatically mean that a denial of FAPE has occurred. However, when that procedural violation resulted in the loss of educational opportunity or seriously infringes upon the parent's (or student's) right to participate in the development of the IEP, then a denial of FAPE has clearly resulted. *Connecticut Department of Education Final Decision and Order, Case No. 02-295, Conclusion of Law No.* 10 (September 8, 2003); (citing *Scottsdale (AZ) Unified School District,* 38 IDELR 204 (2003) (citing *Amanda J. v. Clark County School Dist,* 267 F.3d 877, 892 (9th Cir. 2001); *W.G. v. Bd. of Trustees,* 960 F. 2d 1479, 1485 (9th Cir. 1992); and *Dept. of Ed. v. Cari Rae S.,* 158 F. Supp. 1190, 1195 (D. Haw. 2001)). [20]

In the present matter, neither the plaintiff nor his parent were ever properly informed by the defendant of their procedural safeguards and that failure resulted in the loss of educational opportunity during the 1998-99 and 1999-00 school years, and thereafter, as the direct result of the defendant's decision to graduate the plaintiff during June, 2000, despite evidence that the plaintiff was not receiving all of the services in his 1999-00 IEP and was not

---

[20] See, *DiBuo v. Bd. of Ed.,* 309 F. 3d 184,190 (4th Cir. 2002); *T.S. v. Independent. School Dist.,* 265 F. 3d 1090, 1095 (10th Cir. 2000); *Knable v. Bexley School Dist.,* 238 F. 3d 755,765 (6th Cir. 2001).

making the progress on his IEP goals and objectives. For example, in defendant's Exhibits B-8(6), (7) and plaintiff's Exhibit P-17 (5), (6), (7), (8), the plaintiff was required to obtain grades of "C" or better in all of his coursework throughout the 1999-00 school year in World Literature, Crime and Justice, Algebra II, and Organization. However, in defendant's Exhibit B-17 (1), the plaintiff had received a final grade of "D" in World Literature and a "D" in Algebra II, as well as a "C-" and a "D" in Lifetime Sports. A grade was not recorded for the Crime and Justice course and it appeared that the plaintiff had dropped out of a class entitled Animal Behavior. Clearly, the three grades of "D" and the one grade of "C-"were inconsistent with the 1999-00 IEP goals and objectives that required a grade of "C" or better. Further, the 1999-00 IEP required that the defendant's school social worker provide the plaintiff with one-half hour of individual 1:1 counseling per week. Exhibit B-8 (10), P-17. The school social worker Norma Seluktekin testified that she did not provide that service and that she  may have met the plaintiff two or three times during the 1999-00 school year even though the plaintiff's IEP specified one-half Hour of direct counseling per "cycle. " *Transcript of October 18, 2002 Hearing, pp. 184-85, 190-91. (*attached hereto). There is no record that the plaintiff's IEP was modified at the PPT meetings on December 14, 1999 or May 26, 2000 to eliminate counseling as a related service. Exhibit B-12, Exhibit B-16. A review of defendant's Exhibit B-8 (9), plaintiff's individual transition plan, [21] also revealed that the plaintiff required assistance with the investigation of post-high school options including applying to college or vocational schools and participate in appropriate vocational testing. Norma Seluktekan, the school social worker also testified that in her opinion she had

---

[21] An individual transition plan is required for any student over the age of sixteen and it requires a coordinated set of activities that is designed within an outcome oriented process that promotes movement from school to post-school activities including post-secondary education, vocational training, integrated employment, adult education, adult services, independent living, or community participation. The plan includes instruction, related services, community experiences, development of employment and other post school adult living objectives, acquisition of adult living objectives and a functional vocational evaluation, taking into account the student's interests and preferences. 34 C.F.R. §300.29.

ongoing concerns with the plaintiff's ability to plan for himself after high school, manage to

obtain employment, or whether he would be able to attend college. *Transcript of October

18, 2002 Hearing pp. 185-86.* (attached hereto).There was no evidence presented to the

impartial hearing officer establishing that the plaintiff had actually applied to any

vocational school or college as required by the transition plan and the defendant had

recorded a code "3" indicating that there was little or no progress on this objective. The

transition plan indicated that the plaintiff was supposed to participate in appropriate

vocational testing during the Fall, 1999, however, the defendant did not complete a

vocational assessment until February 10, 2000, Exhibit B-14 (1), (2), that report was not

formally reviewed at any PPT meeting, including the May 26, 2000 PPT meeting that was

scheduled less than one month prior to the plaintiff's graduation. Exhibit B-16.[22]The 1999-00

IEP also contained goals and objectives related to organizational skills, Exhibit B-8 (8),

however there was no evidence that the plaintiff was making satisfactory progress towards

those objectives, in particular the objective related to class attendance as reflected in the

minutes of the December 14, 1999 PPT meeting. Exhibit B-12 (3). ("(plaintiff) did not attend

Science class this quarter…, (plaintiff) is failing Algebra II which he needs fro graduation…,

(plaintiff) will need support…in terms of organizational skills and time

management…'(plaintiff) is not responding appropriately to staff requests with respect to

being loud and disruptive."). The 1999-00 report card had also indicated that the

plaintiff had also received 2.5 credits towards his graduation in Support Resource and

Resource Room courses, even though the defendant's 1999-00 *Greenwich High School

Handbook* had not contained any such course listings, Exhibit P-39 (28) to (31), and no such

credit courses were indicated on the 1999-00 IEP. Exhibit B-8. Despite the evidence that the

plaintiff was not making satisfactory progress on all of his IEP goals and objectives, was

---

[22] The defendant recorded that the parent was purportedly in agreement with the outcome
of the May 26, 2000 PPT meeting, however, there is no record that the plaintiff, who was
over the age of eighteen, was in agreement with the defendant's decision to graduate him
the following month. Exhibit B-16 (2).

receiving credit towards graduation for courses that did not even exist, had unresolved issue

relating to his transition plan, and had significant unmet needs, the impartial hearing officer

ratified the May 26, 2000 PPT decision that found that the plaintiff was "on target to

graduate," Exhibit B- 16(2), by concluding that "(t) he student's eligibility for graduation was

proper." *Final Decision Case No. 02-138, Final Decision and Order No. 1.* (October 29, 2002).

Despite overwhelming evidence that the defendant had failed to provide the

plaintiff with notice of his rights to written prior notice and procedural safeguards, along

with other evidence establishing that the plaintiff had unmet special education needs

during the 1999-00 school year, and that he was not "on target" to graduate, the

defendant's decision to graduate him during June, 2000, thereby terminating his special

education services. That decision was upheld by the impartial hearing officer as "proper."

*Id.* In particular, the impartial hearing officer had concluded that although the plaintiff's:

> "…academic progress grade to grade (was) not stellar, (it) was sufficient for
> the student to meet the regular education graduation requirements established by
> the State of Connecticut (C.G.S. Section 10-221a) and the Board. No evidence was
> presented to establish that the student required modifications of the state and local
> graduation requirements or that the PPT had found those requirements to be
> inappropriate."

*Final Decision, Case No. 02-138, Conclusion of Law No. 2* (October 29, 2002).

In the present matter, there was no indication in the plaintiff's 1999-00 IEP

establishing any graduation criteria, regular or otherwise. Instead, the 1999-00 IEP was

completely silent, except for a passing reference on the individual transition plan that the

plaintiff's "projected" graduation date would be June, 2000. Exhibit B-8 (9). The IEP recorded

the plaintiff's first day of entry into special education as September 24, 1992, but it failed to

establish any exit criteria. Exhibit B-8 (1), B-16. The impartial hearing officer correctly noted

that graduation was considered to be a change of placement that required the defendant

to provide prior written notice of that change a reasonable time before the actual

graduation as required by the provisions of 34 C.F.R. §300.122(a)(3)(i), (iii). *Final Decision,*

*Conclusion of Law No. 3* (October 29, 2002). The prior written notice required by the IDEA

does not allow a passing reference to a "projected graduation date" on an IEP form, but

required the defendant to actually provide a *written notice* that contained the action

proposed or refused by the defendant, an explanation of the reasons that the defendant

had proposed or refused to take the action, a description of any other options that the

defendant had considered, a description of the evaluation procedures or tests record that

supported the defendant's proposed action or refusal to take such action, and a statement

that the plaintiff or his parent had received notice of their procedural safeguards. 34 C.F.R.

§300.504(b)(1) to (7). A review of the 1999-00 IEP documents reveals that not one of the

requirements of the prior written notice regulation had been satisfied by the defendant,

Exhibit B-8, with the possible exception that a box had been marked indicating that the

procedural safeguards may have been provided at the May 26, 2000 PPT meeting, less than

one month before the June, 2000 graduation. Exhibit B-16. On page two (2) of Exhibit No. 16,

the defendant had indicated that actions that were refused at the PPT meeting and that

other options that were considered but "not recommended" by the PPT were both "N/A",

indicating that they were not applicable. The impartial hearing officer had also concluded

that because the plaintiff and his parent had participated in a PPT some six months prior to

the graduation, any claim that the graduation was inappropriate due to the lack of any

written prior notice was "hereby rejected." *Final Decision, Case No. 02-138, Conclusion of

Law No. 3.* (October 29, 2002). Apparently the impartial hearing officer reasoned that mere

presence at a PPT meeting on December 14, 1999, served as an adequate substitute for

the receipt of the actual provision of the *written prior notice* required by the provisions of 34

C.F.R. §300.503(b). However, the impartial hearing officer did not cited to any controlling

legal authority to support that legal conclusion. In contrast, the plaintiff had cited to the

provisions of 34 C.F.R. §300.503(a)(1)(i) that required the defendant to provide to provide

*written prior notice* of the graduation within a reasonable time *before* the actual

graduation date. Not only did the defendant fail to provide any *written prior notice* that conformed to the regulatory requirements, the plaintiff had argued that the purported notice that was given at the May 26, 2000 PPT meeting was not provided within a reasonable period of time before the June, 2000 graduation date citing to the administrative decision of *Cedarburg School District,* 36 IDELR 220 (Wisconsin SEA, March 18, 2002). (Finding that written notice on September 17, 2001 for a proposed graduation during January, 2002 was an insufficient amount of time even though the student had matriculated enough credit hours because the parents had not participated in the development of the criteria for determining graduation with a regular education diploma, and therefore could not "understand the implications of those decisions for the child's future eligibility for graduation with a regular education diploma. 64 Fed. Reg. 12556(1999)."). If the hearing officer in *Cedarburg* found the written prior notice of a graduation provided four (4) months prior to the graduation date was not reasonable, then the purported prior notice provided by the defendant less than four *weeks* before plaintiff's graduation date should have also been found to have been unreasonable since there was an insufficient amount of time provided by the defendant to the plaintiff or his parent to "*understand the implications of those decisions for (the) child's future eligibility for graduation with a regular education diploma." Cedarburg, supra,* (citing 64 Fed. Reg. p. 12226 (1999) (emphasis added.).

### E. The Court Can Find That Even Though the Plaintiff Had Turned Age Eighteen During the 1999-00 School Year, He Lacked the Capacity to Provide Informed Consent.

Throughout the hearing the defendant had asserted that the Second Circuit's decision in *Mrs. C. v. Wheaton,* 916 F. 2d 69 (2d Cir. 1990) controlled in part the outcome of the hearing. *Transcript of October 24, 2002 Hearing, pp.* 183-84. The plaintiff agreed, but not for the same reasons cited by the defendant. In *Mrs. C.,* one of the many   issues confronted by the Court of Appeals, like the impartial hearing officer in this matter, was whether a

student over the age of eighteen who was not adjudicated incompetent or incapable could provide informed consent to discontinue his educational and other services. *Id.* at pp. 72 - 73. The Court of Appeals answered that question by holding that there needed to be evidence establishing: 1) compliance with the IDEA's procedural safeguards, and 2) by requiring evidence that a student over the age of eighteen had provided *informed consent,* that is "…the '*consent'* is an informed one, i.e., the {IDEA} procedural safeguards are followed…," *before* educational services could be discontinued. *Id.* at p. 74. In the absence of such evidence, the Court in *Mrs. C.* indicated that s student's consent would be considered to be "ineffective." *Id.*

Despite this substantial evidence on the record of the administrative hearing, including the impartial hearing officer's own finding that the plaintiff had been diagnosed with Asperger's Syndrome and ADHD in 1993, *Final Decision, Finding of Fact No. 1,* the impartial hearing officer's decision is devoid of any discussion of the impact that those two disabilities, either individually or collectively, had upon the plaintiff's judgment and capacity to engage in any informed decision-making. Instead, the impartial hearing officer found that there was no evidence that the plaintiff had been found incompetent or was unable to provide informed consent. *Final Decision, Case No. 02-138, Finding of Fact No. 3.* However, those findings ignored or failed to consider plaintiff's well-established history of "cerebral deficits and impulsivity," Exhibit-P-1 (3); "emotional lability, poorly developed social skills, distractibility, poor concentration," Exhibit P-1 (6); history of perseveration in thought processes and abnormal speech, Exhibit P-6 (4); history of impulsiveness and poor attention span, P-7 (1); poor coping mechanism including significant reality distortion, disorganized, illogical and strained thinking, Exhibit P-9 (5) distractibility and difficulties with social judgment, P-12 (3); history of impulsive decisions and exercises poor judgment, Exhibit P-15 (2); socially immature, Exhibit P-17 (11); that were based upon the defendant's own evaluations or evaluations that were obtained by the plaintiff's parent and presented to the

defendant at various meetings during the time period July, 1992 to March, 1999. These reports had clearly established throughout the plaintiff's academic career, that at best, he had significant impairments in his decision-making capacity. Rather than giving full force or effect as to how these various professional diagnoses and clinical findings had impacted the plaintiff's ability to provide the defendant with informed consent to discontinue his special education through graduation, the impartial hearing officer placed a gloss on that evidence and was nevertheless able to conclude in the Conclusions of Law that she would "reject" the plaintiff's contention that absence of prior written notice had in anyway prejudiced his rights, *Final Decision, Case No. 02-138. Conclusion of Law No. 3;* and that his graduation "was properly determined," *Final Decision, Case No.02-138, Final* Order *No. 1.* The impartial hearing officer's conclusion was not only against the weight of the medical, psychiatric, and psychological evidence on the record, the decision also ignored the requirement in *Mrs. C.* that there be evidence of the defendant's procedural compliance before an eighteen-year-old student's decision to terminate special education would be considered by the Court to be "effective." *Mrs. C, supra.* In the absence of any evidence establishing the plaintiff's ability to provide the defendant with informed consent, or any evidence establishing the defendant's compliance with the IDEA's procedural requirements, the Court should reject the impartial hearing officer's conclusion that the plaintiff's graduation had in fact been "properly determined."

### F. The Court Can Find That the Impartial Hearing Officer's Final Decision Was Not Supported By Substantial Evidence on the Record.

The impartial hearing officer concluded that the defendant's decision to graduate the plaintiff at the conclusion of the 1999-00 school year had been "properly determined. *Final decision, Case No. 02-138, Final Decision and Order No. 1.* (October 29, 2002). In reaching that final decision the impartial hearing officer made thirteen (13) findings of facts and made six (6) conclusions of law based upon those findings. In effect, the impartial

hearing officer had concluded that the 1999-00 IEP, Exhibit B-8, had provided the plaintiff with FAPE, *Rowley, supra at 206-07;* that his rights were properly protected, *Id.;* and that he was sufficiently prepared for employment and independent living. 34 C.F.R.§300.1(a), (b). However, the administrative record has established the exact opposite was true. The plaintiff had presented evidence that he was not making satisfactory progress on his 1999-00 IEP goals and objectives. The plaintiff presented an independent psychological evaluation report completed by Dr. Smaller during October and November, 2002, less than eighteen (18) months following his June, 2000 graduation. Dr. Smaller concluded that the plaintiff had several significant unmet needs in the vocational and life skills areas, and was in need of work-related social skills due to the absence of a proper transition plan in his 1999-00 IEP. Exhibit P-29 (3). Dr. Smaller had recommended that the plaintiff receive specialized preparation and additional training for his learning, social issues, and daily living skills in order to attend college and to be successful in the workplace. *Id.*[23] Further, the plaintiff had presented evidence that he did not receive prior written notice of proper notice of his procedural rights that had complied with the provisions of 34 C.F.R. §300.503,34 C.F.R§540; and that the IEP and other forms used by the defendant throughout the 1998-99 and 1999-00 school years were not approved by the State Department of Education for compliance with the 1997 Amendments to the IDEA and implementing regulations. Exhibit P-42. Despite this evidence of procedural violations and the substantive denial of FAPE, the impartial hearing officer summarily concluded that he defendant's decision to graduate the plaintiff at the end of the 1999-00 school year with a regular education diploma had been "properly determined."

As a general rule, an administrative hearing officer's decision must be supported by substantial evidence on the record of the hearing. *See, Balsamo v. Chater,* 142 F. 3d 75, 79

---

[23] The plaintiff's individual transition plan developed during the 1999-00 school year had similar goals and objectives. Exhibit B-8 (9).

(2d Cir. 1998). Generally substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a mere scintilla. *Richardson v. Perales,* 402 U.S. 389. 401, 91 S. Ct. 1420 (1971). The substantial evidence rule also applies to inferences that are to be drawn from findings of facts. *See, Gonzales v. Apfel,* 23 F. Supp. 2d 179, 189 (D. Conn. 1998). In order to determine if the administrative decision was proper and reasonable, the Court is required to review the record in order to determine if there was a reasonable basis for the hearing officer's findings. *Ruiz v. Apfel,* 98 F. Supp. 2d 200 (D. Conn. 1999), (citing *Dotson v. Shalala,* 1 F. 3d 571, 577 (7th Cir. 1993). While this line of case law is derived from judicial review of Social Security cases, the administrative law principles apply to judicial review of IDEA cases arising under the *Uniform Administrative Procedures Act, Conn. Gen. Stat.*§4-166 *et seq.*[24] In the Connecticut Supreme Court's decision in *Board of Ed. v. Commission on Human Rights and Opportunities,* 266 Conn. 492, 503-04 (2003), the Court discussed at length the substantial evidence rule, the limits on judicial review of an administrative determination, as well as the requirement that the plaintiff has the burden of proving that the hearing officer's decision was not supported by substantial evidence.

In the present matter, the plaintiff has sustained his burden of proof in establishing that the impartial hearing officer's final decision was not supported by substantial evidence on the record. This civil action does not involve any claim involving the hearing officer's evaluation of the credibility of any witness. *Lieb v. Board of Examiners in Nursing,* 177 Conn. 78, 86 (1979). Instead, this appeal involves the impartial hearing officer's decision to ignore substantial evidence that FAPE had been denied, that procedural rights were violated, and that notices that conformed to the IDEA had not been provided. The impartial hearing

---

[24] The provisions of 34 C.F.R.§300.509(a) outline the minimum rights in a Due process hearing for a hearing that is conducted pursuant to a state's administrative practices act. In Connecticut, the *Uniform Administrative Procedures Act,* Section 10-76h of the *Connecticut General Statutes,* and the State Department of Education's Rules of practice, RSA §10-76h-1 *et seq.* govern the disposition of hearings requested pursuant to 34 C.F.R. §300.507. See, *Unified School District v. State Dept. of Ed.,* 45 Conn. App. 57,65, 699 A.2d 1077,1082 (1997).

officer was not free to completely ignore substantial evidence on the record and then either make factual findings that conflicted with the evidence on the record or elect to avoid making any findings altogether, and then make findings and conclusions that could not have been "…legally, logically, and reasonably found…." *Ruwet-Sibley Equip. Corp. v. Stebbins,* 15 Conn. App. 21, 25 (1988); and then conclude that the opposite was true. *Nelson v. Nelson,* 15 Conn. App. 355, 359 (1988). Consequently, the Court is not required to afford the evidentiary lacuna the "due weight" normally afforded judicial review of IDEA administrative determinations. *Rowley, supra, P.J. v. Connecticut Bd. of Ed.,* 788 F. Supp. at 679.Instead, the Court must determine whether in view of the record, the administrative hearing officer had acted unreasonably, arbitrarily, illegally, or had engaged in an abuse of discretion. *Buckley v. Muzio,* 200 Conn. 1,3 (1986). If the Court should find that the impartial hearing officer's made either invalid or insufficient findings, the Court could remand the matter for another hearing, *Conn. Gen. Stat.* §4-183;*Hartfordv. Hartford Electric Light Co.,* 172 Conn. 71.72 (1976); or the Court could reverse the decision and find that the defendant had failed to sustain it burden of proving that the disputed IEP had conferred FAPE upon the plaintiff, *Walczak, supra,* 142 F. 3d at 134; and that the defendant had complied with the IDEA's substantive and procedural safeguards requirements. *Rowley, supra at* 206-07; *R.R. v. Wallingford Bd. of Ed.,* 35 IDELR 32 (D. Conn. 2001)(citing *Walczak,* 142 F. 3d at 122 and *M.S. v. Bd. of Ed.,* 231 F.3d 102 (2d Cir. 2000)). Given the overwhelming evidence on the record of the defendant's procedural non-compliance with the IDEA notice requirements coupled with the conclusive evidence that the plaintiff had not received FAPE, the Court can find that the impartial hearing officer's decision was not properly supported by substantial evidence on the record and that administrative determination should be reversed.

### G. The Court Should Award the Plaintiff the Relief Requested in the Complaint.

The Court should find that the plaintiff has sustained his burden of establishing that the defendant had denied him FAPE during the 1998-99, 1999-00 school years, and

thereafter. The plaintiff has requested compensatory education as on of the claims for relief. Compensatory education is generally awarded as an equitable remedy a denial of FAPE. *Inquiry of Riffel,* 34 IDELR (OSEP 2000), *Inquiry of Kohn,* 17 EHLR 522 (OSEP 1991)(attached hereto). The remedy is available even if a student has graduated. *Inquiry of Riffel, supra.* The Second Circuit has imposed an additional requirement that the procedural violations must be found to have been "grossly violated," before a Court can award that remedy. *Mrs. C. v. Wheaton,* 916 F.2d 69, 75 (2d Cir. 1990). In the present matter, the Court should find that the defendant's failure to comply with the IDEA's notice and procedural requirements were sufficient to constitute gross violations thereby entitling the plaintiff to receive compensatory education services for a minimum of two years.

The plaintiff requested an independent psychological evaluation at the September 5, 2001 PPT meeting. Exhibit B-23. The provisions of 34 C.F.R. §300.502(a), (b). The defendant did not initiate a due process hearing to establish that the 1999 evaluation completed by Dr. Amato, Exhibit B-6, was appropriate. 34 C.F.R. §300.502(b)(2)(i). Nevertheless, the impartial hearing officer, with reason, had denied the plaintiff's request to be reimbursed for Dr. Smaller's independent psychological evaluation.

The Court can employ its equitable authority and its statutory powers to provide appropriate relief in order to determine whether the plaintiff is entitled to be reimbursed for the costs of the specialized program of instruction provided by Mitchell College to address his unmet academic, social, and other needs, in order that he may be prepared for a regular college or other instructional program.

## IV. CONCLUSION

The plaintiff has sustained his burden of proving that there are no genuine issues of material facts for the Court to resolve as a matter of law with respect to the denial of FAPE, the denial of notice of procedural rights, denial of written prior notice, and the fact that the

impartial hearing officer's final decision was not supported by substantial evidence on the record of the administrative proceeding. The Court has considerable equitable powers to fashion appropriate relief under the facts and circumstances presented. *Burlington v. Dept. of Ed.,* 471 U.S. 359, 370, 105 S. Ct 1996 (1985); *Florence County School Dist. v. Carter,* 510 U.S. 7, 114 S. Ct 361 (1993). In the present matter, the plaintiff has requested the Court award him compensatory education for a period of two years, *Inquiry of Kohn,* 17 EHLR 522 (OSEP 1991), *Inquiry of Riffel,* 34 IDELR 292 *(OSEP* 2000); reimbursement of educational costs of a specialized educational program operated by the Mitchell College, *Burlington, supra;* order the defendant to reimburse him for the costs of the independent psychological evaluation obtained from Dr. Smaller, 34 C.F.R. §300.502(b); award cost and attorney's fees, 20 U.S.C.§1415(i)(3)(B); and any other relief deemed just and proper. The Court has such authority pursuant to the IDEA, 20 U.S.C. §1415(i)(2)(B)(iii).

WHERFORE, for the foregoing reasons the plaintiff respectfully requests the Court to employ such discretion in order to remedy the grievous deprivation his IDEA substantive and procedural rights and other rights and award him appropriate and just relief.

Respectfully submitted,

THE PLAINTIFF

By_____
Lawrence W. Berliner
His Attorney
Klebanoff and Alfano, P.C.
433 South Main Street, Suite 102
West Hartford, CT 06110
1-860-313-5005
Federal Bar No. ct 7002

**<u>APPENDIX</u>**