UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

|  |  |
|---|---|
| DAVID BRUNO | CIVIL ACTION NO. |
|  | 3: 02CV2192 (WWE) |
| Plaintiff, |  |
| v. |  |
| GREENWICH BOARD OF EDUCATION |  |
| Defendant. |  |

May 28, 2004

**MEMORANDUM OF LAW IN SUPPORT OF
BOARD'S CROSS MOTION FOR SUMMARY JUDGMENT**

The defendant Greenwich Board of Education hereby files this memorandum of law in support of its cross motion for summary judgment.

**I.   Procedural Background**

The plaintiff David Bruno received a regular high school diploma and now attends college. He brings this action seeking reversal of the hearing officer's determination that the Greenwich Board of Education (hereinafter "the Board") provided him with a free and appropriate public education. He seeks an award of compensatory education to pay for some or all of his college tuition. No rescission of the plaintiff's Greenwich High School diploma ever has been sought.

The Board filed a motion to dismiss in this action arguing that the plaintiff's asserted causes of action must fail as a matter of law on the basis that, *inter alia*, (i) the plaintiff graduated from high school with a regular high school diploma and thus lacks standing and/or the case is moot; (ii) the relief sought is unavailable given that there were no gross procedural violations alleged in the complaint; (iii) the relief sought is

unavailable as a matter of law.  The Court denied the motion to dismiss, finding that the allegations of the complaint were broad enough to include potential gross procedural violations.   The Board now files a cross motion for summary judgment to demonstrate there is no genuine factual dispute, based on the documentary evidence,  that (i) David Bruno received a free and appropriate public education under IDEA as a matter of law; (ii)  there were no gross procedural violations as a matter of law; and (iii) the relief sought is unavailable as a matter of law.

## II. Legal Standards on Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides:  "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment is a matter of law."  The burden is on the moving party "to demonstrate the absence of any material factual issue genuinely in dispute."  Schwabenbauer v. Board of Education, 667 F.2d 305, 313 (2d Cir. 1981); Heyman v. Commerce & Industry Insurance Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  A material fact is one that might affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).  Factual disputes that are irrelevant or unnecessary will not be counted.  Id.   Once the moving party makes the requisite showing the burden shifts to the opposing party to prove there is a genuine issue that remains in dispute.  Id. at 247-48.  The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine issue for trial.  Id. at 248.

The Second Circuit Court of Appeals has recently noted the following standards apply in an IDEA action such as this:

> In IDEA actions, such as the present one, the administrative record and ruling play a critical role. A district court's decision must rest on the 'preponderance of the evidence developed at the administrative proceedings and any further evidence presented by the parties.' [M.S. v. Bd. of Educ. of Yonkers, 231 F.3d 96, 102 (2d Cir.2000) (quoting Walczak [v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122-123 (2d Cir.1998)].   Moreover, as the Supreme Court has noted, this assessment' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'[Board of Education v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034 (1982)]. 'While federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.' Walczak, 142 F.3d at 129 (quoting Rowley, 458 U.S. at 206, 208, 102 S.Ct. 3034) (internal quotation marks and citation omitted); see also M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 66 (2d Cir.2000) ( 'Judicial deference is particularly appropriate when ... the state hearing officer's review has been thorough and careful.') (internal quotation marks and citation omitted) (alteration in original).

Sherman v. Mamaroneck Union Free School Dist., 340 F.3d 87, 93 (2nd Cir 2003).

### III. Legal Argument

#### A.  David Bruno received a FAPE as a matter of law and his claims are moot

The plaintiff David Bruno's date of birth was September 14, 1981. Defendant's Local Rule 56(a)(1) Statement,[1] ¶ 1. David Bruno required special education in high school:  In 1999, David Bruno was dealing into many typical adolescent developmental issues and was able to find activities in school consistent with his interests; he also, however, experienced anxiety about social situations and lacked some of the more subtle skills to maintain friendships.  Def's 56 (a) (1) St., ¶ 4. Educationally, in 1999 – 2000 David was a capable, competent student especially in the

---

[1] Hereinafter, "Def.'s 56(a)(1) St."

3

area of reading comprehension, but he could fall behind on class work, especially homework. If he wasn't interested in the subject he could be task avoidant. In addition, David could be rigid in his thinking and, at times, resistant to support/ external structures meant to keep him organized and up to date on his assignments. David was, at times, socially immature. Def.'s 56(a)(1) St., ¶ 4. David Bruno attended Greenwich High School during school years 1997-1998, 1998-1999 and 1999-2000. Def.'s 56(a)(1) St., ¶ 2. The plaintiff had an individualized education program ("IEP") and received special education services throughout high school. Def.'s 56(a)(1) St., ¶ 3.

David Bruno graduated from Greenwich High School on or about June 22, 2000 at age 18 with a regular high school diploma. Def.'s 56(a)(1) St., ¶ 5. For the plaintiff, graduation from Greenwich High School was the end to a "significant part" of his life and the end of a lot of fun, possibly the best four years of his life. Def.'s 56(a)(1) St., ¶ 6.

While attending Greenwich High School the plaintiff advanced from grade to grade and earned a 2.3 cumulative grade point average, i.e., passing marks. Def.'s 56(a)(1) St., ¶ 7. At no time during the plaintiff's four years at the Greenwich High School did the PPT modify the state requirements for the plaintiff, as permitted by C.G.S. § 10-221a,[2] nor had the PPT determined at any time that the state requirements

---

[2] C.G.S.§10-221a provides, with respect to high school graduation requirements, the following in relevant part:

> (a) For classes graduating from 1988 to 2003, inclusive, no local or regional board of education shall permit any student to graduate from high school or grant a diploma to any student who has not satisfactorily completed a minimum of twenty credits…

…

> (d) Determination of eligible credits shall be at the discretion of the local or regional board of education, provided the primary focus of the curriculum of eligible credits corresponds directly to the subject matter of the specified course requirements. The local or regional board of education may permit a student to graduate during a period of expulsion pursuant to section 10-233d, if the board determines the student has satisfactorily completed the necessary credits pursuant to this section. **The requirements of this section shall apply to any student requiring special education pursuant to section 10- 76a, except when the planning and placement team for**

4

were inappropriate for the plaintiff.  Def.'s 56(a)(1) St., ¶ 19.  By the end of the 1999-2000 school year, the plaintiff successfully met the requirements for graduation as set forth in C.G.S. § 10-221a and as set forth in the Board high school course of study and, on June 22, 2000, at age 18, the plaintiff graduated from the Board high school with a regular high school diploma.  Def.'s 56(a)(1) St.,¶ 24.   The Board provided meaningful educational benefits to the plaintiff.  Def's 56 (a) (1) St. ¶ 9.

    The plaintiff experienced positive growth in his friendships with peers from ninth grade through senior year and had enjoyable involvement in a school role-playing/strategy club.  Def.'s 56(a)(1) St., ¶ 8.  After high school, the plaintiff wanted to work for a year in order to earn money and have "real world experience," which he thought would be helpful if he needed to get a job during college.  Def.'s 56(a)(1) St., ¶ 10.  From April of his senior year in high school to the date of graduation, without on-going supervision or job coaching, the plaintiff was successfully employed in a part-time job.  Def.'s 56(a)(1) St., ¶ 11.  After graduation, the plaintiff continued in the job he had begun in April 2000 and, without job-coaching or other monitoring, successfully worked there full-time until October 2000.  Def.'s 56(a)(1) St., ¶ 12.  The plaintiff currently attends Mitchell College.  Def.'s 56(a)(1) St., ¶ 13.  Mitchell College is a private independent college offering both associate and bachelor degree programs.  Def.'s 56(a)(1) St., ¶ 15.  Mitchell College is fully accredited by the New England Association

---

      **such student determines the requirement not to be appropriate**. For purposes of this section, a credit shall consist of not less than the equivalent of a forty-minute class period for each school day of a school year except for a credit or part of a credit toward high school graduation earned at an institution accredited by the Department of Higher Education or regionally accredited.

(emphasis added).

of Schools and Colleges. Def.'s 56(a)(1) St., ¶ 16. The plaintiff is taking college courses at Mitchell College. Def's 56 (a)(1), ¶ 14.

This is not a case where the plaintiff is seeking to return to Greenwich High School for services: The plaintiff did not seek to have the high school diploma rescinded. Def.'s 56(a)(1) St., ¶ 17. Having graduated with a high school diploma -- and a regular high school diploma -- the plaintiff received a free and appropriate public education ("FAPE") as a matter of law. "Children who graduate from our public school systems are considered by our society to have been "educated" at least to the grade level they have completed, and access to an 'education' for handicapped children is precisely what Congress sought to provide in the [IDEA]." Board of Education v. Rowley, 458 U.S. 176, 203, 102 S.Ct. 3034 (1982). Having graduated and having aged-out of entitlement to special education services, plaintiff's claims for special education services are moot. Russman v. Board of Education of The Enlarged City School District of the City of Watervliet, 260 F.3d 114 (2nd Cir. 2001) Once a student graduates from high school and does not contest his graduation, the case is moot. T.S. v. Independent School Dist. No. 54, 265 F.3d 1090. 1092 (10th Cir. 2001) cert. denied, 535 U.S. 927, 122 S.Ct. 1297, 152 L.Ed.2d 209, (2002); Fetto v. Sergi, 181 F.Supp.2d 53, 67 (D. Conn. 2001).

    **B.   There were no gross procedural violations as a matter of law**

In the Second Circuit, compensatory education for individuals over the age of 21 requires proof of gross procedural violations. Garro v. State of Connecticut et al., 23 F.3d 734, 737 (2nd Cir. 1994); Mrs. C. v. Wheaton, 916 F.2d 69 (2nd Cir. 1990); Burr by Burr v. Ambach, 863 F.2d 1071 (2nd Cir. 1988) ("Burr I"), vacated sub nom. Sobol v.

6

Burr, 492 U.S. 902, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1989), reaff'd, Burr by Burr v. Sobol, 888 F.2d 258 (2d Cir. 1989)("Burr II"), cert denied, 494 U.S. 1005, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990).  Also required is a showing that the gross procedural violations resulted in exclusion of the student from school and/or special education. Mrs. C. v. Wheaton, supra, 916 F.2d 69, 75; Burr I, supra.  That is, as the relevant cases demonstrate, gross violations involve deprivations of any educational services for long periods of time when the student was entitled to them.  In the Mrs. C. case, for example, a claim for compensatory education was found to be stated where the mother of a functionally retarded learning-disabled 22-year-old alleged that her son, J.C., was discharged from his educational placement, a private school in Massachusetts, at the age of 18.  He wound up on the streets of Bridgeport without any educational program, supporting himself as a prostitute.  The allegations of the complaint were that the defendants took advantage of the plaintiff's mental infirmities to evade procedural requirements at the time the private school placement was terminated resulting in an involuntary termination of the educational placement, that is, termination of the educational program without the involvement of J.C's conservator or mother, resulting in the complete exclusion of J.C. from an educational placement until he was 21 years old, with disastrous results.  J.C's "consent" to the termination of the placement at age 18 was found to be legally insufficient due to the gross procedural violation in failing to notify the parent or conservator of the termination.  916 F.2d 69, 75.

This case stands in stark contrast to the "gross violations" cases:   David Bruno was never "excluded" from special education services.  On the contrary, David Bruno had an individualized education program ("IEP") and received special education

7

services throughout high school.  Def.'s 56(a)(1) St., ¶ 3.   He graduated from high school in due course upon fulfilling the requirements and was accepted to college.  Def's 56 (a) (1) St., ¶¶ 5, 13-14.

The evidence was uncontested that years before his graduation both David Bruno and his parent knew he was expected to graduate in June 2000:   The IEPs developed at meetings on May 19, 1998, April 16, 1999 and May 26, 2000 each clearly stated the student's anticipated dated of graduation as being June 2000.  Def.'s 56(a)(1) St., ¶ 18.  Additionally, at the PPT meeting on December 14, 1999, six months prior to the anticipated graduation, college plans, employment and behavior concerns were discussed at the meeting but there was no discussion that graduation requirements needed to be modified or that graduation should be postponed.  Def.'s 56(a)(1) St., ¶¶ 20–23.   Where graduation is proposed long before, there can be no reasonable basis for a claim of surprise.  <u>Chuhran v. Walled Lake Consolidated Schools</u>, 51 F.3d 271 (unpublished disposition), 1995 WL 138882 (6th Cir. 1995) (decision below 839 F. Supp. 465).  The plaintiff was eighteen years old before the time of graduation.  The plaintiff knew he had taken the prerequisites for graduation in one form or another.  The plaintiff wanted to graduate and had no expectation of post-graduation services from the Greenwich Board of Education.  Def.'s 56(a) (1) St. ¶ 6.   As a matter of law, no gross procedural violation occurred where there is no dispute the plaintiff received special education services and met the requirements to graduate and did graduate.  Based on the documentary evidence, there were no gross procedural violations and thus no conceivable legal entitlement to compensatory education.

**C. The relief sought is unavailable as a matter of law.**

Even assuming, *arguendo*, there were a genuine dispute whether David Bruno received a FAPE in this case, the court is, in any case, without authority to order the Board to fund the student's college education or any part thereof because compensatory education by way of prospective or post-secondary education is not available.

To the extent the plaintiff requires vocational and/or social skills training now at the college level, as was claimed at the administrative hearing, the Bureau of Rehabilitation Services for the State of Connecticut ("BRS") offers such services. Def.s 56(a)(1) St., ¶ 28. In addition, in certain cases, college funding is also available through the BRS if the education sought is part of the employment plan. Def.s 56(a)(1) St., ¶ 27. The plaintiff did not, however, complete the process with the BRS by which such potential relief could be made available to him. Def.s 56(a)(1) St., ¶ 28.

Additional vocational and/or social skills training by way of "transition services" from the Greenwich Public Schools are not, however, available by way of relief from a local board of education under IDEA, however, because such services constitute prospective relief for which Mr. Bruno is not eligible. Chuhran v. Walled Lake Consolidated Schools, 839 F. Supp. 465, 473-473 (E.D.Mich. 1993), affirmed, 51 F.3d 271 (unpublished disposition), 1995 WL 138882 (6th Cir. 1995). Under the IDEA, a local board of education is not obligated to make FAPE available to a student such as the plaintiff who has graduated from high school with a regular high school diploma. 34 C.F.R. Section 300.122(a)(3)(i). Connecticut law provides that the obligation to provide special education terminates when a child is graduated from high school or "reaches"

9

age twenty-one, whichever occurs first. C.G.S. Section 10-76d(b). Mitchell College is a fully accredited, two-year college, which provides services for all students with disabilities as well as tutoring and learning centers for students diagnosed with ADD/ADHD. Mitchell College offers no remedial or high school courses. Def.'s 56(a)(1) St., ¶ 25.

In addition, even if compensatory education were warranted, which is denied, it is not available to the plaintiff. Relief under the IDEA cannot be granted in the form of college tuition. Straube v. Florida Union Free School Dist., 801 F. Supp. 1164, 1181 (SDNY 1992).

> Part B does not authorize a school district to provide a student with compensatory education, through the provision of instruction or services, at the postsecondary level. See [34] C.F.R. Sec. 200.25. If a student is awarded compensatory education to cure the denial of FAPE during the period when the student was entitled to FAPE, the compensatory education must be the type of educational and related services that are part of elementary and secondary school education offered by the State.

Letter to Riffel, 34, IDELR 292 (2000). David Bruno is attending Mitchell College, a private independent college offering both associate and bachelor degree programs. Def.'s 56(a)(1) St., ¶ 15. Mitchell College does not offer high school-level or remedial courses. Def.'s 56(a)(1) St., ¶ 25. David Bruno is taking college level courses at Mitchell College. Def.'s 56(a)(1) St., ¶ 14. Therefore, even assuming for the purposes of argument that there was any conceivable standing to claim entitlement to compensatory education, which is denied, relief by way of payment of college tuition is unavailable under IDEA from a local board of education.

For the foregoing reasons, judgment should enter in favor of the defendant Board.

DEFENDANT,
GREENWICH BOARD OF EDUCATION


By:_____
   Valerie E .Maze, Its Attorney
   Federal Bar No. CT 14080
   Town of Greenwich Law Dept.
   101 Field Point Road
   Greenwich, CT 06830
   Telephone (203) 622-7876
   FAX         (203) 622-3816

Case 3:02-cv-02192-WWE   Document 27-2   Filed 06/02/2004   Page 11 of 12

## **CERTIFICATION OF SERVICE**

A copy of the foregoing has been mailed by first class mail, postage prepaid, this 1st day of June, 2003 to Lawrence W. Berliner, Esq., Klebanoff & Alfano, P.C., Corporate Center West, 433 South Main Street, Suite 102, West Hartford, CT 06110.

_____
Valerie E. Maze