UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID BRUNO | } | |
| Plaintiff | } } | |
| V. | } | CIVIL ACTION NO. |
| GREENWICH BOARD OF EDUCATION | } } | 3:02 CV 02192 (WWE) |
| Defendants | } | JUNE 22, 2004 |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I.  **INTRODUCTION**

The plaintiff filed an Amended Complaint on or about December 5, 2003. The defendant filed its Answer and Affirmative Defenses on or about March 19, 2003. In its Answer, the defendant has asserted general denials to the allegations in the Amended Complaint. The defendant has asserted Affirmative Defenses insofar as the Court lacked subject matter jurisdiction over the Amended Complaint and that the Amended Complaint fails to state a claim upon which relief can be granted.

Defendant filed a Motion to Dismiss the Complaint on or about February 15, 2003 asserting <u>inter alia</u>, that the Court lacked subject matter jurisdiction, that the case was moot, and that the Complaint failed to state a cause of action upon which

relief could be granted. The Court denied each of the defendant's claims in a Memorandum of Decision dated August 15, 203.

The defendant filed a Cross Motion for Summary Judgment dated June 1, 2004. In support of that Motion, the defendant has essentially reasserted its claims set forth in its Motion to Dismiss, namely that plaintiff's claims are moot, there were no gross procedural violations, and that the Court is without jurisdiction to grant the plaintiff any of the relief requested.

For the reasons set forth in this Reply Memorandum of Law and plaintiff's Motion for Summary Judgment dated May 31, 2004, the plaintiff respectfully requests the Court to grant plaintiff's Motion for Summary Judgment and deny defendant's motion.

**II.    ARGUMENT**

        A. <u>The Plaintiff's Claims Are Not Moot</u>

The defendant has asserted that because the plaintiff allegedly received a free appropriate public education (FAPE) pursuant to the IDEA, and was issued a regular high school diploma during June, 2000, his claims are moot. <u>Defendant's Memorandum of Law pp 3-4.</u>

The plaintiff did not receive FAPE from the defendant. The defendant's reports for the 1999-00 school year clearly established that the plaintiff did not receive services that were specified in his 1999-00 IEP including counseling, that he did not achieve grades of "C" or better that were required in all of his 1999-00 course work per his IEP. <u>Hearing Exhibit P-17(5),(6),(7) & (8). Testimony of Norma Selutekin</u>

(10/18/02) Pp 189-92.  Hearing Exhibit B17(1),(2),(3).  An independent evaluation had established that the plaintiff had many unmet needs since he had been insufficiently prepared by the defendant for post-secondary schools, independent living, and employment.  Hearing Exhibit P-29, 34 C.F.R. §300.1(a).  While there is no factual dispute that the plaintiff had received a regular high school diploma during June, 2000 from the defendant, that fact alone will not defeat plaintiff's Motion for Summary Judgment since the plaintiff still remained eligible for special education services in the form of compensatory education thereafter.  Inquiry of Riffel 34 IDELR 292 (OSEP 2000). ("A student's decision to graduate with a regular high school diploma does not automatically relieve a school district of its responsibility to provide the student with compensatory education and related services ..."). (citing Board of Ed. Of Oak Park v. Ill. State Bd. Of Ed., 79 F. 3d 654, 660 7th Cir. 1996); Murphy v. Timberline Regional School Dist., 22 F. 3d 1186 (1st Cir.) cert. den.  115 S. Ct. 484 (1994); Appleton Area School Dist. V. Benson, 32 IDELR 91 (E.D.Wi. 2000); and Burlington v. Dept. of Ed., 471 U.S. 359, 369-70, 105 S. Ct. 1996, 2002-03 (1985).).

      In order to sustain its burden of proof, the defendant must assert more than mere denials to the allegations to the Complaint in its Answer.  D'Amico v. City of New York 132 F. 2d 145, 149 (2nd Cir. 1998).  Instead, the defendant must set forth specific facts establishing either that there is a genuine issue for trial, D'Amico, supra, or that it has established conclusively that there is no genuine issue of material fact warranting a trial.  Anderson v. Liberty Lobby, 477 U.S. 242, 247-48, 106 S. Ct 2505 (1986).  In his Local Rule 56(a)(2) Statement, the plaintiff has set forth numerous

material facts in dispute namely that he had not received FAPE from the defendant and still had significant unmet educational and other needs, despite defendant's decision to graduate him during June, 2000. <u>Plaintiff's Local Rule 56(a)(2) Statement Pp 5, 6, 7, 8 9, 23, 24.; Hearing Exhibit P. 29.</u>  The plaintiff has denied that the defendant's IEP had provided him with meaningful educational benefits, especially since he did not achieve a grade of "C" or better in all classes as required by his 1999-00 IEP, <u>Hearing Exhibit P-17;</u> had requested the defendant provide him with additional instruction during his 1999-00 school year, <u>Transcript of David Bruno</u> (7/3102) pp. 75, 117, 119-122, 147; often did not attend his classes and had inappropriate classroom behaviors, <u>Transcript of Norma Seluktekin</u> (10/24/02) pp. 21-24, <u>Transcript of Jen Benoit</u> (9/5/02) pp. 128-29, <u>Hearing Exhibit</u> P-20; and had significant needs per Dr. Smaller's evaluation completed approximately sixteen (16) months after the school year when he supposedly had received meaningful educational benefits from the defendant.  <u>Hearing Exhibit P-29.</u>

Due to the nature of the plaintiff's disability, he could not have experienced the positive growth in friendships asserted by the defendant.  <u>Defendant's Memorandum of Law at p. 5.</u>  The record has established that the plaintiff had been diagnosed with Asperger's Syndrome, was classified as emotionally disturbed by the defendant for special education purposes, had poorly developed social skills, poor attention span, poor coping mechanisms, poor judgment and was socially immature. Hearing Exhibits P-16), P-6, P-7(1), P-9(5), P-12(3), P-15(2), P-17(11), P-29, B-6; <u>Testimony of Dr. Smaller</u> (7/19/02) Pp. 99-109.  The plaintiff testified that his involvement with peer

4

interaction was primarily limited to playing a game of <u>Dungeons and Dragons.</u> <u>Transcript of David Bruno</u> (7/31/02) Pp. 72-73.  Despite the abundance of evidence that the plaintiff's school related behaviors, including social interactions and classroom behaviors were not appropriate.  <u>Hearing Exhibit B-12(3)</u> , <u>Testimony of Norma Selutekin</u> (10/24/02) Pp. 21-24, <u>Testimony of Jen Benoit.</u>  (9/5/02) Pp. 128-20, that plaintiff was not participating in counseling, <u>Testimony of Norma Selutekin </u>supra, at 189-92, the defendant nevertheless had asserted the contrary, namely that the plaintiff has sustained "positive growth" with his peers.

  The evaluation report prepared by Dr. Smaller had established that the plaintiff had significant unmet vocational, social and independent living needs, after he had been evaluated a little over a year after his graduation from Greenwich High School.  <u>Hearing Exhibit P-29.</u>  While the defendant has attempted to artfully argue that the issuance of a high school diploma had deemed the plaintiff to have been "educated," <u>Defendant's Memorandum of Law at P. 6 </u>(citing <u>Rowley</u> at p. 203), thereby insulating the defendant from further responsibility for plaintiff's education, the fact remains that the defendant had been merely advanced the plaintiff from grade to grade and that fact alone did not automatically mean that he had received FAPE.  <u>Rowley,</u> 458 U.S. at 203 fn. 25.  In fact <u>Rowley</u> assumed that FAPE could be inferred only if there was substantial evidence establishing procedural compliance with the IDEA safeguards, and if there was such procedural compliance, then a substantive determination as to whether the IEP had provided FAPE could be undertaken.  <u>Rowley,</u> 458 U.S. at 206-07.  In this case that did not occur.

In the present matter, the overwhelming evidence has established that the 1999-00 IEP, as well as the IEP's in the previous one or two school years, were not developed in accordance with the procedures prescribed by the 1997 revisions to the IDEA or its 1999 implementing regulations.  In fact, the record has established that the State Department of Education had not approved the defendant's IEP forms for procedural compliance under the IDEA during the period July 1998 to March, 2000.  <u>Hearing Exhibit</u> P-42(1) to (5), P-42(39).  Without the defendant ever establishing procedural compliance, it could not sustain its burden of providing that the 1999-00 IEP substantively had provided him with FAPE.  <u>Walczak v. Florida Free Union School Dist.,</u> 142 F.3d at 122.  Even if the defendant had established procedural compliance, its own evaluative data and grade reports had established that the plaintiff had not met IEP goals and objectives, including receiving at least three (3) grades below a "C", had not participated in counseling, as well as other evaluative data establishing unmet academic, vocational, social and independent living  needs both while attending Greenwich High School and again approximately a year following his graduation when he had been evaluated by Dr. Smaller.  <u>Hearing Exhibits P-29, B-6, B-12(3), B-17 (1),(2),(3)</u>.

The plaintiff's 1999-00 IEP contained a Transition Plan.  <u>Hearing Exhibit B-8(a)</u>.  An Individual Transition Plan is a coordinated plan of services that is designed to promote a student from high school to post high school activities including post-secondary education, vocational training, continuing and adult education, adult services, independent living and/or community participation.  34 CFR §300.29 (a)(i).

The scope of transition services was not intended to be construed narrowly as suggested by the defendant, but the phrase should be read expansively to ensure that students are provided with the "… type of needed services to facilitate transition from school to post-school activities." 64 Fed. Reg. No. 48 p. 12553. (March 12, 1999). In the present matter, the plaintiff's transition services plan developed at the April 16, 1999 PPT meeting, Hearing Exhibit B-8(g), and contained the goal of investigating post high school options through appropriate vocational testing, taking the SAT exam, applying to college or vocational schools, obtaining letters of recommendations, participating in behavioral counseling and developing decision-making skills and taking responsibility for self. Id.  With the exception of taking the SAT exam and partial exception of vocational testing,[12] the defendant did not follow through on the transition plan and had even reported limited progress (Progress Code No. 3) on the application to college application objective.  According to his vocational counselor, he was unsure if the plaintiff had actually applied to any colleges or vocational schools. Testimony of Christopher Lovermi (7/31/02) pp. 181, 254.  Despite the knowledge that most of the services described in the Transition Plan were not provided, the defendant has nevertheless asserted that the plaintiff had received FAPE.

---

[1] The defendant had completed a career interest inventory during March , 1999. Hearing Exhibit P-16, however the defendant did not complete the vocational testing until February, 2000, Hearing Exhibit B-14. However there is no record that this vocational evaluation was reviewed before the May 26, 2000 PPT, approximately three weeks before plaintiff's graduation.  See, Hearing Exhibit B-16.

In order for an IEP to provide FAPE, it must provide meaningful educational benefit, that is, something more than "mere trivial advancement." Mrs. B. v. Milford Board of Ed., 103 F. 3d 1114, 1119 (2d Cir. 1997). "The Board does not have to provide a 'Cadillac' of an education, a 'Chevrolet' is sufficient as long as it has tires to move the student forward in his educational program in more than a trivial manner." Student v. Greenwich Board of Ed. Connecticut Department of Education Final Decision and Order Case No. 02-257, Conclusion of Law No. 2 (7/24/03). In the present matter, the Court can conclude that the "tires" on the plaintiff's IEP were effectively "flattened" and that he did not receive any meaningful educational benefit from the defendant's IEP.

Plaintiff had a two year statute of limitations, as a matter of state law, in order to pursue any claim that he had been denied FAPE by defendant. Conn. Gen. Stat. §10-76h(3). Plaintiff had initiated his request for a Due Process Hearing on April 24, 2002 seeking compensatory education and other relief due to his assertion that the defendant had denied him FAPE. Further, the U.S. Department of Education Office of Special Education Programs (OSEP) has opined that even if the defendant had issued the plaintiff a regular high school diploma, that fact alone did not automatically extinguish plaintiff's compensatory education claims. Letter to Riffel 34 IDELR 292 (OSEP 2000). Since compensatory education "...can assist a student in the broader educational purposes of the IDEA, namely to participate further in education, obtain employment, and/or live independently ...". Riffel, supra. The Court should find the availability of this equitable remedy has not mooted plaintiff's

claims. See Mrs. C. v. Wheaton 916 F. 2d 69, 74-75 (2d Cir. 1990). Defendant should not be permitted to hamstring the Court's equitable powers, by attempting to hide behind a law remedy, especially given the Court's broad authority to fashion "appropriate relief." 20 U.S.C. §1415(i)(2)(B)(iii).

### B. The Court Can Find That There Were Gross Procedural Violations Entitling Plaintiff To An Award of Compensatory Education

Defendant has argued that plaintiff is not entitled to compensatory education absent a finding of gross procedural violations. Defendant's Memorandum of Law pp. 6-8. Assuming arguendo that the Defendant has correctly stated the applicable Second Circuit case law, the Court can find as a matter of law, that defendant committed gross procedural violations throughout the 1998-99 and 1999-00 school years through its abject failure to comply with the IDEA notice requirements. The plaintiff had presented evidence to the Impartial Hearing Officer establishing that none of the defendant's IEP forms had been approved by the State Department of Education for compliance with the 1997 Amendments to the IDEA and its implementing regulations regarding mandating notices and procedural safeguards. Hearing Exhibit P-42. Despite this conclusive evidence, the Impartial Hearing Officer did not make even one factual finding or legal conclusion addressed to that fact. Nevertheless, the Impartial Hearing Officer was able to conclude that the plaintiff's claim of lack of any written prior notice of graduation had to be "rejected," Final Decision, Case No. 02-138, Conclusion of Law No. 3; and found that FAPE had been provided per the Rowley standard. However, in order to conclude that the defendant had complied with Rowley, the Impartial Hearing Officer had to

find first that there was procedural compliance by the defendant.  Rowley, 458 U.s. at 206-07.  However, the overwhelming evidence had established defendant's non-compliance with the IDEA's procedural requirements.  Hearing Exhibit No. P-42.  Further, defendant's IEP's for the 1998-99 and 1999-00 school year were devoid of the notice requirements set forth in 34 CFR§§300.503, 300.504, including, but not limited to lack of written prior notice and lack of notice of transfer of rights upon reaching age eighteen, as well as clear notice of a change of placement in the form of an actual graduation date in June, 2000.  34 C.F..R. §300.122(a)(3)(iii).

In Mrs. C. v. Wheaton, 916 F. 2d 69 (2d Cir. 1990), a case cited by the defendant, the Second Circuit Court of Appeals had concluded that a student with cognitive and behavioral deficits, who was over the age of eighteen, at the time that his educational services were discontinued, who was not adjudicated to be incompetent, could have such educational services discontinued only if there was substantial evidence establishing that: 1) consent was obtained through compliance with the IDEA's procedural safeguards, and 2) that such consent provided by the student had been an informed one, that is "... the consent is an informed one, i.e. (IDEA) procedural safeguards are followed." Mrs. C. v. Wheaton 916 F.2d at 73.  The Second Circuit found that where a school district has taken advantage of a student's mental infirmities in order to evade compliance with the IDEA's procedures, that was sufficient to establish the "gross violation" prerequisite for an award of compensatory education.  Mrs. C. v. Wheaton , 916 F. 2d at 75.

In the present matter, the defendant's evaluation reports as well as other evaluations considered by the defendant in order to develop an IEP while the plaintiff was enrolled at Greenwich High School established a history of "cerebral deficits and impulsivity," Hearing Exhibit P-1(3);  "emotional inability, "Hearing Exhibit P-1(6); history of perseveration in thought processes, Hearing Exhibit P-6(4); distortion of reality and disorganized thinking, Hearing Exhibit P-12(3); history of impulsive decision making and poor judgment, Hearing Exhibit P-17(ii); and that he was "…inappropriate and emotionally reactive and loses the ability to think more objectively and reasonably."  Hearing Exhibit B-6(2).  Notwithstanding this well established history of impaired thinking and poor judgment, the defendant has argued that the plaintiff had not been "excluded" from special education when the defendant had issued him a high school diploma during June, 2000.  Defendant's Memorandum of Law at 7-8.  It is conceivable that the discontinuation of special education services in this case was not as blatant as the Mrs. C. v. Wheaton case, but the bottom line result remained the same, namely that the defendant school district had attempted to rely upon plaintiff's purported consent to discontinue services without establishing that such consent was "informed", that is, it was obtained through compliance with the IDEA's procedural requirements.   Mrs. C. Wheaton, 915 F. 2d at 75.  Without sustaining its burden of proof on this point, Walczak, 142 F. 2d at 134; RSA §10-76h-14(a), the Court can find, as a matter of law, that "gross" procedural violations had occurred and that the Impartial Hearing Officer should have awarded rejected defendant's claim that it had obtained consent from the

plaintiff and awarded the plaintiff with compensatory education as the approximate remedy for the violations of his rights.  Letter to Kohn, 17 EHLR 522 (OSEP 1990).

The plaintiff's mother had testified during the Due Process Hearing that she did not want her son to graduate.  Testimony of Sharon Bruno (9/5/02) pp. 5, 63; a fact acknowledged by the defendant.  Testimony of Norma Selutekin (10/18/02) pp. 186-87.  The Housemaster of Sheldon House at Greenwich High School had testified that the plaintiff or his parent had been informed, in writing, of the defendant Board policy on graduation at PPT meetings, Testimony of Claude Frank (9/5/02) pp. 41-44.  The plaintiff's mother testified that she was led to believe by the defendant at a March 26, 2000 PPT meeting that the plaintiff, even though he would receive a diploma during June, 2000, would continue to be eligible for special education services through at least May 2001 while the plaintiff was working at a job site arranged by the defendant, Testimony of Sharon Bruno (9/5/02) pp. 63, 68.  The plaintiff's mother also testified that the defendant did not ever inform the plaintiff at the May 26, 2000 PPT meeting that the receipt of a high school diploma would cause the cessation of the special education program and services.  Testimony of Sharon Bruno (9/5/02) pp. 66-67.  The plaintiff's mother testified that the defendant had apparently denied the plaintiff's request for additional educational services, compensatory education and an independent evaluation at a PPT convened on September 5, 2001, but the defendant had not sent her any of the documents related to that meeting within five days following that PPT, required by State law.  Testimony of Sharon Bruno (9/5/02) pp. 79-84).  RSA §10-76d-13 (a)(6).  Thus, the

plaintiff's mother had not been formally advised of the defendant's decision at the September 5, 2001PPT, until the plaintiff's counsel had requested a copy of that record on or about January 25, 2002. <u>Testimony of Sharon Bruno</u> (9/5/02) pp. 83-89. Notwithstanding the fact that neither the 1998-99 or 1999-00 IEP had contained the exit criteria for graduation, or that the defendant had never informed the plaintiff of the graduation requirements at a PPT meeting, or that defendant had failed to provide the plaintiff with notices that had complied with the 1997 Amendments to the IDEA and its 1999 implementing regulations, the defendant has asserted that the plaintiff "and his parent knew (that) he expected to graduate in June, 2000." <u>Defendant's Memorandum of Law at P. 8.</u> If the hearing officer has found that a board of education's failure to provide timely written prior notice of anticipated graduation four (4) months before graduation was insufficient notice to satisfy the notice provisions of 34 C.F.R. §300.122(a)(3)(iii), <u>Cedarburg School District,</u> 36 IDELR 220(SEA-Wisc. 2002), then the defendant's failure to provide any written prior notice of graduation and/or notice of procedural rights and safeguards, including transfer of rights upon age eighteen (18), should be sufficient for the Court to find that the defendant had improperly notified him of graduation during the May 26, 2000 PPT, especially when there was evaluative data establishing that the defendant had denied him FAPE. See, <u>Thornton Fractional Township High School District</u> 36 IDERL (SEA Ill 2002); <u>San Francisco United School District 36 IDELR 284 (SEA 2002)</u> The Court should find that the defendant had denied the plaintiff FAPE, that there were gross procedural violations that entitled him to an award of compensatory education.

13

### C. The Relief Requested By the Plaintiff Is Available to Him As A Matter of Law

The defendant has asserted that even if there had been a denial of FAPE, the relief requested by the plaintiff is not available.  Compensatory education is an equitable remedy that is available to the plaintiff to remedy a denial of FAPE. Mrs. C. v. Wheaton, supra; Letter to Kohn 17 EHLR 522 (OSEP 1990).  The provisions of 34 CFR §300.502(b) authorize the defendant to reimburse the plaintiff for the costs of the independent psychological evaluation completed by Dr. Smaller, Hearing Exhibit P-29, unless the defendant had initiated a Due Process Hearing pursuant to the provisions of 34 C.F.R. §300.502 (b)(3).  In the present matter if the defendant simply ignored plaintiff's request for reimbursement and did not initiate a Due Process Hearing to defend its latest evaluation from Dr. Amato.  Hearing Exhibit B-6.  Thus, the Court can find that in the absence of defendant's compliance with the provisions of 34 CFR §300.502 (b)(2), the plaintiff is entitled to be reimbursed for the costs of Dr. Smaller's evaluation.

Dr. Smaller had recommended a specialized program such as the one that is operated by the Mitchell College C.A.R.E.S. program.  Id.  The plaintiff believed that program could remedy the denial of FAPE even though it is not an approved special education placement.  Florence County School District v. Carter 510 U.S. 7, 15, 144 S. Ct 361 (1993).  The issue is not whether the specialized C.A.R.E.S. program at Mitchell College is approved as a special education program, but whether it can provide services that were appropriate to the plaintiff's needs.  Florence County,

supra. The defendant had presented no evidence during the hearing that the specialized program at Mitchell College could not meet the plaintiff's needs.

The plaintiff leaves it to the Court's discretion to fashion an appropriate equitable remedy for the defendant's failure to provide the plaintiff with FAPE. The defendant should not be rewarded for its repeated failures to comply with the IDEA. "Compliance with the IDEA is the responsibility of the school district not the student. " <u>Unified School District v. Dept. of Education,</u> 64 Conn. App. At 285. The defendant should not be rewarded for its noncompliance with the IDEA by attempting to thwart the Court's equitable authority to fashion appropriate relief for the IDEA violations alleged.

### III.      **CONCLUSION**

WHEREFORE, for the foregoing reasons and those set forth in plaintiff's May 31, 2004, Motion for Summary Judgment, the plaintiff respectfully requests the Court to grant his motion and deny defendant's motion for summary judgment.

PLAINTIFF

By_____
Lawrence W. Berliner
Klebanoff & Alfano, P.C.
Corporate Center West
433 South Main Street Suite 102
West Hartford, CT 06110
Tel. No. (860) 313-5005
Fed. Bar No. CT 7002

## CERTIFICATION

      This is to certify that a copy of the foregoing was mailed this 22nd day of June, 2004 by U.S. Mail first class, postage prepaid to Attorney Valerie Maze, Assistant Town Attorney, Town Hall, 101 Field Point Road, Greenwich, CT.

                                                    _____
                                                    Attorney Lawrence W. Berliner