UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------X
DAVID BRUNO                                                :    CIVIL ACTION NO.
                                                           :    3: 02CV2192 (WWE)
                Plaintiff,                                 :
v.                                                         :
                                                           :
                                                           :
GREENWICH BOARD OF EDUCATION                               :
                                                           :
                Defendant.                                 :
-----------------------------------------------------------X    July 16, 2004
```

### BOARD'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The defendant Greenwich Board of Education hereby files this memorandum in opposition to the plaintiff's motion for summary judgment.

**I. As a matter of law, there were no gross procedural violations and the plaintiff received meaningful educational benefits**

Based on the plaintiff's own testimony before the hearing officer, there is no genuine dispute that the plaintiff David Bruno met the requirements to graduate from high school, knew he was going to graduate, expected to graduate and wanted to graduate, knowing he had been offered an option *not* to graduate in June 2000 which he rejected.[1]  It is undisputed that plaintiff graduated from Greenwich High School on or about June 22, 2000 at age 18 with a regular high school diploma and is taking college courses at Mitchell College.  Plaintiff's Local 56(a)(2) Statement, ¶¶5, 14 (Admitted). Mitchell College is a private independent college offering both associate and bachelor degree programs.  Plaintiff's 56(a)(2) St., ¶ 15 (Admitted).  Rescission of the high school diploma is not sought and has never been sought.  Graduation from high school

---
[1] Testimony of David Bruno, 7/31/02, pp. 72, 74-76.

with a regular high school diploma constitutes the provision of a free and appropriate public education ("FAPE") as a matter of law for the reasons specified in defendant's memorandum of law in support of its motion for summary judgment.

Against this background, plaintiff argues that he is entitled to compensatory education from the Greenwich Public Schools because, he now claims, the forms used in high school were somehow not technically sufficient. Even if the claim about the technical sufficiency of defendant's forms were properly before the Court and were supported by the documentary evidence, which it is not,[2] plaintiff cites no authority that using a technically deficient form constitutes a procedural violation, much less a gross procedural violation. Gross procedural violations have been recognized only in the context of involve deprivations of <u>any</u> educational services for long periods of time when the student was entitled to them. See cases cited in defendant's Memorandum of Law in Support of Motion for Summary Judgment at pp. 6-7. By contrast, in this case, there is no dispute the plaintiff did receive special education services throughout high school and that he graduated with a regular high school diploma. Plaintiff's 56(a)(2) Statement, ¶¶ 3, 5. Thus there were no gross procedural violations as a matter of law.

The evidence offered by the plaintiff, hearing exhibit P-42, in any case, does <u>not</u> establish any insufficiency of the forms used in high school. Hearing exhibit P-42 shows that in July 1998, the State of Connecticut Department of Education wrote to the Greenwich Board of Education indicating "full compliance status" with both state and federal law. P-42, p. 1. In December 1998, the State of Connecticut Department of Education sent a letter indicating that in February the State would be asking all school

---

[2] Moreover, any such claim was neither raised with school staff at any time and was not raised at the administrative hearing level as an issue for the hearing.

districts to submit IEP forms for review and approval and that, before then, forms would not be reviewed for approval. P-42, p.8 (Letter of Jerome J. Spears, Ph.D., Education Consultant, State of Connecticut Department of Education dated December 23, 1998). This was in connection with the revision of IDEA and, in particular, the IDEA regulations which were not issued after the amendments of 1997 until March of 1999. Dr. Spears nevertheless reviewed the defendant's form quickly in December 1998 and "found it to flow logically and be well organized" and appeared to include the required information. Id. In April 1999, the Greenwich Public School submitted its forms again pursuant to the State's request and in August 1999 the State indicated that some revisions were required before the form could be approved. P-42, p.9. In September 1999, the State indicated that <u>approval</u> was recommended. P-42, p. 24. The plaintiff graduated in June 2000. Thus, even based on the documentary evidence offered by the plaintiff, there is no genuine dispute that the forms used were sufficient and compliant in all material respects.

Even assuming, for the purposes of argument, that the forms had been technically insufficient, which is denied, plaintiff offers no legal authority to support the proposition that use of a technically deficient form would constitute a procedural violation much less a gross procedural violation[3] and indeed, that is not the law: A technically insufficient form does not constitute even a procedural violation per se, much less a gross procedural violation. A procedural deficiency does not automatically render an IEP defective; there must be some rational basis to believe that the procedural inadequacies compromised the pupil's right to an appropriate education, seriously

---

[3] Since plaintiff was not deprived of special education services and was properly graduated, plaintiff cannot demonstrate a gross procedural violation as a matter of law.

3

hampered the opportunity to participate in the formulation process, or caused a deprivation of educational benefits. Roland M. v. Concord School Committee, 910 F.2d 983, 994 (1st Cir. 1990), cert. denied, 499 U.S. 912, 111 S.Ct. 1122 (1991). There must be prejudice to the pupil as a result of a (technical) procedural violation. Weiss v. School Board of Hillsborough County, 141 F.3d 990, 993 n.3 (11th Cir. 1998). Full and effective participation in the IEP process must be thwarted in order for a procedural violation to result in a *per se* violation of IDEA (harm to the student). Id., 996-997. While there may be a regulation which allows for state board approval of IEP forms, such language does not provide that such approval is required or that any IEP form utilized before such approval is issued would be invalid. [4]

In this case there is no genuine dispute that the plaintiff received meaningful educational benefits both by virtue of his undisputed graduation from high school with a regular high school diploma and by his own admissions in his testimony. Graduation from high school with a regular high school diploma constitutes the provision of a FAPE as a matter of law for the reasons specified in defendant's memorandum of law in support of its motion for summary judgment.

In addition, there is no genuine dispute that, as a matter of fact, David Bruno and his parent participated fully in the process that led up to his graduation from high school with full notice of that fact. The plaintiff, who was eighteen years old during his senior year in high school, with his parent, attended all the PPT meetings during 1999-2000. Hearing exhibits B-8, p. 1; B-12, p. 2; B-16, p. 1. As the hearing officer noted, the anticipated graduation date had long since been referenced in the IEP documents. Final

---

[4] The court should note that with the amendments to IDEA in 1997, and the subsequent promulgation of new regulations in 1999, the requirements with regard to what IEP forms must contain changed and, thus, the forms were subject to revision.

Decision, Conclusion of Law, pp. 6-7 ¶3; Findings of Fact, p. 2; Hearing Exhibits P-10, pp. 1, 8;  P-17, pp. 1, 10; P-21, pp. 1, 2.   David Bruno knew he was on target to graduate having met the requirements to graduate in one form or another and knew he was going to graduate.  Plaintiff's testimony, 7/31/02, pp. 72, 100-107.  There was discussion about the alternative of not graduating and staying another semester which David Bruno rejected.  Id. at pp.74-76.  Thus there can be no question that David Bruno (and his parent) participated in the decision to graduate.   David Bruno met the academic requirements to graduate.  Testimony of Claude Frank, housemaster, 9/5/02, pp. 261, 47-48.  David Bruno testified he understood graduation was the end of his time at Greenwich High School.  Plaintiff's testimony, 7/31/02, p. 74.  The transition services plan in effect for David Bruno in his senior year indicates that there was no projected service required for transition after graduation. B-8, p. 9.  In short, there is no evidence whatsoever as to any failure to be notified in fact of the upcoming high school graduation and there is no evidence demonstrating any prejudice to participation in the process leading up to that graduation which was, in all respects, proper and consensual.

     The historical fact of the high school graduation is dispositive of the issue of whether the plaintiff received a FAPE in this case and defendant has no burden to show that the plaintiff otherwise received meaningful educational benefits.  There can be no question, however, that the plaintiff, in fact, did otherwise receive meaningful educational benefits:

- Before ninth grade, David Bruno was not attending public high school.  By reason of his disability, he was placed in a private hospital and an out-of-district

5

therapeutic placement. Testimony of David Bruno, 7/31/02, p. 98; Hearing Exhibit P-8; Testimony of N. Seluktekin (school social worker), 10/18/02, p. 216.

- David Bruno began attendance at Greenwich High School, in 1996-1997. Plaintiff's Local 56(a)(2) Statement, ¶2.

- When David Bruno started at Greenwich High School he had very poor social skills. For example, when he had time in the student center lunch time as a ninth grader he would sit on his own with a book, he would not interact with other students initially. In addition, initially, when David came into the high school he had some incidences where he was quite explosive and aggressive in his comments. He ended up with some consequences based on that. He had some issues with peers, making some peers very uncomfortable in the student center. He was following some girls, making them uncomfortable. Testimony of J. Benoit, 9/5/02, pp. 208– 209

- These problem skills areas were specifically targeted in the IEP as areas to be worked on. The staff wanted him to work on seeking support, seeking adult help to deal with conflicts, interpersonal conflicts or social issues, to help him verbalize, identify, and integrate personal strengths and weaknesses as reported in interactions with staff, family and self. This way strengths and weaknesses when it came to personal interactions could be identified by way of goals and objectives. J. Benoit testimony, 9/5/02, pp. 218 – 220.

- Program staff addressed these IEP goals with David Bruno in the classroom setting, through feedback, through a points system[5] and level review meetings and meetings with mental health staff. Id. at pp. 218 - 220.

- Over the course of the years at the Greenwich High School David Bruno developed and worked on better social skills, interpersonal skills. By his senior year he had friends, belonged to a club, he could access the high school facilities, and other areas of the high school. By his senior year he was able to process his behavioral issues and was able to censor inappropriate comments

---

[5] For each class a student earns points that are identified for that student so they know where they're on target. Points with regard to peer interactions, points with regard to adult interactions. Being on task and attending class, being on time to class, and remaining focused. Testimony of J. Benoit, 9/5/02, pp. 2-18-220.

6

more readily. There were no violent aggressive comments being shared when he was upset; if he did get angry and raise his voice he was willing to talk about it, process. By the time he graduated he was working with a large number of staff as well and was willing to work with new people he was introduced to. And, socially, he made friends, had a girlfriend, and belonged to a club. Id. at pp. 208 – 210.

- The plaintiff testified he experienced positive growth in his friendships with peers from ninth grade through senior year and had enjoyable involvement in a school role-playing/strategy club. Plaintiff's testimony 7/31/02, p. 72, 75.

- According to David Bruno, Greenwich High School was "possibly the best four years of my life." Testimony of David Bruno, 7/31/02, p. 72. He had many friends and considered himself happy. Id. pp. 75-76.

- In April 1999, the report as to current functioning in the area of vocational/transitional needs indicated that David Bruno had plans to attend college, had not held a job and had no work experience. B-8, p. 2. Transition services were provided to the plaintiff during high school relevant to this area of need. David Bruno worked with a transition counselor, Mr. Christopher Lovermi, at Greenwich High School in his junior and his senior years 1999-2000. Testimony of C. Lovermi, 7/31/02, pp.157. A transition counselor assists students who receive special education services with making plans toward appropriate post high school options. Id. p. 154. Mr. Lovermi has a Master's Degree in counseling with a specialization in rehabilitation counseling and has taken courses to complete requirements for school counselor certification. Id. at 154-155. Before coming to Greenwich High School, Mr. Lovermi worked with the State of Connecticut, Bureau of Rehabilitation Services for 14 years as a senior vocational rehabilitation counselor. Id. at 156. Mr. Lovermi assisted with the development of goals and objectives and participated in the development of the transition services plan for David Bruno. Id. at pp. 164-165. The transition plan called for David Bruno to investigate post-high school options by participating in vocational testing, SAT testing, applying to college or vocational schools, assess the need for and participate in behavioral counsel and continue to develop his

7

decision making skills and increased responsibility for self.  B-8, p.9.  Mr. Lovermi worked with David Bruno in analyzing a Career Assessment Profile, and conducted a vocational assessment, a values survey and conducted interviews and otherwise met with David Bruno on a regular basis once every two weeks or more. Id at 159-160; 166-167.   Other actions undertaken by Mr. Lovermi pursuant to the transition services plan included vocational testing, SAT testing, discussing colleges, taking David Bruno to Norwalk Community College and obtaining an application packet, participating in the behavioral counseling, discussing issues with the parent, continuing to work with the Bureau of Rehabilitation Services, and meetings with David Bruno.  Id. at 222-227, 250; 258.  No functional vocational assessment was needed and no specialized instruction in the activities for daily living were required for David Bruno in the opinion of the transition coordinator, Mr. Lovermi.  Id. at 23-232.  Mr. Lovermi knew that the plaintiff met periodically with a social worker in high school and Mr. Lovermi assisted David with decision making skills and developing increased responsibility for himself.  Id. at 182-183.  Mr. Lovermi helped David Bruno with job seeking skills, and helped him find the part-time job at Pet Pantry, assisted him with information about relevant career clusters, conducted a kind of job shadowing at a local public library, researched the possibility of an internship at a magazine (which was not available), kept abreast of the student's performance at the part-time job at Pet Pantry in the Spring of 2000. Id at pp. 186-199.  Mr. Lovermi knew that David Bruno was doing well at the Pet Pantry job. Id. at 199.  Mr. Lovermi assisted David with job interviewing skills and talking to the supervisor at Pet Pantry about at least one job-related issue, but no accommodations or modifications were needed for David Bruno to take the Pet Pantry job.  Id. at 198; 214-215.

- In Mr. Lovermi's mind, there was no question David Bruno should graduate from high school in June 2000.  Id. at 174.  Taking the SATs, going to college was a realistic transition goal for David Bruno as reflected on the transition services plan.  Id. at 221; 222-225.  David Bruno's decision-making skills were improving.  Id at. 211.  From Mr. Lovermi's point of view,  David Bruno was making progress

8

generally and there was no concern about him graduating. Id. at 199. In addition, Mr. Lovermi had discussions with David Bruno's mother regarding the availability of services of the Bureau of Rehabilitation Services, and David's graduation; Mrs. Bruno did not raise any concerns regarding her son's graduation at that time. Id. at 208-209. No post- graduation transition services were called for. B-8, p. 9.

- While attending Greenwich High School the plaintiff advanced from grade to grade. Plaintiff's 56(a)(2) St., ¶ 7 (Admitted in relevant part).
- The state requirements for graduation were not modified for the plaintiff as permitted by C.G.S. § 10-221a. The PPT did not determine that the state requirements were inappropriate for the plaintiff. Exhibit P-23; Testimony of Claude Frank, housemaster of Board high school, September 5, 2002, pp. 47 – 49; Final Decision, Findings of Fact, p. 4, ¶8.
- By the end of the 1999-2000 school year, the plaintiff successfully met the requirements for graduation as set forth in C.G.S. § 10-221a and as set forth in the Board high school course of study and, on June 22, 2000, at age 18, the plaintiff graduated from the Board high school with a regular high school diploma. Exhibit P-23; Testimony of Claude Frank, housemaster of Greenwich High School, September 5, 2002, pp. 26,47 – 48; Final Decision, Findings of Fact, p. 4 ¶8.
- From April of his senior year in high school to the date of graduation, without on-going supervision or job coaching, the plaintiff was successfully employed in a part-time job at Pet Pantry. Plaintiff's testimony, 7/31/02, pp. 52 - 54. Working in a pet store was something he wanted to do. Id. at p. 58.
- The plaintiff discussed post-high school plans with his guidance counselor. Testimony of David Bruno, 7/31/02, pp. 59-61. In addition, the transition coordinator, Mr. Lovermi, physically took David Bruno to Norwalk College and saw him handed an application packet. Testimony of Christopher Lovermi, 07/31/02, pp. 223-226. [6]

---

[6] The school district did not have an obligation to make sure the plaintiff actually applied to colleges, or to fill out his college applications for him, as plaintiff implies in his Memorandum of law in Support of Motion

9

- Mr. Bruno decided not to attend college at all for a year or more after high school, but instead decided to work for a year. Testimony of David Bruno, 07/31/02, pp. 52-53. After high school, the plaintiff wanted to work for a year in order to earn money and have "real world experience," which he thought would be helpful if he needed to get a job during college. Plaintiff's 56(a)(1) St., ¶ 10, Admitted. The plaintiff's expert conceded that David Bruno was capable of making the decision to go to college and was also capable of deciding to take a year off and work. Dr. Smaller testimony, 7/19/02, p. 154.

- As a result of the Pet Pantry job, David Bruno got a fairly good idea of the world of work including the need for a positive attitude in dealing with customers, the need to be on time, the need to continuously work, and customer relations. Id. at pp. 64-65.

- After graduation, the plaintiff continued in the job he had begun in April 2000 and, without job-coaching or other monitoring, successfully worked there full-time until October 2000 Id, pp. 51-52. [7]

In short, at the time of graduation, which he earned, David Bruno was doing everything successfully that he intended to do. Having graduated with a regular high

---

for Summary Judgment at p. 18. To actually fill out the college application for David Bruno would have been inconsistent with the IEP goals and objectives concerning self-advocacy and decision making. Testimony of Christopher Lovermi, 7/31/02, p. 258. In any case, David Bruno had decided to work for a year after high school to gain the real world experience he desired. Testimony of David Bruno, 07/31/02, pp. 52-53.

[7] The Pet Pantry job ended in October 2000 when he had an incident with a co-worker. Thereafter, David Bruno consulted the State of Connecticut Bureau of Rehabilitation Services and received services including certain training. Testimony of D. Bruno, 7/31/02, pp. 68-70. He worked at another job, at Walden Books, from October 2001 to May 2002 until that position was eliminated. Testimony of David Bruno 7/31/02, pp. 90-98. He was able to deal with monetary transactions successfully at the Walden Books job. Id. at p. 93. Thereafter, he applied to and currently attends Mitchell College with the intention of obtaining a degree in the area of writing. Id. at p. 140. Mitchell College is a private independent college offering both associate and bachelor degree programs, is fully accredited by the New England Association of Schools and Colleges, and the plaintiff is taking college courses there. Plaintiff's 56(a)(2) St., ¶¶ 14, 15, 16, Admitted.

school diploma, he received a FAPE as a matter of law; although there is no burden to show that he otherwise received meaningful educational benefits during high school, there is no question that he did.

### II. The Court cannot find that the plaintiff lacked the capacity to provide consent to graduation from high school

Plaintiff argues that the hearing officer improperly found there was no evidence at the hearing that David Bruno was unable to provide informed consent to graduation. Plaintiff asks the Court to reject the hearing officer's conclusion that the graduation from high school was properly determined based on certain references made in dated evaluations. Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment at pp. 22-23. Plaintiff claims that Mrs. C v. Wheaton, 916 F.2d 69 (2nd Cir. 1990), holds that a school district has a duty to determine whether a student over the age of eighteen, who was not adjudicated incompetent or incapable, could provide informed consent before discontinuing services.[8] That case does not, however, stand for that proposition: The student in Mrs. C., J.C., was a functionally retarded man who, at age 20, functioned on the average like a 10- or 11-year old. 916 F.2d at 70. J.C. was a ward of the state for whom both a surrogate parent for educational decisions and a conservator had been appointed, neither of whom was given notice of the decision to terminate J.C.'s educational program. Id. at 70-71. The court's decision in Mrs. C. was based on the utter failure to give notice of termination of an educational program to the proper persons. It is overreaching at best for plaintiff to rely on his own dated

---

[8] Plaintiff offered a document in evidence appointing his mother with a general power of attorney to act for him in educational matters. Hearing exhibit P-34. The document, P-34, did not establish that plaintiff was *non compos mentis* nor did it purport to appoint his mother as his conservator of the person or guardian of the person. Therefore there can be no dispute that the hearing officer properly found that there was no evidence that the plaintiff was legally incompetent to consent to graduate in 2000 at age eighteen.

11

evaluations as a basis to argue that plaintiff was somehow in the same position or category as J.C. in the Mrs. C. case. Even today David Bruno does not contest his graduation was proper; he does not seek rescission of his high school diploma. Moreover, whatever dysfunction and impairments the plaintiff may have had in the past, the record in this case establishes there is no question that David Bruno had the capacity to consent to graduation, and that he did so, and that he displayed a picture of relative success in his high school career despite his disability:

- David Bruno made satisfactory progress during high school with respect to his IEP goals and objectives.
- He made academic progress and, from ninth grade though twelfth, advanced from grade to grade academically.
- David Bruno achieved passing marks and satisfied the academic requirements to graduate.
- In the opinion of the person charged with the responsibility to monitor his IEP progress, David Bruno was ready to graduate.
- His behavior was under control.

J. Benoit testimony 9/13/02, pp. 223 – 224.[9]

- At the time of graduation and prior and subsequent thereto, the plaintiff was successfully employed in a part-time job at Pet Pantry. Plaintiff's testimony, 7/31/02, pp. 52 – 54

The plaintiff's social and emotional needs were properly addressed so as to provide him with meaningful educational benefits at Greenwich High School and there was no question he could properly consent to graduation. Before coming to Greenwich

---

[9] Ms. Benoit, David Bruno's IEP monitor, has a master's degree in special education. Testimony of J. Benoit, 9/5/02, p. 91.

High School he was hospitalized and then placed in an out-of-district placement in a therapeutic setting at the Andrus School. Testimony of N. Seluktekin, 10/18/02, p. 216. Norma Seluktekin, David Bruno's social worker at Greenwich High School, testified that the IEP in place at Greenwich High School addressed his social/emotional needs with appropriate goals and objectives. Id. at pp. 219-222. At Greenwich High School David Bruno succeeded in functioning within a public school setting alongside nondisabled peers. Id. at p. 216. Ms. Seluktekin noted that David Bruno was a bright, academically motivated student; his social skills had improved drastically: He had become more empathic towards peers and improved his social judgment. He was not a behavioral problem and was less impulsive or hyper when excited about something he enjoys. His mother was pleased with his progress. Id. at p. 217. He was ready to graduate and wanted to graduate. Id. at p. 224. It is undisputed that David Bruno did graduate from Greenwich High School with a regular high school diploma. Plaintiff's 56(a)(2) Statement, ¶5. As he intended, the plaintiff worked for a year in a job that gave him the experience he desired,[10] and is now attending college. Plaintiff's 56(a)(2) Statement ¶14. He received a FAPE as a matter of law and has no basis for a claim for compensatory education under IDEA.[11]

---

[10] Testimony of David Bruno, 7/31/02 at p. 64.
[11] It should be noted that plaintiff has not moved for relief in the motion for summary judgment, or briefed, any claim under the Rehabilitation Act or any other provision of law. Thus any non-IDEA claims asserted in the complaint should be deemed waived.

DEFENDANT,
GREENWICH BOARD OF EDUCATION


By:_____
   Valerie E .Maze, Its Attorney
   Federal Bar No. CT 14080
   Town of Greenwich Law Dept.
   101 Field Point Road
   Greenwich, CT 06830
   Telephone (203) 622-7876
   FAX         (203) 622-3816

## CERTIFICATION OF SERVICE

A copy of the foregoing has been mailed by first class mail, postage prepaid, this 16th day of July, 2004 to Lawrence W. Berliner, Esq., Klebanoff & Alfano, P.C., Corporate Center West, 433 South Main Street, Suite 102, West Hartford, CT 06110.

_____
Valerie E. Maze