```
             UNITED STATES DISTRICT COURT
               DISTRICT OF CONNECTICUT

DAVID BRUNO,                    :
      Plaintiff,                :
                                :
                                :       3:02CV2192(WWE)
      v.                        :
                                :
GREENWICH BOARD OF EDUCATION,   :
      Defendant.                :
```

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, David Bruno, a student who qualified for special education services during his high school education, seeks reversal of an administrative hearing officer's final decision that denied him compensatory education and services. He alleges that the hearing officer's decision violates the Individuals with Disabilities Education Act ("IDEA") (count one), Section 504 of the Rehabilitation Act of 1973 (count two), the Fourteenth Amendment of the United States Constitution (count three) and state special education laws (count four).

Plaintiff has moved for summary judgment on counts one and four. Defendant has cross-moved for summary judgment, arguing that the hearing officer's decision should be affirmed. For the following reasons, the cross-motions for summary judgment will be denied without prejudice.

### BACKGROUND

The parties have submitted statements of facts in compliance with Local Rule 56 together with the administrative record. The Court finds that the following material facts are not in dispute.

1

Plaintiff is a student over the age of twenty-one years who was found to be eligible to receive special education services pursuant to IDEA.  From September, 1996, through June, 2000, he attended Greenwich High School.  He turned 18 in September, 1999, and at that time he gained the right to make educational decisions for himself.

On April 16, 1999, the defendant convened a Pupil Planning Team ("PPT") meeting to review plaintiff's educational program and progress during the 1998-1999 school year.  At that meeting, the defendant discussed plaintiff's progress reports and recommended a projected goal of graduation in 2000.  Plaintiff's mother, Sharon Bruno, expressed concern about plaintiff's readiness to plan for himself and to manage a job after graduation.

Plaintiff's Individual Education Program ("IEP") provided for one-on-one weekly counseling sessions with a social worker during plaintiff's senior year.  Plaintiff chose not to take advantage of that service on a weekly basis.  Instead, he met with the social worker when he felt like it.  The social worker had no ability to force the plaintiff to participate in counseling sessions.

At some point during plaintiff's senior year, Mrs. Bruno spoke to plaintiff's social worker about her concern that plaintiff was not ready to graduate from high school.

At a PPT meeting in December, 1999, it was decided that plaintiff should drop his mainstream Science class and that a PPT would be held a month later to update plaintiff's mother on his

post-secondary plans.  The IEP contained an objective that plaintiff receive quarter grades of "C" or better, and maintain a "C" grade point average.  A vocational assessment was planned, although no transition services were projected for plaintiff post-graduation.

The next PPT meeting took place on May 26, 2000.  The PPT meeting summary indicates that 1) it was an "exit PPT," 2) plaintiff was on target for graduation in June, 2000, and 3) the next annual review of plaintiff would occur on May 29, 2001.

In Twelth Grade, plaintiff received a "D" in World Literature and Algebra II.  Nevertheless, plaintiff received his high school diploma on June 22, 2000, having earned a cumulative 2.3 grade point average.

After graduation, plaintiff continued to work at a job that he had begun during his senior year.  However, in October, 2000, he left following a confrontation with a co-worker.

May, 2001, passed without the occurrence or scheduling of a PPT meeting.  Subsequently, Mrs. Bruno requested that a PPT be scheduled for the purpose of requesting a job/social coach and an independent evaluation by an expert in Asperger's Syndrome to determine if plaintiff had received an appropriate education in secondary school.  The PPT was held on September 5, 2001, and the request for services was denied.  A due process hearing was then requested.

On October 15, 2001, and November 20, 2001, the student underwent a "psychological consultation" with Adrienne Smaller, Ph.D.  Dr. Smaller observed that plaintiff was doing well but

"remains vulnerable in the area of vocational and social skills." Dr. Smaller noted that plaintiff was "adamant about not wanting to enlist the help of BRS [Bureau of Rehabilitation Services]".[1] She recommended that he receive "some direction with regard to work-related social skills," and that he "begin to visit small colleges, which will provide support for his learning and social issues, and some supervision of daily living skills."

From October, 2001 through May, 2002, the plaintiff worked part-time at a bookstore, which job he obtained independently.

In August, 2002, plaintiff enrolled in a post-secondary education program at Mitchell College in New London, Connecticut. Mitchell College is a fully-accredited two-year college which provides services for students with disabilities.

After evidence was taken at a due process hearing, the hearing officer, Margaret Slez, issued her decision, which considered whether (1) the board followed proper procedures in determining the eligibility of plaintiff for graduation; 2) the board improperly denied the plaintiff special education and related services during the 2000-2001 and 2001-2002 school years after the plaintiff's graduation with a regular high school diploma; 3) the board improperly denied the plaintiff's request for an independent evaluation subsequent to his graduation with a regular high school diploma, and 4) the board committed procedural violations so gross as to entitle the plaintiff to

---

[1] The BRS provides job coaching, vocational assessments, and situational assessments to individuals who have graduated from high school and have completed an employment plan process with BRS.

4

compensatory education. She found against the plaintiff on each of these issues.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which it has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Under the IDEA, when a federal court reviews the findings and conclusions reached in a state administrative proceeding, it must base its decision on the preponderance of the evidence,

after reviewing the administrative record and any additional evidence presented. 20 U.S.C. § 1415(i)(2)(B); M.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers, 231 F.3d 96, 102 (2d Cir. 2000), cert. denied, 532 U.S. 942 (2001). This is not an invitation to the courts to substitute "their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).

Rowley instructs that the reviewing court must give "due weight" to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy. However, reviewing courts need not give due weight to conclusions of law concerning the "proper interpretation of the federal statute and its requirements." J.B. v. Killingly Bd. of Educ., 990 F.Supp. 57, 67 (D. Conn. 1997).

Plaintiff asserts that he is entitled to compensatory education because defendant committed gross procedural violations of the IDEA that effectively denied him of a free appropriate education. Specifically, plaintiff complains that defendant failed to provide him with the required statutory notices of his procedural rights and safeguards during the 1998-1999 and 1999-2000 academic years. Defendant counters that no gross procedural violation occurred so as to confer a right to compensatory education.

To prevail on his claim for compensatory education pursuant to the IDEA, plaintiff must prove that gross procedural violations occurred that effectively deprived him of the right to a free appropriate public education. See Mrs. C. v. Wheaton, 916 F.2d 69 (2d Cir. 1990)(gross violation of statutory regulations resulted in exclusion of the student from school for a substantial period of time).

Thus, the Court must review whether the board complied with the procedures set forth in the IDEA. An IEP is a procedural mechanism that protects a child's rights to a free appropriate education. 20 U.S.C. § 1414(d). It is a tailored written outline of the unique educational needs of an individual student and the services required to meet those needs. Walczak v. Florida Union Free School Dist., 142 F. 3d 119, 122 (2d Cir. 1998). In designing the child's IEP, the PPT must include a qualified special education representative of the school board, the child's teacher, and one or more of the child's parents, and may also include individuals who evaluate the child or provide special education services to the child. P.J. v. State of Connecticut Bd. of Education, 788 F.Supp. 673, 676 n. 1 (D.Conn. 1992).

Congress sought to protect individual children by providing for parental involvement in the development of state plans and policies and in the formulation of the child's IEP. Rowley, 458 U.S. at 208. However, when the student reaches the age of majority, all procedural rights accorded to the parents transfer to the student. See 20 U.S.C. 1415(m); 34 CFR § 300.517.

7

Section 1415(d) provides that a copy of the existing procedural safeguards must be made available to the parents or to the student if the rights have transferred upon initial referral for evaluation, notification of an IEP meeting, reevaluation of the child, or receipt of a request for a due process hearing. These procedural safeguards include the right, <u>inter alia</u>, to independent evaluations, prior written notice of any proposals to initiate or change an educational program or placement, parent consent, access to educational records, complaint procedures, discipline procedures, mediation and due process hearings, filing of a civil action, and recovery of attorneys' fees.

Here, plaintiff asserts that the forms used in 1998-1999 and 1999-2000, namely the IEPs on April, 1999, May 26, 2000, September 5, 2001, lacked the requisite notice of the procedural safeguards.  Plaintiff points out that, in August, 1999, the State Department of Education informed defendant that its forms were not in compliance with the 1997 Amendments to IDEA. However, in September, 1999, the State indicated that approval of the form was recommended.

Upon review of the administrative record, the Court finds that the notice to the April 16, 1999 IEP meeting states:

> You will be given a complete copy of "Procedural Safeguards for Children in Special Education" when you attend your Notice of Referral to the Individualized Education Plan Team Meeting (IEP).

However, the IEP form memorializing that meeting does not indicate whether notice of such procedural safeguards was given.

The IEP minutes from the December 14, 1999 meeting indicates that the procedural safeguards were explained, that the parents

8

"did not have any questions about these procedural safeguards." Further, plaintiff's mother signed a verification that she had received a copy of the "Procedural Safeguards in Special Education."

The IEP forms from the May 26, 2000 and September 5, 2001 meetings also indicate that a copy of the "Procedural Safeguards in Special Education" were made available, although verification of receipt by signature is not apparent.

Thus, it appears that defendant may well have provided proper notice. Unfortunately, the administrative record does not contain a copy of the document entitled "Procedural Safeguards in Special Education," and therefore, the Court cannot fully assess the merits of the parties' respective claims concerning compliance with the statutory notice requirements.

Accordingly, the Court will deny the motions for summary judgment without prejudice, and will request the defendant to supplement the administrative record with a copy of the "Procedural Safeguards in Special Education," and provide proof through affidavit or deposition testimony that defendant provided this document to the plaintiff or his mother at the IEP meetings at issue.

## CONCLUSION

For the foregoing reasons, the cross-motions [26 & 27] for summary judgment are DENIED WITHOUT PREJUDICE. Within 60 days of this ruling's filing date, the parties may refile their motions for summary judgment and may incorporate the arguments made in the instant briefs therein. Defendant should supplement the

record as described above in this decision.  Defendant should also indicate the counts on which it seeks summary judgment.

If defendant seeks summary judgment on the counts two and three, defendant should brief the legal basis for an entry of judgment on these counts.

```
            _____/s/_____
            WARREN W. EGINTON
            SENIOR UNITED STATES DISTRICT JUDGE
```

Dated at Bridgeport, Connecticut this ___ day of December, 2004.