UNITED STATES DISTRICT COURT F I L E D
DISTRICT OF CONNECTICUT

2005 MAR 15  P 12: 06

U.S. DISTRICT COURT

------------------------------------------------------------X
DAVID BRUNO                                    :    CIVIL ACTION NO.
                                               :    3: 02CV2192 (WWE)
                    Plaintiff,                 :
v.                                             :
                                               :
                                               :
GREENWICH BOARD OF EDUCATION                   :
                                               :
                    Defendant.                 :
------------------------------------------------------------X    March 14, 2005

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/
REPLY TO MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In accordance with the Court's Ruling on Cross Motions for Summary

Judgment dated December 20, 2004, the defendant Greenwich Board of Education

("the Board") issued its motion for summary judgment and memorandum of law on

February 16, 2005.   The plaintiff issued his motion for summary judgment and

memorandum of law accompanying said motion entitled "Plaintiff's Reply

Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment

and Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment" on

or about February 18, 2005 which was received by defendant on February 22, 2005

("hereinafter plaintiff's Memorandum of Law").  The Court issued a further ruling

allowing until March 15, 2005 for the filing of opposition to the motions for summary

judgment. Defendant herewith files this memorandum of law in opposition to plaintiff's motion for summary judgment. [1]

1. Plaintiff argues that the court should deny the Board's motion for summary judgment and reject the affidavit of Joseph Russo because none of the procedural safeguard pamphlets were introduced at the hearing. Plaintiff's Memorandum of Law, p. 2. The defendant has supplemented the administrative record with the affidavit, however, based on the Court's request contained in the Court's Ruling on Cross Motions for Summary Judgment dated December 20, 2004 at page 9. There, the Court noted that the actual procedural safeguard pamphlets themselves were not part of the administrative record and requested that the defendant supplement the record with a copy of the "Procedural Safeguards in Special Education" and provide proof through affidavit or deposition testimony that the defendant provided this document to the plaintiff or his mother at the IEP meetings at issue. The defendant has provided an affidavit of the Director of Pupil Personnel Services (special education), Ms. Forde, showing what procedural safeguard forms in use by the school district at the times of the relevant meetings and an affidavit from the chairperson, Mr. Russo, indicating that such notices were provided. Thus the affidavits constitute defendant's effort to comply with the Court's ruling.

2. Plaintiff argues that Mr. Russo's affidavit should be rejected because he had no specific recollection of the finer details of the May 26, 2000 IEP meeting.

---

[1] To the extent defendant is required to seek permission to file its brief containing in part a reply to certain issues contained in plaintiff's Memorandum of Law, defendant respectfully requests permission to file this brief in light of the the court's scheduling of March 15, 2005 for responses and the fact that plaintiff combined his memorandum of law in support of plaintiff's motion for summary judgment with his objection to defendant's motion for summary judgment into the one memorandum of law.

Plaintiff's Memorandum of Law, p. 2.   Mr. Russo did not have a specific recollection of the finer details of the meeting but he <u>did</u> have a general recollection of the meeting.  Transcript of July 19, 2002, p. 68. [2]  More importantly, however, the direct and cross examination of  Mr. Russo shows that there was no line of questioning directed to Mr. Russo  about the procedural safeguards.   Thus testimony about what Mr. Russo recalled about the giving of procedural safeguards was never elicited. This is not surprising because the plaintiff did not litigate the administrative hearing on any theory that David Bruno or his mother did not receive notices of procedural safeguards.  Plaintiff should not be permitted to litigate that theory now.   This is a case where the overwhelming majority of the IEP meeting documents demonstrate with a tick mark that that the notices of procedural safeguards were given. See B-1 (p. 2), B-12 (p.2), B-16, B-23. Plaintiff has provided no affidavits that Mr. Bruno did not receive copies of the procedural safeguards or was not aware of his procedural rights at relevant times.

The plaintiff relies on his own testimony that he was not aware that he would not receive special education services from the Greenwich Public Schools after he graduated (plaintiff's Memorandum of Law, p. 3).  Such testimony is immaterial in that such testimony does not bear on the issue of whether a notice of procedural safeguards was received.[3]

---

[2] Mr. Russo could recall, for example, that the guidance counselor and teachers had mentioned that David Bruno was on track to graduate. <u>Id</u>. at 78.

[3] In addition, there is no known requirement to give an explanation to a graduating high school student who is on target to graduate and agrees with graduating that he is no longer eligible for special education services from the high school.

Plaintiff claims that Mrs. Bruno testified that the Board failed to provide any notification of rights at the May 26, 2000 meeting (plaintiff's Memorandum of Law, p. 3, citing testimony of Sharon Bruno, p. 67, 9/5/02).  This was not Mrs. Bruno's testimony; Mrs. Bruno merely testified that "the process" Mr. Frank had testified to earlier that day had not taken place in David Bruno's case.[4]  The process Mr. Frank testified to was that, instead of graduating, special education students have the right to remain in high school if they wish to age 21 and that this option is discussed once a year at an IEP meeting.  Testimony of Mr. Frank, 9/5/02, pp. 40-41.  Contrary to Mrs. Bruno's testimony, this process that Mr. Frank testified about did occur:  David Bruno testified that such an option to graduate later than June 2000 was discussed during the 1999-2000 school year and that he rejected it. Testimony of D. Bruno, 7/31/02, pp. 74-75.[5]

3.  Plaintiff argues that Mr. Russo's affidavit should be rejected because the April 16, 1999 IEP document does not have a check mark to show that the notice of procedural safeguards was handed out at that meeting and the Board offered no other evidence.   Plaintiff's Memorandum of Law, p. 4.  Again, the administrative hearing was not litigated on any theory that notices of procedural safeguards were not given. The plaintiff never asked Mr. Russo at the hearing whether the notice of

---

[4] Mr. Claude Frank is an intermediate administrator and House Master at Greenwich High School. Testimony of Mr. Claude Frank, 9/5/02, p. 20.  It is his responsibility to review a student's academic progress in the form of report cards, progress reports, and transcripts. Id at p. 22. It was Mr. Frank who signed the plaintiff's secondary school transcript. Id at p.41; P-23 (high school transcript).

[5] If a student who receives special education services at Greenwich High School advances from grade to grade and receives passing marks, and obtains the credits necessary to graduate, that student is eligible to graduate from high school with a regular diploma. Testimony of Claude Frank, Housemaster, 9/5/02, p. 48. The student can meet the graduation requirements and be entitled to graduate without meeting all of the IEP goals. Id. at p. 39.  Plaintiff admits he graduated from Greenwich High School on or about June 22, 2000 at age 18 with a regular high school diploma. Def.'s 56(a)(1) St., ¶ 5 (admitted).

procedural safeguards was given out in April 1999. The Board had no reason to elicit specific testimony on that issue because there was no dispute about not receiving written notices of procedural safeguards in the hearing.    Secondly, the coming graduation was discussed at the May 2000 meeting and as the form used that day, B-16, reflects, the notice of procedural safeguards was given at that time (as does Mr. Russo's affidavit). Finally, it should be noted that the April 16, 1999 document, P-17, is an actual IEP document that was developed on that date and refers to the meeting on that date.   But this particular document is not like the other forms or minutes utilized by the school district at the other IEP meetings (see B-1 (p. 2), B-12 (p.2), B-16, B-23) so that there is does not appear to be a place on the IEP form from April 16, 1999 for the staff to have checked in this regard. Again, no testimony is referenced from the hearing that the notice of procedural safeguards was not given.

    4.   Plaintiff acknowledges that the forms from the December 14, 1999 IEP meeting and the September 5, 2001 IEP meeting indicate that a copy of the procedural safeguards were provided at those meetings. Plaintiff's Memorandum of Law, pp. 5-6; P-20; P-31(3).

    5.   No contested issue of fact is raised as to whether the procedural safeguards was the version actually in use as plaintiff claims. Plaintiff's Memorandum of Law, p 5. Plaintiff claims that none of the defendant's forms were approved. Plaintiff's Memorandum of Law, p 7, p. 9.   This is simply not accurate and is a red herring. See defendant's memorandum of law in opposition to plaintiff's motion for summary judgment dated July 16, 2004 at pages 2-4 incorporated herein by reference.

6.    Plaintiff claims Mary Forde's affidavit should be rejected because she did not attend the PPT meetings.  Plaintiff's Memorandum of Law, p 8.  Mary Forde's affidavit is not offered to show any event at a PPT meeting; but to show her knowledge, as the Director of Pupil Personnel Services (special education services) in the Greenwich Public Schools as to what forms were utilized at what point in time in the school district.

7.    There is no contested issue created by plaintiff's claim that he was "excluded" from special education for purposes of Count Two.  Plaintiff's Memorandum of Law, p 11.  The plaintiff's transition plan in effect developed in April 1999 and incorporated into his IEP for the 1999-2000 school year specifically referenced the projected graduation date of June 2000.  B-8, p. 9 of 11.  In addition, there was discussion at meetings about graduation.  Testimony of Ms. Benoit, 9/5/03, p. 230.  As part of the special education services he received, David Bruno worked with a transition counselor at Greenwich High School , Mr. Christopher Lovermi, during the junior and senior years.  Testimony of C. Lovermi, 7/31/02, pp.157.[6]  Mr. Lovermi worked with David Bruno in connection with various career and job issues and met with David Bruno on a regular basis once every two weeks or more.  Id at 159-160; 166-167.[7]    From Mr. Lovermi's perspective, there was no question David Bruno should graduate from high school in June 2000.  Id. at 174.

---

[6] Mr. Lovermi has a Master's Degree in counseling with a specialization in rehabilitation counseling and had worked with the State of Connecticut, Bureau of Rehabilitation Services for 14 years as a senior vocational rehabilitation counselor before working at Greenwich High School.  Id. at  pp.154-156.

[7] Among the activities Mr. Lovermi worked on with the plaintiff were vocational testing, SAT testing, discussing colleges, taking David Bruno to Norwalk Community College and obtaining an application packet, participating in the behavioral counseling, discussing issues with the parent, continuing to work with the Bureau of Rehabilitation Services, helping David Bruno with job seeking skills and helping him

David Bruno's IEP monitor in high school was Ms. Jennifer Benoit.  Testimony of Ms. Benoit, 9/5/02, p. 104.  Ms . Benoit has a master's degree in special education.  Id. at 91.  She is a classroom teacher in the comprehensive support program at Greenwich High School and acts as Program Coordinator of that program. Id. pp. 90-91.  Ms. Benoit had the responsibility to participate in level review meetings and monitor David Bruno's IEP and progress.  Id. at pp. 101-102; 104.  Ms. Benoit knew David professionally as a student for a long time and testified in the course of the hearing as to the progress he made in his high school career.  Id. at pp. 101; 208-210; 223-224.  Ms. Benoit felt David Bruno was ready to graduate. Id. at 224.

Mr. Bruno decided not to attend college at all for a year or more after high school, but instead decided to work for a year.  Testimony of David Bruno, 07/31/02, pp. 52-53.  The plaintiff wanted to work for a year after high school in order to earn money and have "real world experience," which he thought would be helpful if he needed to get a job during college.  Plaintiff's 56(a)(1) St., ¶ 10, Admitted.

In short, there is no dispute that David Bruno fulfilled the requirements to graduate and that, at the time of graduation, David Bruno was employed at Pet Pantry and doing what he intended to do.  No projected service from the Greenwich Public Schools after graduation was required as indicated on the transition plan agreed upon in April 1999.  B-8, p. 9.  David Bruno did not claim that the transition plan was not appropriate or contest the graduation.  Testimony of Ms. Benoit, 9/5/02, at p. 233.  David Bruno turned eighteen years old on 9/14/1999, the fall before he

---

find a part-time job at Pet Pantry and other job-related issues and activities.  Id. at 186-199; 222-227; 250; 258.

graduated.[8]  David Bruno testified that he met the requirements to graduate from high school, knew he was going to graduate, expected to graduate and wanted to graduate, knowing he had been offered an option *not* to graduate in June 2000 which he rejected.[9]

     8.    The school district was not required by the Rehabilitation Act to formally test the plaintiff before the district could assess he was ready to graduate from high school (plaintiff's Memorandum of Law, p 11).   The IEP Team assessed the plaintiff's readiness to graduate in connection with the transition services plan contained in the IEP and in its determination that further special education services were needed after graduation.  B-8, p. 9 of 11.   In May 2000 the IEP Team determined that David Bruno was on target to graduate as planned.   There is no dispute that David Bruno fulfilled the requirements to graduate and was entitled to do so in June 2000.  See note 5, supra.

GREENWICH BOARD OF EDUCATION


By: _____

Valerie E. Maze, Its Attorney
Federal Bar No. CT 14080
Town of Greenwich Law Dept.
101 Field Point Road
Greenwich, CT 06830
Telephone (203) 622-7876
FAX   (203) 622-3816

---

[8]  The plaintiff's date of birth is 9/14/81 according to the records.  See, e.g., B-8, p. 1.

[9]  Testimony of David Bruno, 7/31/02, pp. 72, 74-76.

## CERTIFICATION OF SERVICE

A copy of the foregoing has been mailed by first class mail, postage prepaid, this 14th day of March, 2005 to Lawrence W. Berliner, Esq., Klebanoff & Alfano, P.C., Corporate Center West, 433 South Main Street, Suite 102, West Hartford, CT 06110.

Valerie E. Maze