UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID BRUNO | } | |
| | } | |
| Plaintiff | } | |
| | | |
| V. | } | CIVIL ACTION NO. |
| | | |
| GREENWICH BOARD OF EDUCATION | } | 3:02 CV 02192 (WWE) |
| | } | |
| Defendant | } | JUNE 2, 2005 |

**A. PLAINTIFF'S PROPOSED FINDINGS OF FACT**

    1. The Plaintiff was a student receiving special education from the Defendant from 1994 through 2000 based upon a finding that he had Asperger's Syndrome, ADHD, and was found eligible for special education and related services under the SED category, by the Defendant.  Exhibits P-6, P-8.

    2. The record has established that the Plaintiff had a well established history of poor coping skills, poor judgment, social immaturity, poor attention span, and inappropriate school behaviors.  Exhibits P-6, P-7, P-9, P-12, P-15, P-17, B-6, B-12.

    3. The Defendant issued a high school diploma to the Plaintiff during June, 2000, even though Plaintiff's mother had requested that her son not graduate from high school at PPT meetings held on April 16, 1999, December, 1999 and May 26, 2000 due to his unmet special education and other needs.

4. The Defendant had convened PPT meetings on April 16, 1999, December 14, 1999, May 26, 2000 and September 5, 2001.

5. Notices of the PPT meetings convened on April 16, 1999, December 14, 1999, May 26, 2000 and September 5, 2001 were sent to Sharon Bruno, the Plaintiff's mother.

6. The Plaintiff turned eighteen on September 14, 1999.

7. The Defendant did not send the Plaintiff notice of PPT meetings convened on April 16, 1999, December 14, 1999, May 26, 2000 and September 5, 2001.

8. The Defendant did not introduce copies of the procedural safeguards required by the IDEA and Section 504 as exhibits in the Due Process Hearing Case No. 01-138, nor are such part of the record.

9. The Plaintiff has denied receiving a copy of the procedural safeguards required by the IDEA and Section 504 at the PPT meetings convened on April 16, 1999, December 14, 1999, May 26, 2000 and September 5, 2001.

10. The Plaintiff's mother Sharon Bruno has denied receiving a copy of the procedural safeguards required by the IDEA and Section 504 at the PPT meetings convened on April 16, 1999, December 14, 1999 and May 26, 2000.

11. The Plaintiff's mother signed a form stating that she had received a copy of procedural safeguards at a PPT meeting convened on December 14, 1999, however, there is no record of those procedural safeguards in the record.

12. The record of the PPT meeting convened on April 14, 1999, December 14, 1999, May 26, 2000 and September 5, 2001 lists Joseph Russo as one of the meeting participants, but there is no record that Mary Forde had attended any of those meetings.

13. The Defendant never sent the Plaintiff or his mother the results of the September 5, 2001 PPT meeting until Plaintiff's counsel had requested a copy during January, 2002.  Exhibit P-31.

14. There is no record that the Defendant had evaluated the Plaintiff prior to his graduation in June, 2000.

15. The Defendant's last comprehensive evaluation of Plaintiff's needs was conducted during March and April, 1999.  Exhibits P-14 & P-15.

16. Plaintiff's IEP for the 1999-00 school year contained various annual goals and short term objectives.  Exhibit P-17.

17. There is no record that Plaintiff's 1999-00 IEP was revised to ensure that Plaintiff participated in school social worker counseling specified in that IEP or that a PPT meeting was convened to eliminate or revise that related services once it was established that Plaintiff was no longer participating in counseling.

18. There is no record that Plaintiff's 1999-00 IEP was revised to ensure that the Plaintiff was receiving a grade of C in the courses specified therein or that a PPT was convened to eliminate or revise that goal, once it had been established that the Plaintiff was not receiving a grade of C or better in all courses listed in his IEP.  Exhibit P-20.

19. According to Defendant's educational records, the Plaintiff had significant behavioral, functional, cognitive, interpersonal, and vocational limitations.  <u>Exhibits</u> P-6, P-7, P-9, P-12, P-15, P-17, P-29, B-6, B-12.

20. The Defendant did not convene a PPT meeting during January 2000 to review Plaintiff's progress and update Plaintiff's post-secondary plans per the December 14, 1999 PPT recommendations.  <u>Exhibit</u> P-20.

21. The Defendant did not inform the Plaintiff that the high school graduation requirements could be modified or that a high school diploma could be rescinded.

22. The Defendant had failed to provide the Plaintiff with written prior notice of the PPT meeting convened on April 16, 1999, December 14, 1999 and May 26, 2000 prior to the June 2000 graduation that conformed to the 1997 revisions to the IDEA.

23. The Defendant failed to provide Plaintiff with a copy of any notice of rights at least one year in advance of his eighteenth birthday that his educational rights would vest once he turned eighteen during September, 1999.

24. Plaintiff was working at a local pet store, a job arranged by the Defendant at the time plaintiff received his high school diploma, however, his 1999-00 IEP listed applying to college and vocational schools as his transition goals. <u>Exhibit</u> P-17.

25. Defendant did not refer Plaintiff to BRS, a state agency that provides vocational rehabilitation services during the 1999-00 school year until October, 2000, four months after he had graduated.

26. There is no record that the Defendant had referred the Plaintiff to any public agencies or that Defendant had ever invited any public agency to the PPT for the Plaintiff for transition or post secondary services prior to his graduation. Exhibit P-17.

27. Plaintiff's IEP referred to college attendance as a post secondary goal. Exhibit P-17.

28. The Defendant's did not assist the Plaintiff with the submission of any college applications prior to his June, 2000 graduation.

29. State special education regulations require the Defendant to obtain approval from the State Department of Education before any IEP/PPT form is used.

30. The Defendant did not receive any approval from the State Department of Education that its IEP/PPT forms had been approved for use at PPT meetings during the 1998-99 or 1999-00 school years. Exhibit P-42.

31. Defendant was a recipient of federal financial assistance from the United States Department of Education.

32. Defendant was covered by the requirements of Section 504. 29 U.S.C. §794a.

33. Plaintiff was a person with a disability as defined by Section 504 and was an otherwise qualified person with a disability who was eligible to participate

5

in Defendant's program of public education during 1998-99, 1999-00 school years and thereafter.

34. The Plaintiff was either unemployed or marginally employed and living at home with his parent from June 2000 to September, 2002 when he enrolled in a specialized program of instruction at Mitchell College known as the C.A.R.E.S. program. <u>Exhibit</u> P-36.

35. The C.A.R.E.S. program is designed for students with learning and other disabilities including ADHD, and it addresses the development of academic skills for such students and focuses on the development of strategies that will promote active and independent learning that may lead to a student earning an Associates or Bachelors degree later on if successful in the C.A.R.E.S. program. <u>Id.</u>

36. The Plaintiff attended the C.A.R.E.S. program during the 2002-03 academic year and a portion of the 2003-04 academic year.

37. The Plaintiff or his parent incurred direct costs for the C.A.R.E.S. program minus a financial aid award. <u>Exhibit</u> P-33.

**B. PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW**

1. The Court has subject matter jurisdiction over this action. 20 U.S.C. §1415(i), 28 U.S.C. §1331, 29 U.S.C. §794a.

2. The I.D.E.A., 20 U.S.C. §1401 <u>et seq.</u> provides the Plaintiff or his parent the right to request an impartial due process administrative hearing on any matter related to the student's special education program or placement.

3. The Plaintiff and his parent requested an impartial due process administrative hearing from the State Department of Education in Case No. 02-138.

4. An impartial hearing officer appointed by the State Department of Education convened an administrative hearing and issued a final decision containing findings of facts and conclusions of law dated October 29, 2002.

5. The Plaintiff was aggrieved by the impartial hearing officer's final decision and on December 12, 2002 the Plaintiff then commenced this action in the United States District Court.

6. On December 8, 2003, the Plaintiff filed an Amended Complaint.

7. There is no dispute that the Defendant had determined that the plaintiff was eligible to receive special education and related services as a student with an emotional disturbance while attending Greenwich High School. 34 C.F.R. §300.7 (6)(a).

8. The Plaintiff turned eighteen on September 14, 1999 and his parent's rights then transferred to him on that date. 34 C.F.R. §300.517(a).

9. The Defendant was obligated to provide both the Plaintiff and his parent with advance notice that there would be a transfer of rights upon the Plaintiff turning age eighteen. 20 U.S.C. §1415(m)(i); 34 C.F.R. §300.517(a).

10. The Defendant was obligated to provide the Plaintiff and/or his parent with prior written notice whenever it was proposing to initiate or change the

identification, evaluation, or educational placement of the Plaintiff. 34 C.F.R. §300.503(a)(i).

11.     The content of the written prior notice required by 34 C.F.R. §300.503(a)(i) is supposed to include a description of the action proposed or refused by the Defendant; an explanation of the reasons that the Defendant had proposed or refused to take action; a description of other options considered and the reasons those options were rejected; a description of the evaluation, test, record, or report that the Defendant had relied upon as the basis for the action proposed or its refusal to take action; any other relevant factors, a statement that the Plaintiff has rights under the procedural safeguards; and sources for the Plaintiff to obtain assistance in mediating his rights.

12. The IDEA also required the Defendant to provide the Plaintiff and his parent with a copy of their notice of procedural safeguards. 34 C.F.R. §300.504(a).

13. The notice of procedural safeguards must be provided to the Plaintiff and his parent at the time that a PPT meeting notice has been sent. 34 C.F.R. §300.504(a)(2).

14. The notice of procedural safeguards required by 34 C.F.R. §300.504(a) must include a full explanation of all the fourteen (14) individual procedural safeguards available under 34 C.F.R. §§300.403, 300.500-300.529, 300.560 – 300.577 and 300.660-300.662. 34 C.F.R. §300.504(b).

15. The Defendant was required to provide the Plaintiff with notice that his parent's rights would transfer to him upon his eighteenth birthday at least one year before the Plaintiff's eighteenth birthday. 34 C.F.R. §300.347(c).

16. State regulations required the Defendant to provide the Plaintiff and his parent with at least five (5) days advance written notice before proposing to, or refusing to initiate or change a student's identification, evaluation or placement. RSA §10-76d-8.

17. State regulations per RSA §10-76d-8 require the notice contain the reason for the notice, a description of the evaluation procedures, a statement of rights to review and obtain records, and a full explanation of the due process proceeding available. RSA §10-76d-8(a).

18. State regulation required the Defendant to use only IEP forms that were previously approved by the state board of education. RSA §10-76d-11(d).

19. State regulations required the Defendant to provide the Plaintiff and his parent with a full copy of the individualized education program (IEP) within five (5) days after a PPT meeting that developed, reviewed, or revised the Plaintiff's IEP. RSA §10-76d-13(a)(6).

20. The Defendant had the burden of proving that its IEP was appropriate. RSA §10-76h-14(a).

21. Congress has emphasized compliance with the IDEA's procedural safeguards to ensure parents (and the Plaintiff) had a large measure of participation at every stage of the administrative process as one measure of

determining whether a free appropriate public education had been provided by the Defendant.  Board of Ed. v. Rowley, 458 U.S. 176, 206 (1982).

22.  In order to determine whether Defendant's IEP for the Plaintiff developed at the PPT meetings convened on April 16, 1999, December 14, 1999, May 26, 2000 or September 5, 2001 was appropriate, a District Court is required to determine whether the Defendant has complied with the IDEA's procedural requirements and then determine if the IEP was reasonably calculated to provide the Plaintiff with a free appropriate public education.  Board of Ed. v. Rowley, 458 U.S. at 206-07.

23.  The Defendant had the burden of proof on both of these issues. Walczak v. Florida Free Union Sch. Dist., 142 F. 3d 119, 122 (2d Cir. 1998); M.S. v. Board of Ed., 231 F. 3d 96, 102 (2d Cir. 2000).

24.  The Defendant did not introduce a copy of the procedural safeguards notice required by 34 C.F.R. §300.504(b) as exhibits in the administrative hearing.

25.  The IEP forms utilized by the Defendant at the PPT meetings convened on April 16, 1999, December 14, 1999 and May 26, 2000 did not contain the written prior notice content required by 34 C.F.R. §300.503 or 34 C.F.R. §300.504.

26.  The Defendant did not send the Plaintiff a copy of the September 5, 2001 IEP until January 25, 2002, more than five months after the fact, when Plaintiff's counsel had requested and received a copy.  Exhibit P-31.

27.  The IDEA, P.L. 105-17 was enacted on June 4, 1997.  The United States Department of Education promulgated final regulations to implement the IDEA on

March 12, 1999 with an effective date of May 11, 1999.  64 Fed. Reg. No. 48  p. 12406 (3/12/99).

28.  The Plaintiff had introduced Exhibit P-42 consisting of correspondence, forms, memorandum and program review reports between the Defendant and the State Department of Education relative to whether Defendant's IEP forms contained information that conformed to the 1997 revisions to the IDEA.  Exhibit P-42 (88-89).

29.  In a Program Review Report dated July 25, 1998, the State Department of Education had determined that Defendant's IEP forms did not contain proper information relative to written prior notice.  Exhibit P. 42 (4).

30.  In a letter dated August 11, 1999, the State Department of Education informed the Defendant that its IEP forms required further revision.  Exhibit P-42(4).

31.  In a report dated March 3, 2000, the State Department of Education had informed the Defendant that its IEP forms submitted on February 25, 2000 were not approved, Exhibit P-42(39), therefore the Court concludes that Defendant's IEP forms were never approved by the State Department of Education for use at the PPT meetings at issue.  RSA §10-76d-11(d).

32.  The IEP developed on April 16, 1999 Exhibit P-17 or the IEP developed on May 6, 1998, Exhibit P-12, did not inform the Plaintiff or his parent that the Parent's rights would transfer to Plaintiff upon his eighteenth birthday on September 14, 1999 as required by 34 C.F.R. §300.347(a).

33. There is no record that the Defendant provided the Plaintiff or his parent with a copy of the procedural safeguards required by 34 C.F.R. §§300.503(a) or 300.504(a) and therefore the Defendant has not met its burden of establishing both procedural and substantive compliance with the IDEA. Rowley, supra; Walczak, supra; M.S., supra.

34. The Defendant is a recipient of federal financial assistance and is therefore obligated to comply with Section 504 of the Rehabilitation Act of 1973, as amended. 29 U.S.C. §794a, 34 C.F.R. Part 104.

35. The Defendant's last comprehensive evaluation of Plaintiff's special needs was completed during March, 1999 and April, 1999, Exhibits P-14, P-15, over one year prior to Plaintiff's graduation during June, 2000.

36. The applicable provision of Section 504 required the Defendant to complete a comprehensive assessment that complied with the requirements of 34 C.F.R. §104.35(b) prior to making a significant change in Plaintiff's placement. 34 C.F.R. §104.35.

37. The Court concludes that graduation constituted a significant change in Plaintiff's program and placement pursuant to Section 504.

38. The Defendant failed to complete any current evaluation results that conformed to the requirements of 34 C.F.R. §104.35(b) at the time of the May 26, 2000 PPT meeting when Defendant had concluded that the Plaintiff was on target to graduate in June, 2000, Exhibit P-21; even though there was substantial evidence that he was not meeting IEP goals and objectives and still had unmet

vocational, social, and independent living needs at that time as further corroborated when he had been evaluated about a year following his graduation by Dr. Smaller. Hearing Exhibit P-29.

39. Defendant's failure to provide Plaintiff or his mother with written prior notice or notice of procedural violations had adversely affected their respective participation in PPT meetings and interfered with their development of Plaintiff's IEP both prior to Plaintiff's graduation and the PPT meeting following his graduation.

40. Defendant's compliance with the IDEA's procedural requirements was a condition precedent to the Defendant obtaining valid and informed consent from Plaintiff allowing for the voluntary cessation of his educational program and placement. Mrs. C. v. Wheaton 916 F. 2d 69, 73 (2d Cir. 1990).

41. Plaintiff has established a prima facie case of disability discrimination under Section 504 of the Rehabilitation Act in that Plaintiff was a person with a disability, he was otherwise qualified for Defendant's program of public education, during the time he was a student or should have been a student, that the Defendant was a recipient of federal financial assistance, and that he was improperly excluded from the Defendant's program of public education, based upon his disability and not due to satisfactory completion of IEP goals and objectives.

42. In the absence of evidence that the Defendant had complied with the IDEA's procedural safeguards, prior to discontinuing Plaintiff's educational

program and placement, the Court finds that a denial of a free appropriate public education had occurred, that there was a resulting in a loss of educational opportunity, denial of a meaningful opportunity to participate in PPT meetings that resulted in "gross violations", and the Court finds that an amount of compensatory education for a two year period of time is an appropriate equitable remedy under both Section 504 and the IDEA.  <u>Mrs. C. v. Wheaton</u> 916 F. 2d at 75.

46.  The Court finds that the specialized program of instruction at the Mitchell College C.A.R.E.S. program was not a typical post-secondary college program.

47.  The Court finds the Defendant responsible for the reimbursement of the reasonable costs of the C.A.R.E.S. program including tuition and related and incidental costs associated with that program for the 2002-03 and 2003-04 academic years.

THE PLAINTIFFS

By_____
    Lawrence W. Berliner
    Klebanoff & Alfano, P.C.
    Corporate Center West
    433 South Main Street Suite 102
    West Hartford, CT 06110
    Tel. No.  (860) 313-5005
    Fed. Bar No. CT 7002

**CERTIFICATION**

    This is to certify that a copy of the foregoing Motion and attached Memorandum of Law was mailed this 2nd day of June, 2005 by U.S. Mail first class, postage prepaid to Attorney Valerie Maze, Assistant Town Attorney, Town Hall, 101 Field Point Road, Greenwich, CT.

                                                            _____
                                                             Attorney Lawrence W. Berliner