UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------X
DAVID BRUNO                                    :    CIVIL ACTION NO.
                                               :    3: 02CV2192 (WWE)
                    Plaintiff,                 :
v.                                             :
                                               :
GREENWICH BOARD OF EDUCATION                   :
                                               :
                    Defendant.                 :
-----------------------------------------------------------X    June 6, 2005
```

**DEFENDANT'S TRIAL MEMORANDUM;
PROPOSED FINDINGS OF FACT AND
PROPOSED CONCLUSIONS OF LAW**

The defendant Greenwich Board of Education submits the following Trial Memorandum of Law in connection with the trial in this matter:

**A.  APPLICABLE LEGAL STANDARDS**

**I.  Mootness**

Whereas standing is determined as of the time of the complaint, mootness is evaluated throughout the pendency of the litigation.  See *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir.2001) (`This case-or controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.'  (citation omitted)).  `A case is moot, and accordingly the federal courts have no jurisdiction over the litigation when 'the parties lack a legally cognizable interest in the outcome.' ' *Fox v. Board of Trustees of the State Univ. of New York*, 42 F.3d 135, 140 (2d Cir.1994) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)).  In other words, the plaintiff must have a personal stake in the litigation.  Id.  For example, courts have held that students' claims for declaratory and injunctive relief against universities are mooted by the students' graduation.  See *id.*; *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir.1993); *Alexander v. Yale Univ.*, 631 F.2d 178, 183 (2d Cir.1980).

Fetto v. Sergi, 181 F.Supp.2d 53, 67 (D.Conn. 2001).

Graduation from high school and aging-out of entitlement to special education services, renders a plaintiff's claims for special education services moot. Russman v. Board of Education of The Enlarged City School District of the City of Watervliet, 260 F.3d 114 (2nd Cir. 2001); T.S. v. Independent School Dist. No. 54, 265 F.3d 1090, 1092 (10th Cir. 2001) cert. denied, __ U.S.___, 122 S.Ct. 1297, 152 L.Ed.2d 209, (2002); Fetto v. Sergi, supra, 181 F.Supp.2d 53, 67.

**II.  Compensatory Education**

Claims for compensatory education have been recognized in the Second Circuit where gross procedural violations result in the complete deprivation of a special education program for long periods of time. Mrs. C. V. Wheaton, 916 F.2d 69, (2d Cir. 1990); Garro v. State of Connecticut et al., 23 F.3d 734, 737 (2nd Cir. 1994); Mrs. C. v. Wheaton, 916 F.2d 69 (2nd Cir. 1990); Burr by Burr v. Ambach, 863 F.2d 1071 (2nd Cir. 1988) ("Burr I"), vacated sub nom. Sobol v. Burr, 492 U.S. 902, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1989), reaff'd, Burr by Burr v. Sobol, 888 F.2d 258 (2d Cir. 1989)("Burr II"), cert denied, 494 U.S. 1005, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990).  See, also, Unified School Dist. No. 1 v. Connecticut Dept. of Education, 64 Conn.App. 273, 780 A.2d 154 (2001)(failure to generate a new individualized education plan or to implement the existing plan for hospitalized student).

In these cases, however, there was no issue of a student fulfilling the requirements to graduate with a regular high school diploma.  "Children who graduate from our public school systems are considered by our society to have been 'educated' at least to the grade level they have completed, and access to society to an education

2

for handicapped children is precisely what Congress sought to provide in the [IDEA]" Board of Education v. Rowley, 458 U.S. 176, 203. 102 S.Ct. 3034, (1982).

In addition, any award for compensatory education must be of the type of educational and related services that are part of elementary and secondary school education offered by the state.  Prospective relief for which a claimant is no longer eligible may not be granted by the court.   Chuhran v. Walled Lake Consolidated Schools, 839 F. Supp. 465, 473-473 (E.D.Mich. 1993), affirmed, 51 F.3d 271 (unpublished disposition), 1995 WL 138882 (6th Cir. 1995).  No award by way of compensatory education for funding of college tuition is available under IDEA.  Straube v. Florida Union Free School District, 801 F.Supp. 1164, 1181 (SDNY 1992).   Where the Court cannot grant the relief sought, the claim is moot.  Board of Educ. of Oak park v. Nathan R., 199 F.2d 377 (7th Cir. 2000).

### III. **Standards Regarding Judicial Deference in IDEA Appeal**

The Second Circuit Court of Appeals has recently noted the following standards apply in the limited *de novo* review available in an appeal of an administrative decision pursuant to the Individuals with Disabilities Education Act,  such as this:

> In IDEA actions, such as the present one, the administrative record and ruling play a critical role. A district court's decision must rest on the 'preponderance of the evidence developed at the administrative proceedings and any further evidence presented by the parties.' [M.S. v. Bd. of Educ. of Yonkers, 231 F.3d 96, 102 (2d Cir.2000) (quoting Walczak [v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122-123 (2d Cir.1998)].  Moreover, as the Supreme Court has noted, this assessment' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'[Board of Education v. Rowley,  458 U.S. 176, 206, 102 S.Ct. 3034 (1982)]. 'While federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lack[s] the specialized knowledge and experience

3

necessary to resolve persistent and difficult questions of educational policy.' <u>Walczak</u>, 142 F.3d at 129 (quoting <u>Rowley</u>, 458 U.S. at 206, 208, 102 S.Ct. 3034) (internal quotation marks and citation omitted); see also <u>M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ</u>., 226 F.3d 60, 66 (2d Cir.2000) ( 'Judicial deference is particularly appropriate when ... the state hearing officer's review has been thorough and careful.') (internal quotation marks and citation omitted) (alteration in original).

<u>Sherman v. Mamaroneck Union Free School Dist</u>., 340 F.3d 87, 93 (2nd Cir 2003).

**B. DEFENDANT'S PROPOSED FINDINGS OF FACT**

On the limited issue set down for trial in this matter, the Board submits the following proposed Findings of Fact:

1. Plaintiff had an individualized education program (IEP) and received special education, services throughout high school. Plaintiff's 56(a)(2) Statement dated June 22, 2004, ¶3 (admitting allegations of Defendants Local 56(a)(1) Statement dated May 28, 2004 ¶3).

2. As the hearing officer found David Bruno received special education and related services at the Board high school from freshman through senior year, which encompassed school years 1996-97, 1997-98, 1998-99 and 1999-2000. Hearing officer's Final Decision and Order, p. 2, ¶1.

3. While attending Greenwich High School the plaintiff advanced from grade to grade. Plaintiff's 56(a)(2) St., ¶ 7 (Admitted in relevant part).

4. The hearing officer further found:

A. David Bruno turned 18 years old in September 1999, during the fall of his senior year at the Board high school, at which time the parent's rights transferred to the student. R.C.S.A. §10-76a-1(n). The student was no longer a "child," as defined in C.G.S. §10-76a(2), when the parent, not the student,

requested the due process hearing in April 2002. Hearing Officer's Final Decision and Order, p. 2, ¶ 3.

      B.    David Bruno and his mother, Sharon Bruno, participated in the IEP meetings at the end of each high school year, held respectively on May 19, 1997 (Exhibit P-10), May 28, 1998 (Exhibit P-12), and school years each provided for appropriate academic coursework selected by the student from the Board curriculum (Exhibits P-32, P-39) with the assistance of the Board high school guidance counselor, counseling, and a transition plan, and each IEP indicated a projected graduation date as June 2000. Exhibits P-10, P-12 and P-17. The parent and David Bruno participated in the PPT meeting convened on December 14, 1999, six months prior to the anticipated date of graduation. (Exhibit P-20) Hearing Officer's Final Decision and Order, p. 2, ¶4.

      C.    During his testimony on July 31, 2002, David Bruno was composed and focused precisely on the questions asked of him; his answers were thoughtful and articulate. He testified that he had enjoyed being a student at the Board high school, that he had been happy with his teachers, and that he had been "mostly happy" with his courses. David Bruno had advanced from grade to grade and earned a 2.3 cumulative grade point average. (Exhibit P-23, p.1). David Bruno testified unequivocally that he wanted to graduate at the end of his senior year. With regard to post-high school plans, he testified that he wanted to work for a year in order to earn money and have "real world experience," which he thought would be "helpful" if he needed to get a job during college. On the SAT given in May 1999, David Bruno had obtained a verbal score of 600 and a

math score of 430. On the SAT given in December 1999, he had obtained a verbal score of 560 and a math score of 410. (Exhibit P-23, p.2). He testified that he knew that he would need "some form of college education" "in order to succeed." He testified that he had discussed college with the Board guidance counselor and reviewed with her the course requirements as they pertained to college applications and admissions. … David Bruno described the positive growth in his friendships with peers from ninth grade through senior year and his enjoyable involvement in a school role-playing/strategy club. From April of his senior year to the date of graduation, without on-going supervision or job coaching, he was successfully employed in a part-time job at a pet store, testifying that he had "always had an affinity for animals." … Hearing Officer's Final Decision and Order, p. 3, ¶5.

  D. … [David Bruno] testified that he understood graduation to be the end of his time at the Board high school and that the alternative discussed by the PPT, to continue at the Board high school and graduate mid-year during the 2000-01 school year, did not interest him. "I didn't want to be in school anymore; I didn't want to take more courses." David Bruno stated that he "knew [he] had taken the prerequisites [for graduation] in one form or another," and that no one told him that he did not have the prerequisites to graduate.... Hearing Officer's Final Decision and Order, p. 4, ¶7.

  E. …By the end of the 1999-2000 school year, David Bruno had successfully, albeit not brilliantly, met the requirements for graduation as set forth in C.G.S. §10-221a and as set forth in the Board high school course of study

(Exhibit P-39, p. 3). Exhibit P-23; testimony of Claude Frank, housemaster of Board high school, September 5, 2002. On June 22, 2000, at age 18, the David Bruno graduated from the Board high school with a regular high school diploma. Hearing Officer's Final Decision and Order, p. 4, ¶8.

  F. … David Bruno and his mother participated in all IEP meetings. At no time during David Bruno's four years at the Board high school had the PPT modified the state requirements for him, as permitted by C.G.S. §10-221a, nor had the PPT determined at any time that the state requirements were inappropriate for him. Hearing Officer's Final Decision and Order, p. 4, ¶ 8.

  5. Plaintiff graduated from high school with a regular high school diploma and is taking courses at Mitchell College. Plaintiff's 56(a)(2) Statement dated June 22, 2004, ¶¶ 5, 14 (admitting allegations of Defendants Local 56(a)(1) Statement dated May 28, 2004 ¶5 and partial admission to ¶14).

  6. Plaintiff does not seek and has never sought rescission of his high school diploma.

  7. As the hearing officer found:

  A. After graduation, David Bruno continued in the job he had begun in April 2000 and, without job-coaching or other monitoring, successfully worked there full-time until October 2000, when he left because of a confrontation with a co-worker. From October 2001 to May 2002, he worked part-time at a bookstore, a job for which he had interviewed, but, according to the student, business was bad so his work hours were eventually reduced to none at all. David Bruno's testimony reflected pride in his ability to do the job. At some point in this

7

chronology, he interviewed for a job at a copying store, but testified that he had "purposely botched" the interview. Testimony of the student, July 31, 2002. Hearing Officer's Final Decision and Order, p. 4, ¶9.

      B.    Since August 26, 2002, David Bruno has been enrolled at Mitchell College, a fully-accredited, two-year college which provides services for all students with disabilities as well as tutoring and learning centers for students diagnosed with ADD/ADHD. He is receiving "Level 1" support, the most comprehensive available, which provides for up to four hours per week with writing and learning specialists as well as Section 504 accommodations and modifications. Mitchell College offers no remedial or high school courses; David Bruno is enrolled in four or five college-level courses, chosen with the assistance of a counselor. A campus counseling center and an office of work and learning are available to him. Social skills training and independent living are addressed "as they impact classroom/academic issues" but there is "no training *per se.*" (Testimony of Dr. Peter Troiano, Mitchell College academic dean, September 4, 2002). Hearing Officer's Final Decision and Order, p. 5, ¶13.

8.    Mitchell College is a private independent college offering both associate and bachelor degree programs. Plaintiff's Local 56(a)(2) Statement dated June 22, 2004, ¶ 15 (admitting allegations of Defendants Local 56(a)(1) Statement dated May 28, 2004 ¶ 15).

9.    Hearings in this matter were conducted before Attorney Margaret Slez, Hearing Officer, appointed by the State Department of Education, State of Connecticut, on July 19, 2002, July 31, 2002, September 4, 2002, September 5, 2002, September

13, 2002, October 18, 2002, and October 24, 2002. Testimony from eleven witnesses was heard. Multiple documentary exhibits were submitted and considered by the hearing officer.

10. The hearing officer's review of the evidence was thorough and careful.

11. It should be noted that there is no question that David Bruno and his mother participated in the decisions made by the IEP Team. David Bruno and his mother, Sharon Bruno, participated in all IEP meetings. Hearing Officer's Final Decision and Order, page 4, ¶ 8.

12. The hearing officer found, based on parties' exhibits and testimony, over the course of seven hearing dates, from the student, the parent, a representative of the Bureau of Rehabilitation Services (BRS), Dr. Adrienne Smaller, and Board personnel including the social worker, special education monitor, special education coordinator, transition counselor, and high school headmaster, the student received a free, appropriate public education while he was at the Board high school and his graduation with a regular diploma was not improperly granted. It [was] further found that there were no procedural violations sufficient to warrant an award of compensatory education. Hearing Officer's Final Decision and Order, page 7, ¶5.

13. The hearing officer's findings were based on a preponderance of the evidence.

14. There were no gross procedural violations which resulted in the deprivation of free and appropriate public education for David Bruno.

**C.  DEFENDANT'S PROPOSED CONCLUSIONS OF LAW**

  1. The federal regulations implementing the IDEA require that school districts provide a FAPE to children with qualifying disabilities "though" the age of twenty-one. 34 C.F.R. §300.121.

  2. Under IDEA, the Board is not obligated to make FAPE available to a student who has graduated from high school with a regular high school diploma. 34 C.F.R. §300.122(a)(3)(i).  Connecticut law provides that the obligation to provide special education terminates when a child is graduated from high school or "reaches" age twenty-one whichever occurs first.  C.G.S. §10-76d(b).

  3. Even if the plaintiff could establish a basis for an award of compensatory education, which he has not, such an award must be of the type of educational and related services that are part of elementary and secondary school education offered by the state.  Straube v. Florida Union Free School District, 801 F.Supp. 1164, 1181 (SDNY 1992).

  4. Even assuming, the plaintiff could establish a basis for an award of compensatory education, he would not be entitled to an award under IDEA for college tuition or any part thereof.  Straube v. Florida Union Free School District, supra.  The plaintiff's case is moot.

  5. Even assuming the case were not moot, and according the appropriate deference to the hearing officer's findings while taking into account the undisputed issues in this case, the court finds as a matter of law there were no gross procedural violations as a matter of law.

THE DEFENDANT,
GREENWICH BOARD OF EDUCATION


By: _____
    Valerie E. Maze
    Federal Bar No. CT 14080
    Law Department, Town Hall
    101 Field Point Road
    Greenwich, CT  06836-2540
    Telephone:(203) 622-7878
    Fax:(203) 622-3816

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent via facsimile, and postage prepaid on June 6, 2005 via first-class United States mail to:

Lawrence W. Berliner, Esq.
Klebanoff & Phelan, P.C.
Corporate Center West
433 South Main Street, Suite 102
West Hartford, CT 06110.
(860) 313-5005
(860) 313-5010 (fax)

_____
Valerie E. Maze