UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID BRUNO | } | |
| | } | |
| Plaintiff | } | |
| | | |
| V. | } | CIVIL ACTION NO. |
| | | |
| GREENWICH BOARD OF EDUCATION | } | 3:02 CV 02192 (WWE) |
| | } | |
| Defendant | } | JULY 7, 2005 |

**PLAINTIFF'S POST TRIAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I    INTRODUCTION**

The Court convened a trial on June 7, 8 and 9th, 2005 in order to resolve the contested issue of whether the Plaintiff or his mother had received notice of procedural safeguards at the four (4) PPT meetings at issue. <u>Bruno v. Greenwich Board of Education</u> Civil Action No. 3:02 CV2192(WWE), Slip op. p. 8 (May 5, 2005). As a result of the trial, the Court issued a Bench Ruling on June 9, 2005 finding that the Plaintiff himself had not received any notice of his procedural safeguards at the PPT meetings convened on or after his eighteenth birthday in particular PPT meetings convened by the Defendant on December 14, 1999, May 26, 2000 and September 5, 2001. Based upon the trial testimony of Joseph Russo, Sharon Bruno, and David Bruno, there was no record in the IEP's that were developed during the

1997-98, 1998-99 or 1999-00 school years that the Plaintiff (or his mother) had received advance notice that the Plaintiff's educational right would vest upon the Plaintiff reaching his eighteenth birthday on September 14, 1999.

The Court inquired into the effect that the lack of notice of procedural safeguards would have upon Plaintiff's rights and directed the parties to address that issue, as well as the issue of any damages or relief that Plaintiff would be entitled to receive, in the event that the Court granted his motion for summary judgment. The Plaintiff incorporates by reference the various memoranda of law that were filed in support of his motion dated May 31, 2004, June 1, 2004, June 22, 2004, February 18, 2005, March 30, 2005 and April 15, 2005. For these reasons, the Plaintiff respectfully requests the Court to grant his Motion for Summary Judgment and grant him "appropriate relief" on his IDEA claims, as well as the other relief sought in Counts Two, Three and Four of the Amended Complaint.

**II      ARGUMENT**

    **A.      The Court Should Grant Plaintiff's Motion for Summary Judgment Based Upon a Finding of Fact that Defendant Did Not Provide Notice to the Plaintiff of Any Procedural Safeguards**

On June 9, 2005, the Court issued a Finding of Fact, that based upon the testimony presented at trial, including a review of various exhibits including <u>Exhibits B-11, B-12, B-15, B-16, B-22 and B-23</u>, that it was satisfied that the Plaintiff himself did not receive any notice of his procedural safeguards from the Defendant, once he had turned age eighteen (18) on September 14, 1999. <u>Transcript of June 9, 2005 Trial.</u> The notice of the December 14, 1999, May 26, 2000, and September 5, 2001

2

PPT meetings were sent by the Defendant to "Mrs. Bruno," and not to the Plaintiff, even though he had turned age eighteen during September, 1999. According to Defendant's witness Joseph Russo, the author of <u>Exhibits</u> B-11, B-12, B-15, B-16, B-22 and B-23, there was no written record that the Plaintiff had ever been mailed either an original or duplicate copy of the PPT notices or PPT meeting results. <u>Trial Testimony of Joseph Russo</u> (6/9/05). According to <u>Exhibits</u> B-11, B-12(2), B-15, B-22, the Plaintiff's mother, not the Plaintiff, was supposedly provided with a copy of "Procedural Safeguards for Parents of Children in Special Education" by the Defendant.[1] There is no record that the Plaintiff himself had ever been provided with a copy of any Notice of "Procedural Safeguard for Parents of Children in Special Education" at the time the PPT notices were sent by the Defendant or in person on the date of the PPT meetings. In fact, the Plaintiff had testified on June 9, 2005 that the first time he ever received or reviewed a copy of the procedural safeguards was during February, 2005, when Plaintiff's counsel had mailed him a copy of <u>Defendant's Motion for Summary Judgment</u> dated February 16, 2005 for review, along with the attached Affidavits of Mary Forde and Joseph Russo, including Attachments A, B. and C thereto. <u>Trial Testimony of David Bruno</u> (6/9/05). Even if the Defendant had provided some notice at a PPT meeting, according to <u>Exhibit</u> B-12(2), Mr. Russo had informed only David's <u>parent</u> on December 14, 1999, that only <u>she</u> had a right to certain procedural safeguards that were limited to her

---

[1] Sharon Bruno had testified that the first time she ever saw a copy of the procedural safeguard notice was during February, 2005. <u>Trial Testimony of Sharon Bruno</u> (6/9/05).

right to initiate a Due Process hearing by writing to the State Department of Education. The Defendant did not inform the Plaintiff or his mother that there were other procedural safeguards available besides the right to a hearing. 34 C.F.R. §300.504 (listing fourteen (14) procedural safeguards).

Both the Plaintiff and his mother Sharon Bruno had testified on June 9, 2005 that they had not received any notices of procedural safeguards in the mail with the PPT Notice for the December 14, 1999, May 26, 2000, or September 5, 2001 PPT meeting, nor did the Defendant ever provide either the Plaintiff or Sharon Bruno with a written copy of any notice of procedural safeguards such as the copies that had been annexed to Defendant's Motion for Summary Judgment (2/16/05) at PPT meetings convened on December 14, 1999, May 26, 2000 and September 5, 2001. Trial Testimony of David Bruno (6/9/05); Trial Testimony of Sharon Bruno (6/9/05). Further, both the Plaintiff and Sharon Bruno, his mother, had testified that if they had known about all of their procedural safeguard rights, including the right to an independent or outside evaluation, they would have been in a better position to participate in the PPT process, make meaningful and informed decisions, and properly participate in the process of reviewing the Plaintiff's educational progress and developing Plaintiff's IEP. Id.

The United States Supreme Court in Board of Education v. Rowley, 458 U.S. 176, 206-07 (1982) had concluded that:

> "...we find nothing in the Act to suggest that because Congress was rather sketchy in establishing substantive requirements, as opposed to procedural

requirements for the preparation of an IEP, it intended reviewing courts should have a free hand to impose substantive standards which cannot be derived form the Act itself. In short, the statutory authorization to grant 'such relief as the court determines is appropriate' cannot be read without reference to obligations, largely procedural in nature, which are imposed upon recipient states by Congress. Therefore, a court's inquiry in suits brought under §1415(3)(2) (now §1415(i)(2)) is twofold. First, has the state complied with the procedures set forth in the Act. And second, is the individual education program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?"

In order to ensure that the first part of Rowley inquiry has been satisfied, "the reviewing court not only (has) to satisfy itself that the state has adopted the state plan, policies, and assurances required by the Act, but also to determine that the state has created an IEP that conforms with requirements of §1401(1a) (now §1414(d))." Rowley, supra, fn. 27.

The "procedures" set forth in the Act, Rowley, supra, are now codified in 20 U.S.C. §1415 entitled "Procedural Safeguards". The procedural safeguards include, but are not limited to 'written prior notice,' 20 U.S.C. §1415(b)(3); 'Mediation', 20 U.S.C. §§1415(b)(5),(e); an opportunity for a Due Process hearing on any matter involving a denial of FAPE, 20 U.S.C. §§1415(b)(6), (f); a copy of written prior notice that contained the six (6) statutory requirements for

content, 20 U.S.C. §1415(c) a copy of the procedural safeguards that contained at least the thirteen (13) statutory requirements for content, 20 U.S.C. §1415(d); and a right to bring a civil action. 20 U.S.C. 1415(i). There is no record that the Defendant had provided the Plaintiff with notice of procedural safeguards that conformed to these programs.

Advance notice of these procedural safeguards were supposed to have been provided to the Plaintiff at least one year prior to his eighteenth birthday. 20 U.S.C. §1415(m); 34 CFR §§347(c), 517. There is no record that Plaintiff's IEP dated May 29, 1998, <u>Exhibit</u> B-8, contained any such advance notice of transfer of Plaintiff's rights upon the Plaintiff reaching age 18. The record of the May 29, 1998 PPT meeting, <u>Exhibit</u> B-1, was devoid of any reference that the Defendant had provided Plaintiff with advance notice that rights would be transferred to him upon reaching age eighteen (18). Similarly, in <u>Exhibit</u> B-7, the notice of the April 16, 1999 PPT meeting was completely silent with respect to the Defendant providing the Plaintiff with notice that rights would be transferred to him upon reaching age eighteen (18). Thus, the Court may conclude that based upon the review of the record of the PPT meetings convened <u>before</u> the Plaintiff had turned age eighteen, that the Defendant had failed to provide the Plaintiff with any advance notice that rights would be transferred to him on September 14, 1999, when he turned eighteen (18).

The IEP/PPT meetings convened by Defendant on December 14, 1999, May 26, 2000, and September 5, 2001, following the Plaintiff's eighteenth birthday, did

not provide the Plaintiff with any procedural safeguards notice required by 20 U.S.C. §1415(d). At best, the Defendant supposedly provided such notice to the Plaintiff's mother if the Court finds the testimony of Sharon Bruno not credible and instead finds the testimony of Joseph Russo to be credible. Regardless of Mr. Russo's credibility, it is clear from these Exhibits that the Plaintiff was not provided with any procedural safeguards notices, a fact confirmed by Mr. Russo. <u>Trial Testimony of Joseph Russo</u> (6/9/05). Thus, the Court may conclude, as a matter of law, that there is no longer any material fact in dispute as to whether the Plaintiff had ever received any notice of his procedural safeguards from the Defendant. If the "procedural inadequacies that individually or cumulatively result in the loss of educational opportunity or seriously infringe upon the parents (or student's) participation in the creation or formulation of the IEP (that will) constitute a denial of FAPE." <u>Werner v. Clarkstown Central Sch. Dist.</u> Civil Action No. 04 Civ 2349 (CM)(LMS) (S.D.N.Y. 2005); 43 IDELR 59 (March 31, 2005) (citing <u>Knoble v. Bexley City Sch. Dist.</u> 238 F.3d 755, 766 (6th Cir. 2001) <u>cert. den.</u> 533 U.S. 950 (2001). The Court should find that Defendant has not sustained its burden of proof relative to proving that it had provided the Plaintiff with FAPE by establishing compliance with the IDEA's procedural safeguards.

**B**     **The Court Should Find the C.A.R.E.S. Program was Appropriate Compensatory Education for Plaintiff's Unmet Academic, Social and other Needs**

The Plaintiff and his family should be entitled to be reimbursed for the cost of the C.A.R.E.S. program because it was appropriate for Plaintiff's unmet needs.

7

Parents who place their children in private schools do so at their own financial risk. Florence County Sch. Dist. V. Carter, 510 U.S. 7, 15, 114 S. Ct 361 (1993) (quoting Burlington, 471 U.S. at 373-74). A reviewing court may order a school district to reimburse parents for their costs of a private school education if 1) the student's IEP was inappropriate, thereby resulting in a denial of FAPE, and 2) the private school selected was proper. Florence County 510 U.S. at 10-11.

In order to determine if an IEP has provided FAPE, the U.S. Supreme Court in Bd. of Ed. v. Rowley, 458 U.S. 176, 206-07 (1982) had established a two part test: 1) has the Defendant complied with the IDEA's procedural requirements, and 2) was the IEP that was developed through the IDEA's procedural requirements reasonably calculated to provide the Plaintiff with FAPE.[2] In the present matter, on June 9, 2005, the Court concluded, as a matter of fact, that the Plaintiff David Bruno did not receive notice of his procedural safeguards, thereby satisfying the first part of Rowley. Transcript of June 9, 2005 Trial. Therefore, the Court can conclude that the first part of the Rowley two part test has been satisfied by the Plaintiff.

As to the second part of the Rowley standard, the Plaintiff had demonstrated that the Defendant's IEP did not provide him with FAPE during the 1999-00 school year and that Defendant's report of progress was entirely

---

[2] The IDEA's procedural safeguards are designed to ensure that the education of a student is tailored to meet the child's unique needs and to guarantee against arbitrary or erroneous decision-making. Daniel R.R. v. State Bd. of Ed. 874 F. 2d 1041 (5th Cir. 1989).

8

inconsistent with the IEP goals and objectives since the record had established that Plaintiff had received a grade of 'D' in two (2) or more courses when his IEP specified a <u>minimum</u> level of progress of 'C' or better in all courses.  <u>Exhibits</u> B-8(6),(7), B-17.  Further, the weekly Social Work Services specified in Plaintiff's IEP, <u>Exhibit</u> B-8 (10), were never provided.  <u>Transcript of October 18, 2002 Hearing pp. 181-91.</u>  Nevertheless, the Defendant had concluded at the May 26, 2000 PPT meeting that the Plaintiff was "on target" to graduate, <u>Exhibit B-16,</u> even though the 1999-00 IEP did not contain any "exit criteria" for establishing a "target" for such graduation.  This was in marked contrast to the 1998-99 IEP that contained such exit criteria, such as ability to succeed in regular education, fulfillment of graduation requirements and/or reaching age twenty-one.  <u>Exhibit B-3(3).</u>

There was no evidence whatsoever to support Defendant's conclusion that Plaintiff was "on target" at the May 26, 2000 PPT meeting, especially since the grade and progress reports that were available at the December 14, 1999 PPT <u>Exhibits B-12 and B-17</u> and the May 26, 2000 PPT, <u>Exhibits B-16 and B-17,</u> had established the lack of appropriate progress towards IEP goals and objectives.  Nevertheless, less than a month following the May 26, 2000 PPT, the Defendant had issued the Plaintiff a high school diploma during June, 2000 when it knew or should have known that Plaintiff had not met his 1999-00 IEP goals and objectives.  The Court should conclude that that 1999-00 IEP had denied Plaintiff FAPE, and

that Plaintiff had not made satisfactory progress on that IEP, thereby satisfying the second part of the Rowley test. [3]

In order for the Plaintiff and his parent to recover for the costs of the private educational services obtained following the 1999-00 school year, the Plaintiff had to establish that the private school provided services that were appropriate to Plaintiff's needs.  Burlington v. Dept. of Ed., 371, U.S. 359, 370, 105 S. Ct 1996(1985).  The private school selected is not required to employ certified special education teachers or have an IEP in place for the Plaintiff.  Id. , Instead, the services provided must be appropriate to Plaintiff's needs.

In the present matter, the Plaintiff had presented information to the Defendant at the September 5, 2001 PPT demonstrating that he continued to have unmet academic, social, and vocational needs and the fact that he should not have been graduated during June, 2000.  Exhibit B-23.  In response, the Defendant denied each of Plaintiff's requests, including his request for compensatory educational services and an independent evaluation.  Exhibit B-23. In response to Defendant's decision, Plaintiff commenced a Due Process hearing. During September, 2002 the Plaintiff enrolled in the specialized educational program for students with disabilities entitled C.A.R.E.S. located at Mitchell College in New London, CT.  Exhibit P-36.  The Plaintiff presented information at the Due Process hearing on the C.A.R.E.S program and how its specialized program of

instruction had addressed his unmet academic, social and other needs.  Transcript of September 4, 2002 Hearing pp. 88-101, Exhibit P-36, Exhibit P-40,  See e.g. Final Decision and Order Case No. 02-138, FOF No. 13.  The Plaintiff attended the C.A.R.E.S. program at the time the Due Process hearing had commenced and he remained in that program for the following academic year.  The Plaintiff and his family had incurred various costs for the C.A.R.E.S program including tuition, books, student loans, and miscellaneous costs for the 2002-03 academic year, Exhibit P-33; and later, for the 2003-04 academic year as set forth in the attached Affidavit of David Bruno and Beatrice Duni, Plaintiff's grandmother.

Plaintiff had requested compensatory education from the Defendant at the September 5, 2001 PPT meeting.  Exhibit B-23.  Compensatory education is considered to be an appropriate remedy for a denial of FAPE, Mrs. C. v. Wheaton, 916 F. 2d 69(2d Cir. 1990); especially when a school district has taken advantage of a student's limitations in order to obtain consent in an effort to evade compliance with the IDEA's requirements, Id. @75;  "This theory builds upon the Supreme Court's holding in Burlington that 'appropriate' IDEA relief may include reimbursement for parents who place children in a private school rather than accept a deficit public school IEP. (citation omitted)"  Reid v. District of Columbia _F.3d_. 42 IDELR 32,. p. 161 (D.C. Cir. 3/25/05).  The purpose of compensatory education is to "... assist a student in the broader educational purposes of the

---

[3] In order for an IEP to provide a student with FAPE, it must provide the student with meaningful educational benefit, that is to provide more than mere trivial advancement.  Mrs. B. v. Milford Bd. of Ed., 103 F. 2d 1114, 1121 (2d cir. 1997).

IDEA, namely to participate in further education, obtain employment, and/or live independently." Letter to Riffel, 34 IDELR 292 (OSEP 2000). (attached) Further, students who have been allowed to graduate without receiving the services set forth in their transition plan have been awarded compensatory educational services as a remedy for the denial of FAPE. J.B. v. Killingly Bd. of Ed. 990 F. Supp. 57, 27 IDELR 324 (D. Conn. 1995)

In the present matter the Plaintiff had requested at least two years of compensatory education to remedy the denial of FAPE during the 1999-00 school year when the Defendant had failed to provide FAPE and for the 2000-01 and 2001-02 school years when the Defendant failed to have any IEP in place. However, due to a two (2) year state statute of limitations, Conn. Gen. Stat. §10-76h(1)(3), Plaintiff only requested two years of compensatory education, even though the Defendant's denial of FAPE covered a minimum of three (3) school years.  However, given the Court's June 9, 2005 factual finding that Plaintiff did not receive any notice of his procedural safeguards once he turned age eighteen (18), the applicable State statute of limitations only runs from the date that notice of procedural safeguards was "properly given." Id.  Thus, the Court is free to award more than the two years of compensatory education originally requested, as 'appropriate relief' in the absence of the Plaintiff ever receiving notice of his procedural safeguards during the 1999-00, 2000-01 and/or 2001-02 school years.

In fashioning a remedy, the District court has broad discretion to provide "appropriate relief."  20 U.S.C. §1415; Florence County v. Carter, 510 U.S. at 15-16.

This includes the application of traditional equitable principles by the Court since "... compensatory education is not a contractual remedy, but an equitable remedy, part of the Court's resources in crafting `appropriate relief.'" Reid v. District of Columbia, supra, 43 IDELR 32 p. 162 (citing Parents of Student W. v. Puyallup Sch. Dist., 31 F. 3d 1489, 1497 (9th Cir. 1994). The Court of Appeals in Reid rejected a "cookie cutter approach" to fashioning `appropriate relief. Reid v. District of Columbia, supra. Instead, the Court of Appeals stated that "the essence of equity jurisdiction is to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the IDEA (citation omitted)." Reid, supra. The compensatory education award should be "... an informed and reasonable exercise of discretion regarding what services (a student) needs to elevate him to the position he would have occupied absent the school district's failures." Reid, supra, 42 IDELR 32 p. 164.

In the present matter, Plaintiff's IEP, in particular, his 1999-00 IEP and its transition plan, Exhibit B-8(9), detailed a plan for the Plaintiff to attend college or vocational schools after high school. The Transition Plan contained several components however, the Defendant did not assist the Plaintiff with any college or vocational school applications. Transcript of July 31, 2002 Hearing pp. 181,254.
[4] Further, the Defendant knew that the Plaintiff's grades in two (2) or more courses

were 'D', below the minimum of 'C' specified in his IEP.  Exhibit B-8(7),(8).
Defendant knew that Plaintiff was not participating or even attending his weekly counseling sessions with the school social worker as specified in his IEP.  Transcript of October 18, 2002 Hearing, pp.  184-91. Thus, the Court could conclude that Defendant knew or should have known that the Plaintiff was not receiving FAPE during the 1999-00 school year and that his Transition Plan had not been properly implemented.   See, Ridgewood Bd. of Ed. v. N.E. 172 F3d 238, 250 (3d Cir. 1999).

Plaintiff should have been provided at least the 'basic floor of educational opportunity," Board of Ed. v. Rowley, 458 U.S. 176, (1982), that would have at least properly prepared the Plaintiff for life after high school in order that he would be employable and capable of independent living.  34 CFR §300.1(a).  Instead, the Plaintiff worked at two part time jobs, initially at a pet store until October, 2000 and then later at a book store as seasonal help, then he became unemployed and continued to live at home until he was able to attend the C.A.R.E.S. program at Mitchell College commencing September, 2002, over two (2) years after the Defendant had previously concluded that he was "on target" to graduate.  While the Defendant attempted to defend its actions by stating that the Plaintiff simply wanted to graduate  Trial Testimony of Jen Benoit (6/8/05), the fact remains the Defendant knew or should have known that Plaintiff had not made appropriate progress on all IEP goals and objectives, that he had not received all the related

---

[4] While the Defendant arranged for a vocational evaluation during February, 2000, Exhibit B-14, there is no record that the results of that evaluation were ever

services specified in his IEP, and that his Transition Plan had not been completely implemented by Defendant to ensure that he applied to college or vocational school, rather than becoming unemployed. <u>Ridgewood Bd. of Ed. v. N.E.,</u> supra. <u>M.S. v. Yonkers Bd. of Ed.</u> 231 F. 3d 96, 104 (2d Cir. 2000) (Even though the student received passing grades and was promoted, the IEP was not reasonably calculated to provide educational benefit since it did not address learning (and social) deficits acknowledged to exist.). That fact, coupled with the Court's June 9, 2005 factual conclusion that Defendant had not provided Plaintiff with notice of his procedural rights after reaching age eighteen (18) have operated to deprive Plaintiff of FAPE. <u>Rowley</u>, supra 458 U.S. at 206 ("Adequate compliance with the procedures prescribed (will) in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.") The Court should find that Plaintiff's selection of the C.A.R.E.S. program was an appropriate program for his unmet needs, to remedy the Defendant's denial of FAPE and he should be entitled to compensatory education for a period of at least two (2) years, if not longer.

**C.    The Court Should Order the Defendant to Reimburse the Costs of the C.A.R.E.S. Program and Independent Educational Evaluation and Fees**

The Court should find that the only way to remedy the substantive and procedural violations established would be an award of compensatory education

---

reviewed at any PPT meeting including the May 26, 2000 PPT convened approximately three weeks prior to Plaintiff's graduation. <u>Exhibit B-16.</u>

for "gross violations" of Plaintiff's rights, Mrs. C. v. Wheaton, supra, coupled with a reimbursement of the costs of the C.A.R.E.S. program.  Burlington, supra at 370-371 ("Reimbursement merely requires the Town to belatedly pay expenses it should have paid all along and would have borne in the first instance had it developed a proper IEP.".  Even though the C.A.R.E. S. Program is located at the Mitchell College, reimbursement of the costs of that type of non-degree program has been found by some hearing officers to constitute an appropriate compensatory education award due to a school district's procedural violations and its failure to provide an outcome based transition plan.  Caribou Sch. Dist., 35 IDELR 118 (SEA ME. 2001).  See, Newton Pub. Sch. 32 IDELR 126 (SEA MA 2000); and Livermore Valley Unified Sch. Dist. 33 IDELR 288 (SEA CA 2000).  The Plaintiff at the time of trial was approximately twenty-four (24) years old and a return to Greenwich High School at this stage of his adult life should be found by the Court to be an inappropriate remedy.  See, Exhibit P-29.  To the extent the Defendant may argue that it is not obligated to pay for college per se, Defendant's Memorandum of Law in Support of Motion for Summary Judgment pp 5-6 (5/28/04), the Plaintiff has not requested reimbursement of a traditional four year college education per se but two (2) years that he had attended the specialized program known as C.A.R.E.S. located at the Mitchell College in New London, CT that would properly prepare him to attend college upon successful completion of that program.

     The Plaintiff has attached a copy of Stafford Loans ($13,250); Great Lakes Educational Loan Services ($20,133.00) and checks payable to Mitchell College in

the amount of $2,443.19 for educational expenses.  The Plaintiff and his family have incurred the cost of tuition and related expenses for the C.A.R.E.S. program in the amount of $35,826.19, plus interest on the loans.  The Court should award the Plaintiff these costs, plus interest, as more fully described in the attached <u>Affidavits of David Bruno and Beatrice Duni.</u>

In addition, the Plaintiff had requested the Defendant to fund an independent educational evaluation under the provisions of 34 C.F.R. §300.502(a) at the PPT meeting convened on September 5, 2001.  <u>Exhibit B-23.</u>  The Defendant denied that request at the September 5, 2001 PPT.  However, the Defendant did not commence a Due Process hearing pursuant to 34 C.F.R. §300.502(b)(2)(i) in order to establish that its last evaluation, <u>Exhibit B-61, B-5, B-6,</u> was appropriate.  Instead, Defendant took no action whatsoever as required in the regulation.  In contrast, the Plaintiff had obtained independent evaluation from Dr. Smaller, <u>Exhibit P-29</u> and presented it to the Defendant in order to establish that he still had significant unmet learning, vocational, social and other needs over one year after he had been graduated by the Defendant.  Dr. Smaller's report had established Plaintiff's needs, at that time, could be addressed in a specialized program of support available at Mitchell College's C.A.R.E.S. program, in order that the Plaintiff could then attend a traditional college program, obtain an academic degree and be successful in the work place.  <u>Id</u>.  The Plaintiff's family incurred costs of $1,400.00 for Dr. Smaller's evaluation as established by the cancelled checks annexed to the attached <u>Affidavit of Beatrice Duni</u>.  The Court should

award the Plaintiff the cost of the independent evaluation costs in the absence of any proof by the Defendant that it had commenced a timely Due Process hearing as required by 34 C.F.R. §300.502(b)(2)(i).

Lastly, should the Court grant Plaintiff's Motion for Summary Judgment, the Plaintiff will submit appropriate documentation to the Court in support of an award of fees and costs as the prevailing party as provided for in 20 U.S.C. §1415(i)(3)(B).

### III    CONCLUSION

The Court should grant Plaintiff's Motion for Summary Judgment for the reasons set forth herein, those presented at trial and those presented in Plaintiff's previous Memoranda of Law dated May 31, 2004, June 1, 1004, June 22, 2004, February 18, 2005, March 30, 2005, and April 15, 2005, and grant him 'appropriate relief' as provided for in 20 U.S.C. §1415(i)(2)(B), in addition to granting him the other relief sought in Counts Two, Three and Four of the Amended Complaint.

WHEREFORE, for the foregoing reasons the Plaintiff respectfully requests the Court to grant his Motion for Summary Judgment.

                                  RESPECTFULLY SUBMITTED,

                                  THE PLAINTIFFS

By_____
  Lawrence W. Berliner
  Klebanoff & Alfano, P.C.
  Corporate Center West
  433 South Main Street Suite 102
  West Hartford, CT 06110
  Tel. No. (860) 313-5005
  Fed. Bar No. CT 7002

**CERTIFICATION**

This is to certify that a copy of the foregoing Motion and attached Memorandum of Law was mailed this 7th day of July, 2005 by U.S. Mail first class, postage prepaid to Attorney Valerie Maze, Assistant Town Attorney, Town Hall, 101 Field Point Road, Greenwich, CT.

                                  _____
                                  Attorney Lawrence W. Berliner