UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID BRUNO,  :
    Plaintiff,  :
    :
    :    3:02CV2192(WWE)
    v.  :
    :
GREENWICH BOARD OF EDUCATION,  :
    Defendant.  :

**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

    Plaintiff David Bruno, a student who qualified for special education services during his high school education, seeks reversal of an administrative hearing officer's final decision that denied him compensatory education and services. He alleges that the hearing officer's decision violates the Individuals with Disabilities Education Act ("IDEA") (count one), Section 504 of the Rehabilitation Act of 1973 (count two), the Fourteenth Amendment of the United States Constitution (count three) and state special education laws (count four).

    In a prior motion for summary judgment, defendant argued that no gross violation of the statute occurred so as to afford plaintiff a right to compensatory education. Plaintiff cross moved for summary judgment, arguing that defendant's gross procedural violations of the statute conferred a right to compensatory education. In a ruling dated May 5, 2005, this Court denied the cross motions for summary judgment in light of disputed issues of fact as to whether notice of the statutory procedural safeguards had been properly provided to plaintiff and his mother.

1

On June 7, 8, and 9, 2005, the Court heard evidence regarding defendant's compliance with the statute's mandate to provide notice of the procedural safeguards. On June 9, the Court ruled from the bench that defendant had failed to provide notice of the procedural safeguards to plaintiff, although it had properly provided such notice to plaintiff's mother. The Court then instructed the parties to submit post-hearing briefs that reinvoked the motions for summary judgment and addressed the effect of defendant's failure to provide plaintiff with the requisite notice. The parties have so complied.

Having resolved the disputed issues of fact identified in its previous ruling, the Court now deems the procedural posture of this case to be a consideration of cross motions for summary judgment. Upon review, the Court will grant defendant's motion for summary judgment.

## **FACTUAL BACKGROUND**

The Court incorporates herein the factual background stated in the Court's previous rulings. However, the Court briefly recites the following undisputed facts, including the findings of fact made at the June hearing and those that are reflected by the administrative record that are relevant to this ruling.

This case is an appeal from the final decision and order of hearing officer Margaret Slez, in which she concluded that 1) plaintiff's eligibility for graduation was properly determined, and that plaintiff was no longer entitled to special education services after graduation; 2) the Individual Education Programs ("IEPs") developed at the Planning and Placement Team ("PPT")

2

meetings prior to plaintiff's graduation clearly stated the student's anticipated date of graduation as June 2000; 3) plaintiff had received appropriate prior written notice of graduation; and 4) no procedural violations sufficient to warrant an award of compensatory education had occurred.

This Court finds that plaintiff's mother received proper notice of IDEA's procedural safeguards.  However, defendant failed to provide plaintiff with adequate notice of IDEA's procedural safeguards.

Plaintiff received no notice that rights accorded to his mother would be transferred to him when he turned 18 on September 14, 1999, although he testified at the June hearing that he "generally" understood that the relevant educational rights were his to exercise after he had reached the age of majority.

Plaintiff never received notice of the PPT meetings on December 14, 1999, May 26, 2000, or September 5, 2001, although he attended all of these meetings with his mother.  Plaintiff was never sent a copy of the document entitled "Procedural Safeguards for Parents of Children in Special Education."  However, during the PPT meetings, copies of this document were accessible on a table in the room where the PPT meeting took place.

## **DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the

evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), <u>cert. denied</u>, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. <u>American International Group, Inc. v. London American International Corp.</u>, 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. <u>Celotex Corp.</u>, 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. <u>Anderson</u>, 477 U.S. at 249.

### <u>IDEA</u>

Plaintiff argues that the hearing officer's decision should be overturned as a matter of law because defendant's procedural inadequacies resulted in the denial of free appropriate public education ("FAPE") as mandated by the IDEA.

Under the IDEA, when a federal court reviews the findings and conclusions reached in a state administrative proceeding, it must base its decision on the preponderance of the evidence, after reviewing the administrative record and any additional evidence presented. 20 U.S.C. § 1415(i)(2)(B); <u>M.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers</u>, 231 F.3d 96, 102 (2d Cir. 2000), <u>cert. denied</u>, 532 U.S. 942 (2001). Federal

courts do not "rubber stamp" administrative decisions but must accord "due weight" to these proceedings. Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998). This is not an invitation to the courts to substitute "their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). In Cerra v. Pawling Cent. School Dist., 427 F.3d 186, 191 (2d Cir. 2005), the Second Circuit emphasized that district courts should pay deference to administrative judgments on matters of educational policy. The Supreme Court has interpreted the IDEA as strictly limiting judicial review of state administrative decisions. D.F. v. Ramapo Central District, - - F.3d - -, 2005 WL 3118420 *2 (2d Cir.).

Generally, a disabled child does not have a right to demand a public education beyond the age of 21, although a claim for compensatory education may be proper where gross violations of the statute occurred that effectively deprived the child of the right to a FAPE. See Mrs. C. v. Wheaton, 916 F.2d 69 (2d Cir. 1990)(gross violation of statutory regulations resulted in exclusion of the mentally retarded student from school for a substantial period of time); see also Burr by Burr v. Ambach, 863 F.2d 1071, 1078 (2d Cir. 1988)(compensatory education proper where regulations were "grossly violated," resulting in exclusion of student from school for substantial period of time). The Second Circuit has conditioned the award of compensatory education on the presence of a gross deprivation of the right to a FAPE. M.C. v. Central Regional School District, 81 F.3d 389,

5

396 (3rd Cir. 1996). In Burr, the gross procedural violation found to confer a right to compensatory education consisted of undue delay in an agency hearing and administrative review so that the disabled child was deprived of the benefit of the statutory "stay-put" provision. In Mrs.C., a claim for compensatory education was appropriate where plaintiff alleged that the defendants had taken advantage of the student's infirmities in order to evade the statutory procedures, resulting in the student's complete exclusion from an educational placement until he was 21.

<u>Review of the Hearing Officer's Denial of Request for Compensatory Education</u>

In considering plaintiff's appeal of the hearing officer's denial of his request for compensatory education, the Court must consider whether defendant denied plaintiff a FAPE. In so doing, the Court must engage in Rowley's two step process. First, the Court must consider whether the board complied with the procedures set forth in the IDEA; and secondly, the Court must determine whether the IEP developed through these procedures was reasonably calculated to enable the child to receive educational benefits. Rowley, 458 U.S. at 206-207. If the Court finds procedural or substantive deficiencies, the Court considers whether plaintiff is entitled to reimbursement for the compensatory education and independent evaluation. See Walczak, 142 F.3d at 129.

<u>Procedural Compliance</u>

The Court must first consider whether the board complied with the IDEA's procedural process. "The core of the statute" is

the collaborative process between parents and schools, primarily through the IEP process. See Schaffer v. Weast, 126 S.Ct. 528, 532 (2005). An IEP is a procedural mechanism that protects a child's rights to a FAPE. 20 U.S.C. § 1414(d). It is a tailored written outline of the unique educational needs of an individual student and the services required to meet those needs. Walczak, 142 F.3d at 122.

While Congress sought to protect individual children by providing for parental involvement in the development of state plans and policies and in the formulation of the child's IEP, all procedural rights accorded to the parents transfer to the student when the student reaches the age of majority. See 20 U.S.C. § 1415(m); 34 CFR § 300.517.

In designing the child's IEP, the PPT must include a qualified special education representative of the school board, the child's teacher, one or more of the child's parents, and may also include individuals who evaluate the child or provide special education services to the child. P.J. v. State of Connecticut Bd. of Education, 788 F.Supp. 673, 676 n. 1 (D.Conn. 1992).

Section 1415(d) provides that a copy of the existing procedural safeguards must be made available to the parents or to the student if the rights have transferred to the student. These procedural safeguards include the right to, inter alia, independent evaluations, prior written notice of any proposals to initiate or change an educational program or placement, parental consent, access to educational records, complaint procedures,

discipline procedures, mediation and due process hearings, filing of a civil action, and recovery of attorneys' fees. 20 U.S.C. § 1415.

The Court has found that defendant failed to provide plaintiff with the written notice of the IDEA's procedural safeguards, written notice of the PPT meetings and minutes, and written notice of the transfer of rights after plaintiff reached the age of majority.  Plaintiff asserts that if he had known his procedural safeguard rights, he would have had a more meaningful participation in the development of his IEP, and he would have made more informed decisions.

The Court's inquiry into whether the IDEA's procedural obligations were fulfilled focuses on whether plaintiff was afforded an adequate opportunity to participate in the collaborative IEP process. Cerra, 427 F.3d at 193.  In this instance, the procedural non-compliance did not result in plaintiff's exclusion from the collaborative IEP process regarding his educational placement. Here, plaintiff attended the PPT meetings with his mother.  He also had ready access to the document, "Procedural Safeguards for Parents of Children in Special Education" and the meeting minutes.  Plaintiff testified at the June hearing that he understood that he had the right to exercise his legal rights.  He stated further that, during the PPTs in the 1999-2000 school year, alternatives to graduation were discussed, including his right to remain in high school and postpone graduation.  He rejected this option because he "didn't want to be in school anymore."

Thus, in light of plaintiff's participation at the PPT meetings, his admitted comprehension of his rights upon obtaining the age of majority, and his access to the relevant documents, including "Procedural Safeguards for Parents of Children in Special Education," the Court is satisfied that defendant's non-compliance with the statute's notice requirements did not preclude plaintiff from a meaningful opportunity to participate in the collaborative IEP process.  Plaintiff had ample opportunity to review and become versed in his rights to the IDEA's procedural safeguards, and no evidence suggests that defendant took advantage of plaintiff's infirmities in order to evade compliance with statutory regulations as occurred in <u>Mrs. C.</u>  Accordingly, defendant's non-compliance is not a gross violation resulting in a deprivation of a FAPE as required to confer a right to compensatory education.

<u>Substantive Compliance</u>

A school district complies with the IDEA's substantive requirements if a student's IEP is reasonably calculated to enable the child to receive educational benefits. <u>Rowley</u>, 458 U.S. at 207.  The IEP must be likely to produce progress, not regression. <u>See</u> <u>Weixel v. Bd. of Educ.</u>, 287 F.3d 138, 151 (2d Cir. 2002).  A valid IEP must open the door of public education for a disabled child in a "meaningful way". <u>Walczak</u>, 142 F.3d at 130.  However, the IEP need provide only a basic floor of opportunity, and a school district is not required to furnish "every special service necessary to maximize each handicapped child's potential." <u>Cerra</u>, 427 F.3d at 195.  When a learning-

9

disabled child is in a mainstream class, "the attainment of passing grades and regular advancement from grade to grade" is generally considered evidence of satisfactory progress.  <u>Walczak</u>, 142 F.3d at 130.

In her findings of fact, the hearing officer found that:

> the student's IEPs were a combination of mainstream academic courses and time in the resource room for specific skill-building, monitoring by teachers, and work on homework.... The student started high school with poor social skills, no interaction with others, sometimes displaying "explosive" and "aggressive" behaviors, but he "improved" over four years and by senior year was able to "self-censor."

She noted that plaintiff had advanced from grade to grade and had earned a 2.3 cumulative average.  However, in accordance with plaintiff's testimony and that of the board social worker, plaintiff had not regularly participated in counseling sessions as provided for in his IEP.  Nevertheless, "the student showed growth in terms of social interaction...."  Thus, the hearing officer concluded that his academic progress met the general education requirements established by both defendant and the State of Connecticut.  She held further that no evidence was presented establishing that the "student required modification of the state and local graduation requirements or that the PPT had found such requirements to be inappropriate."

Plaintiff challenges the hearings officer's conclusions, arguing that defendant's IEP failed to provide him with a FAPE during the 1999-2000 school year and that plaintiff had failed to meet the level of progress prescribed by the IEP.  Specifically, plaintiff points out that he received "D" grades in two of his courses, while the IEP sets an objective of "C" in all courses.

10

Further, plaintiff asserts that defendant was aware that plaintiff was not participating in his weekly counseling sessions with the school social worker as provided for in his IEP. Plaintiff asserts that defendant's failure to provide him with a FAPE during the 1999-2000 school year resulted in his graduation from high school with unmet academic, social and vocational needs. Plaintiff relies, <u>inter</u> <u>alia</u>, upon the independent psychological evaluation of Dr. Adrienne Smaller, who met with plaintiff a little more than a year after his graduation. Dr. Smaller observed that plaintiff appeared "to be doing well now," but remained "quite vulnerable in the area of vocational and social skills" and was in "need of some direction with regard to work-related social skills."

The Court is mindful that the hearing officer rendered her decision after a seven-day administrative hearing, and that "[d]eference is particularly appropriate when, as here, the state hearing officers' review has been thorough and careful." <u>Walczak</u>, 142 F.3d at 129. In addition, the hearing officer's determination that plaintiff was properly graduated from high school implicates "the kind of educational policy decision a district court may not make absent objective evidence in the record suggesting that the [hearing officer] has reached an erroneous conclusion." <u>Cerra</u>, 427 F.3d at 196.

The Court recognizes that plaintiff was not completely successful in fully meeting the objectives of his IEP, and that after graduation he incurred social difficulties in work-related social environments. Based on these observations, the Court

concludes that plaintiff may have benefitted from more services. However, defendant need not provide the optimal level of services. <u>Walczak</u>, 142 F.3d at 132.  Here, plaintiff's 1999-2000 IEP provided "a basic floor of opportunity", thereby satisfying the requirements for a FAPE. <u>Rowley</u>, 458 U.S. at 201.  The evidence presented at the administrative hearing demonstrated that plaintiff had made more than trivial progress.  Generally, his final exam grades reflect above average achievement.  For his final grades, he received primarily grades of "C" and "B" in his coursework.  His cumulative grade point of 2.3 reflects that plaintiff had achieved an average level of achievement.  The school social worker noted that plaintiff had shown growth in his social skills.  Accordingly, no evidence suggests that the hearing officer reached an erroneous conclusion that plaintiff was eligible to graduate and that he was not entitled to compensatory education. Summary judgment will enter in favor of defendant on the IDEA count.

<u>Rehabilitation Act</u>

Plaintiff alleges that the final decision of the hearing officer violated plaintiff's right to a FAPE as required by the Rehabilitation Act, 29 U.S.C. § 794.  Defendant asserts that plaintiff cannot establish a Rehabilitation Act claim.

In order to maintain his Rehabilitation Act claim, plaintiff must establish that he is a disabled person under the Act, who has been excluded from benefits of a federally funded program or special service because of his disability. <u>Mrs. C.</u>, 916 F.2d at 74.  Where a plaintiff challenges the adequacy of a FAPE as

required by the IDEA, plaintiff must demonstrate bad faith or gross misjudgment. <u>A.W. v. Marlborough Company</u>, 25 F. Supp.2d 27, 31-32 (D.Conn. 1998).

Here, there is no evidence demonstrating that plaintiff has been excluded from benefits due to his disability. Consistent with the foregoing discussion, the Court finds that plaintiff received a FAPE, was properly graduated from high school, and is therefore no longer eligible for special education services from the Greenwich Public Schools. 20 U.S.C. § 1412(a)(1)(B)(i); 34 C.F.R. § 300.22(a)(3)(i); Conn. Gen. Stat. § 10-67d(b)(1). Further, the Court finds that plaintiff is not entitled to compensatory education services since no gross violations occurred and, accordingly, plaintiff is not now "qualified" for special education services from the Greenwich Public School. The Court will grant summary judgment in defendant's favor on claim for relief pursuant to the Rehabilitation Act.

<u>Fourteenth Amendment Due Process Violation</u>

Plaintiff alleges that the "final decision of the Due Process Hearing Officer has violated plaintiff's right to Due Process of Law as secured by the Fourteenth Amendment to the U.S. Constitution."

The Due Process Clause of the Fourteenth Amendment requires that, generally, the state must afford a person due process of law prior to a deprivation of a constitutionally protected liberty or property interest. U.S. Const. amend XIV, § 1; <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569-70 n. 7 (1972). Thus, in order to sustain an action for deprivation of property without

due process of law, a plaintiff must identify a property right and show that the state actor has deprived plaintiff of that right without due process.

As stated previously, the Court affirms the hearing officer's decision and finds that plaintiff received special education services while in high school, was properly graduated from high school and is not entitled to compensatory education. Accordingly, he has no property interest to maintain a due process claim. Summary judgment will enter on this claim.

### Violation of State Law

Plaintiff's remaining claim of count four is based on violation of state educational law. The Court will decline to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. Count four is dismissed without prejudice since the Court declines to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3). The clerk is instructed to enter judgment in favor of defendant and to close this case.

```
             /s/
_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE
```

Dated at Bridgeport, Connecticut this 6th day of January, 2006.